# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**ALLEGIANCE COAL USA LIMITED**, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-10234 (CTG)<br><br>Joint Administration Requested |

### MOTION OF THE DEBTORS FOR INTERIM ORDER
### AUTHORIZING THE DEBTORS TO HONOR
### PREPETITION WORKFORCE OBLIGATIONS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move (the "Motion") as follows:

### RELIEF REQUESTED

1. The Debtors seek entry of an interim order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to pay or otherwise honor their prepetition obligations to, or for the benefit of, their workforce, up to $645,000, and (ii) granting related relief.

2. This emergency Motion seeks only the bare minimum relief necessary to meet payroll and related obligations due this week. The Debtors have further prepetition payroll and related obligations coming due next week and in the future that will be the subject of a forthcoming motion. This Motion is without prejudice to such future and further relief.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Allegiance Coal USA Limited (1324); New Elk Coal Holdings LLC (1314); New Elk Coal Company LLC (0615); and Black Warrior Minerals, Inc. (6486). The Debtors' mailing address for purposes of these chapter 11 cases is 12250 Highway 12, Weston, CO 81091.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      The statutory predicates for the relief requested herein are sections 105(a), 363(b) and 507(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), as supplemented by rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

6.      On February 21, 2023 (the "Petition Date"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. The Debtors have sought joint administration of their chapter 11 cases for procedural purposes. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee has been appointed in these cases.

7.      The Debtors' core business is mining and processing metallurgical coal for export to steel mills on the seaborne market. The Debtors operate two coal mines in the United

2

States, and are also advancing a development project for an additional mine in British Columbia. Through both underground and surface mining methods, the Debtors extract met coal—also known as metallurgical, steelmaking or coking coal—for use in steel production. Once extracted, the Debtors transfer their coal to various ports in the United States for exporting to the global seaborne market.

8. Additional detail regarding the Debtors, their business, the events leading to the commencement of these cases, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Jonathan Romcke in Support of Emergency Relief*, filed concurrently herewith and incorporated herein by reference.

## PREPETITION EMPLOYEE OBLIGATIONS

9. As of the Petition Date, the Debtors have a workforce of approximately 200 employees and 30 independent contractors.

10. The two operating companies are Debtors New Elk Coal Company LLC ("NECC") and Black Warrior Minerals, Inc. ("BWM"). NECC and BWM pay their employees on a bi-weekly basis. Payroll is funded on Thursdays and disbursed by check or direct deposit the Friday following the end of a two-week payroll period. NECC's next two-week payroll is scheduled to be paid on February 24, 2023. The aggregate amount of the February 24 payroll is estimated to be $520,000. In addition, the Debtors owe *de minimis* employee expense reimbursement obligations for the same two-week period.[2]

11. The Debtors also pay obligations owed to their independent contractors directly through NECC or indirectly through staffing agencies. The Debtors believe that they

---

[2] This Motion seeks authority to pay payroll obligations only with respect to NECC's employees. BWM's next payroll period is scheduled to be paid on March 3, 2023. As noted above, the Debtors intend to file a supplemental motion seeking authority, among other things to pay prepetition obligations with respect to BWM's employees.

owe approximately $125,000 on account of those obligations as of the Petition Date that will become due and payable on or before February 24, 2023 (the "Contractor Obligations").

12. The Debtors bring this motion for authority to take all actions, and permit the Debtors' banks and others to take all actions, necessary to authorize, process and pay the February 24 payroll and Contractor Obligations.

13. With the single exception below, the Debtors believe that no employee or independent contractor is scheduled to receive more than $15,150 in salary, wages and expense reimbursement in the February 24 payroll or Contractor Obligations payments. Jonathan Romcke, the Chief Executive Officer of Debtors NECC, New Elk Coal Holdings LLC, and Allegiance Coal USA Limited, is scheduled to receive approximately $1,000 over the statutory cap including $1,600 for rent reimbursement. The Debtors request authority to satisfy the prepetition workforce obligations related to the February 24 payroll and Contractor Obligations payments.

14. As part of the February 24 payroll, the Debtors are also obligated to withhold certain mandatory deductions (including federal, state, and local taxes) as well as other voluntary deductions (such as contributions for medical, dental, and vision plan premiums, or 401k programs) from the employees' wages and salaries. Such withholdings are then forwarded by the Debtors to the applicable providers or authorities. The Debtors seek authority to continue remitting and paying the withholding obligations described in this paragraph to the appropriate authorities and entities in the ordinary course of business.

**BASIS FOR RELIEF**

15. Section 507(a)(4) of the Bankruptcy Code gives priority up to $15,150 per individual for prepetition claims for wages, salaries, and commissions earned in the 180 days

prior to the Petition Date. Section 507(a)(5) further provides priority for contributions to an employee benefit plan when the payments arise from services rendered within 180 days of the Petition Date, and the total amount of all payments does not exceed $15,150 multiplied by the number of employees covered by the plan, less any amounts paid under section 507(a)(4) or to any other benefit plan. In particular, section 507(a) of the Bankruptcy Code grants a priority claim for the following:

> (4) [A]llowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of cessation of the debtor's business ... for-
>
> (A) wages, salaries, commissions, including vacation, severance, and sick leave pay earned by an individual;

11 U.S.C. § 507(a)(4).

16. The Debtors believe the substantial majority of the workforce obligations identified herein are entitled to priority under section 507(a)(4) of the Bankruptcy Code. Accordingly, granting the relief sought in this Motion will affect only the timing of payments to the Debtors' employees and will not disrupt the priority scheme set forth in the Bankruptcy Code.

17. This Court may also authorize the proposed payment of the obligations under section 363(b)(1) of the Bankruptcy Code. *See, e.g., In re UAL Corp.*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002). Section 363(b)(1) of the Bankruptcy Code authorizes a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b)(1). Although stated various ways, courts generally hold that a debtor's decision to enter into a transaction outside of the ordinary course of business is governed by the business judgment

standard. 3 COLLIERS ON BANKRUPTCY, ¶ 363.01 [l][g] (15th ed. 2002): *See In re U.S. Airways Group. Inc.*, 287 B.R. 643, 645 (Bankr. E.D. Va. 2002).

18. When applying the "business judgment" rule, courts show great deference to the debtor's decision making. *See, e.g., Official Comm. of Unsecured Creditors of Cyber denies Corp. v. Chinery*, 330 F.3d 548, 575 (3d Cir. 2003); *In re Fernwood Markets*, 73 B.R. 616 (Bankr. E.D. Pa. 1987). The Debtors submit that, because the prepetition workforce obligations are entitled to priority status, and because the retention of the Debtors' workforce is vital to ongoing operations and the Debtors' prospects for successfully transitioning into chapter 11, it is in the best interest of the Debtors' estates to pay such claims in the ordinary course of business. *See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh & New England Rv. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "[i]f payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'")); *In re Sharon Steel Corp.*, 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993) (authorizing payment of employee obligations as critical to a debtor's reorganization).

19. With the single exception referenced above, the Debtors do not believe that the prepetition amounts owing to any individual employee or independent contractor (including any uncashed paychecks) exceeds the $15,150 priority cap contained in section 507 of the Bankruptcy Code. In any event, however, section 363(b)(1) authorizes a debtor to use estate property other than in the ordinary course of business if there is a sound business justification for doing so. Here, there can be little doubt that keeping prepetition workforce obligations current, particularly when such obligations have priority status, is a reasonable exercise of the Debtors' business judgment.

20. The Debtors believe that the value of their business will be maximized, and operational disruptions caused by the bankruptcy will be minimized, by the payment of all prepetition workforce obligations identified herein in full and in the ordinary course of business. The continued service and dedication of the employees and independent contractors is critical to the Debtors and the prospects for successful chapter 11 cases.

21. Alternatively, section 105(a) of the Bankruptcy Code permits a bankruptcy court to authorize the payment of prepetition debts where it is necessary for a successful reorganization. Section 105(a) of the Bankruptcy Code provides that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Court's power to authorize payment of prepetition claims pursuant to section 105 of the Bankruptcy Code outside of the context of a plan of reorganization in a chapter 11 case has often been referred to as the "doctrine of necessity" or alternatively the "necessity of payment" rule. This rule recognizes the power of a court to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of a debtor. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821 (D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 98 R.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Lehigh*, 657 F.2d at 581 ("The necessity of payments doctrine . . . [permits] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid.").

22. As described above, paying the prepetition workforce obligations is crucial to the Debtors' ability to maximize the value of their assets to the benefit of their stakeholders. If the relief sought is not granted, the risk that the employees and independent contractors will leave will be heightened substantially and the Debtors' business operations will

7

be irreparably harmed. Additionally, it would be inequitable to require the employees or independent contractors to personally bear the costs of the Debtors' financial situation. Moreover, bankruptcy courts have consistently authorized a debtor to pay prepetition obligations pursuant to section 105(a) of the Bankruptcy Code. For the foregoing reasons, this Court has the authority under the necessity of payments doctrine to grant the relief requested herein.

23. To facilitate the implementation of the requested relief, the Debtors also seek an order directing all banks to honor prepetition checks, wire transfers, or ACH transactions for payment of the prepetition workforce obligations authorized by the Court. The Debtors further seek authority to issue new postpetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the filing of these chapter 11 cases.

## BANKRUPTCY RULES 6003 & 6004

24. As described above, it is imperative that the employees and independent contractors continue in the Debtors' workforce. The Debtors' workforce could not reasonably be expected to continue working for the Debtors absent the continuity of payroll and related compensation payments. Because the employees and independent contractors are vital to the success of these chapter 11 cases, any delay in paying the prepetition workforce obligations will severely disrupt the Debtors' relationship with their workforce, and would likely result in immediate, irreparable harm to the Debtors' operations and financial welfare, putting the Debtors' estates at risk. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support the relief sought herein being granted within 21 days of the Petition Date.

25. To effectively implement the foregoing, the Debtors seek a waiver of the notice requirements and the stay of the order authorizing the use, sale or lease of property of the estate under Bankruptcy Rules 6004(a) and 6004(h), to the extent such provisions are applicable.

## NOTICE

26. Notice of this Motion is being provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) Collins St, as Debtors' prepetition secured lender; (c) Cline Mining Corporation; (d) the Debtors' banks; (e) the Securities and Exchange Commission; (f) the Internal Revenue Service; (g) the United States Attorney's Office for the District of Delaware; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. Any order entered hereon will be served in accordance with Local Rule 9013-1(m)(iv).[3]

---

[3] The Debtors have not yet filed a list of their top 20 unsecured creditors pursuant to Bankruptcy Rule 1007(d) (the "Top 20 List") and therefore have not served this Motion on the Top 20 List. The Debtors intend to file the Top 20 List as soon as possible.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to pay or otherwise honor their prepetition workforce obligations, and granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated: February 22, 2023<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Paige N. Topper*<br>Robert J. Dehney (No. 3578)<br>Matthew B. Harvey (No. 5186)<br>Paige N. Topper (No. 6470)<br>Taylor M. Haga (No. 6549)<br>Evanthea Hammer (No. 7061)<br>1201 N. Market Street, 16th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>rdehney@morrisnichols.com<br>mharvey@morrisnichols.com<br>ptopper@morrisnichols.com<br>thaga@morrisnichols.com<br>ehammer@morrisnichols.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |