## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **ALLEGIANCE COAL USA LIMITED**, *et al.*, | Case No. 23-10234 (CTG) |
| Debtors.[1] | Joint Administration Requested |

## DEBTORS' MOTION FOR INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDER; (III) WAIVING ANY STAY OF THE EFFECTIVENESS OF THE RELIEF GRANTED; AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors"), respectfully move (the "Motion") and represent as follows:

### PRELIMINARY STATEMENT

1. By this Motion, the Debtors seek authority to use cash collateral without the consent of their Prepetition Lender. The Debtors find themselves at this point because of their Prepetition Lender's unreasonable and unfounded declaration of an event of default without warning, and the subsequent refusal to withdraw the event of default to allow the Debtors an opportunity to avoid filing for bankruptcy protection, or at least enter bankruptcy with a soft landing.

2. The Prepetition Lender is unwilling to consent to use of Cash Collateral without imposing unreasonable, value-destroying terms on the Debtors that benefit only itself at the expense of other stakeholders. Among other things, the Prepetition Lender insists that the Debtors cease operating and enter care and maintenance mode, thereby eliminating jobs and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Allegiance Coal USA Limited (1324); New Elk Coal Holdings LLC (1314); New Elk

depleting going concern value that would otherwise inure to the benefit of other creditors and stakeholders.

3.      The Prepetition Lender also insists that the Debtors give it broad stipulations and releases without an investigation and grant it extensive waivers of fundamental estate and unsecured creditor protections, including rights under sections 506(c) and 552(b) of the Bankruptcy Code and the equitable doctrine of marshaling.  This is particularly egregious in these cases where the Prepetition Lender's precipitous and unfounded event of default directly caused the Debtors' emergency chapter 11 filings.

4.      The Prepetition Lender further demands a lien on unencumbered assets, which are substantial in these cases because they include valuable mineral leases that the Prepetition Lender tried but failed to obtain a lien on previously.  In essence, the Prepetition Lender intends a land grab—literally and figuratively—at the extreme expense of, and prejudice to, other creditors and stakeholders simply to ensure itself prompter payment and greater certainty of payment.

5.      Fortunately, the Bankruptcy Code does not dictate that the Debtors accede the Prepetition Lender's unreasonable demands.  The Prepetition Lender is not entitled to absolute certainty.  It should not be permitted to force the Debtors to liquidate before they have even had the opportunity to maximize value for all stakeholders.  Rather, the Prepetition Lender is simply entitled to *adequate* protection, and then only to the extent of actual diminution in value of its cash collateral.

6.      The Debtors seek to use cash collateral because it is critically necessary to maintaining their operations and going concern value and protecting more than 200 jobs and the

Coal Company LLC (0615); and Black Warrior Minerals, Inc. (6486).  The Debtors' mailing address for purposes of these chapter 11 cases is 12250 Highway 12, Weston, CO 81091.

recoveries of other creditors from the predacious desires of the Prepetition Lender. At this time, the Debtors seek use of cash collateral for approximately two weeks, without prejudice to seeking further use. As the Debtors will demonstrate at the hearing, the Prepetition Lender will be adequately protected during these two weeks from any diminution in the value of its cash collateral.

## **RELIEF REQUESTED**

7.     The Debtors seek entry of an order substantially in the form attached hereto as **Exhibit A** (the "Interim Order") that grants:

a.     authority to use cash collateral ("Cash Collateral") of their Prepetition Lender within the meaning of sections 363(a) and 363(c) of the Bankruptcy Code to the extent of the budget attached to the Interim Order as **Exhibit 1** (the "Budget");

b.     approval of the form and manner of adequate protection to be provided to the Prepetition Lender solely to the extent of any diminution in the value of its cash collateral as a result of the Debtors' use thereof during the Budget period;

c.     waiver of any applicable stay, including (to the extent applicable) under Bankruptcy Rule 6004, to provide for immediate effectiveness of the Interim Order; and

d.     related relief.

## **SUMMARY OF ADEQUATE PROTECTION AND KEY TERMS**

| Adequate Protection | As proposed adequate protection for the interests of the Prepetition Lender in Cash Collateral, solely to the extent of, and in an aggregate amount equal, in each case, to, the Diminution in Value (as defined in the Interim Order) of such interests in Cash Collateral, the Debtors are proposing to offer the following:<br><br>1. Replacement Liens: Replacement liens (the "Adequate Protection Liens," and the property securing such liens, the "Replacement Collateral") on the proceeds of the Debtors' mineral leases; and<br><br>2. Superpriority Claims: Superpriority claims as provided for in section 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"); |
|---|---|

| Termination Events | The Debtors' right to use Cash Collateral pursuant to the Interim Order shall terminate (the date of any such termination, the "Termination Date") upon any of the following:<br><br>1. March 4, 2023 (without prejudice to future or amended orders granting extensions of such date); or<br><br>2. Any of the following shall happen in respect of the Debtors' chapter 11 cases: (i) appointment of a chapter 11 trustee or examiner or (ii) conversion of the cases to chapter 7. |
|---|---|

## JURISDICTION AND VENUE

8.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9.     The Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10.     The statutory bases for the relief requested in this Motion are sections 105(a), 361, 362, 363, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), as supplemented by rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2002-1, 4001-2 and 9013-1.

## GENERAL BACKGROUND

11.     On February 21, 2023 (the "Petition Date"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.  The Debtors have sought joint administration of their chapter 11 cases for procedural purposes.  The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee has been appointed in these cases.

12.     The Debtors' core business is mining and processing metallurgical coal for export to steel mills on the seaborne market.  The Debtors operate two coal mines in Colorado and Alabama, and are also advancing a development project for an additional mine in British Columbia.  Through both underground and surface mining methods, the Debtors extract met coal—also known as metallurgical, steelmaking or coking coal—for use in steel production. Once extracted, the Debtors transfer their coal to various ports in the United States for exporting to the global seaborne market.

13.     Additional detail regarding the Debtors, their business, the events leading to the commencement of these cases, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Jonathan Romcke in Support of Emergency Relief* (the "Romcke Declaration"), filed concurrently herewith and incorporated herein by reference.

## SUMMARY OF THE DEBTORS' PREPETITION INDEBTEDNESS

14.     As of the Petition Date, the majority of the Debtors' liabilities consists of senior secured funded indebtedness.  The Debtors' funded debt obligations comprise the following principal components:

I.      **Collins Notes**

15.     On May 24, 2022, Debtor ACUSA and non-Debtor AHQ entered into that certain *Convertible Note Agreement* with Collins St Convertible Notes Pty Ltd ACN 657 773 754 (the "Prepetition Lender"), as trustee for The Collins St Convertible Notes Fund ABN 30 216 289 383, dated May 24, 2022 (as amended, the "Collins Note Agreement").   Under the Collins Note Agreement, ACUSA issued to the Prepetition Lender two tranches of convertible notes (the "Collins Notes"): (i) Tranche 1, with a face value of $30,700,000, and (ii) Tranche 2, with a face value of $12,157,143.  The Collins Notes bear a non-default interest rate of 10% *per annum* and a default interest rate of 15% *per annum*, with a maturity date of three years from the date that each note is issued.  The Collins Notes are convertible into outstanding shares of AHQ, subject to a conversion rate.  Pursuant to that certain *Guaranty and Security Agreement* by and between Debtors ACUSA, NECH, NECC, and BWM, non-Debtors AHQ, North Central Energy Company, and Raton Basin Analytic LLC, as grantors (collectively, the "Grantors") and the Prepetition Lender, dated May 24, 2022 (as amended, the "Guaranty and Security Agreement"), the obligations arising under the Collins Notes are guaranteed by each Grantor and secured by first-priority liens (by virtue of the Subordination Agreement) on substantially all of the assets of the Grantors, subject to certain customary exclusions (the "Collins Collateral").

16.     As of the Petition Date, the aggregate principal amount outstanding under the Collins Notes is approximately A$42,857,000 (the "Collins Notes Obligations").

II.     **Cline Note**

17.     On October 26, 2020, NECC entered into that certain *Promissory Note* in favor of Cline Mining Corporation in the amount of $35,120,670.84 (as amended and restated, the "Cline Note").  The Cline Note has a maturity date of July 1, 2030.  NECC's obligations under the Cline Note were guaranteed by (i) NECC's non-Debtor subsidiaries, Raton Basin

Analytical, LLC, and North Central Energy Company, and (ii) NEHC pursuant to that certain *Guarantee Agreement*, dated October 26, 2020.

18.     Pursuant to that certain Pledge and Security Agreement, dated October 26, 2020, the obligations under the Cline Note were secured by substantially all the assets of NECC and North Central, and NEHC's pledged membership interests in NECC (the "Cline Collateral"). Cline's security interest in the Cline Collateral is subordinate only to certain customary permitted liens and the obligations arising under the Collins Notes pursuant to that certain Subordination Agreement by and between Cline and Collins, dated May 24, 2022 (the "Subordination Agreement").

19.     As of the Petition Date, the aggregate principal amount outstanding under the Cline Note was approximately US$26,000,000 (the "Cline Note Obligations," and together with the Collins Notes Obligations, the "Prepetition Secured Obligations").

## THE DEBTORS' URGENT NEED TO USE CASH COLLATERAL

20.     The Debtors urgently need to use Cash Collateral to continue to operate their business and to fund the administration of these chapter 11 cases in the first two weeks of these cases.  Absent the relief requested herein, the Debtors will not have sufficient liquidity to continue mining operations, fund payroll and benefits obligations, pay vendors of necessary goods and services, and satisfy other operational requirements during this period.  The foregoing expenditures are necessary to preserve the value of the Debtors' estates as a going concern.  Any delay in the Debtors' ability to access Cash Collateral would irreparably harm the Debtors and their estates and creditors.

## BASIS FOR RELIEF

21.     A debtor's use of property of the estate, including cash collateral, is governed by section 363 of the Bankruptcy Code, which provides, in pertinent part, as follows:

> If the business of the debtor is authorized to be operated under
> section . . . 1108 . . . of [the Bankruptcy Code] and unless the court
> orders otherwise, the [debtor] may . . . use property of the estate in
> the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).  A debtor may use cash collateral (a) with the consent of the secured party

or (b) without the consent of the secured party if the court, after notice and a hearing, authorizes

the debtor to use cash collateral in accordance with the provisions of section 363 of the

Bankruptcy Code.  *See* 11 U.S.C. § 363(c)(2).

      22.     Section 363 of the Bankruptcy Code further provides that a debtor must

"provide adequate protection" of the secured party's interest in the property against any

diminution in value of such interest resulting from the debtor's use of the property.  *See* 11

U.S.C. § 363(e).  Notably, the Bankruptcy Code does not define "adequate protection."  Instead,

section 361 of the Bankruptcy Code provides a non-exhaustive list of examples of adequate

protection, including cash payments, additional or replacement liens and other relief that will

"result in the realization by such [secured party] of the indubitable equivalent of such entity's

interest in such property."  *See* 11 U.S.C. § 361; *see also Resolution Tr. Corp. v. Swedeland Dev.

Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("The Code does

not expressly define adequate protection, but section 361 states that it may be provided by (1)

periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the

'indubitable equivalent' of the secured creditor's interest in such property.").

      23.     Thus, determining what constitutes adequate protection is necessarily a

fact-specific inquiry.  *See id.*, 16 F.3d at 564 ("[A] determination of whether there is adequate

protection is made on a case by case basis") (citing *In re O'Connor*, 808 F.2d 1393, 1397 (10th

Cir. 1987)).  The focus of the adequate protection requirement is to preserve the secured party's

position at the time of the bankruptcy filing and protect the secured party from diminution in the

value of its collateral during the reorganization process. *Id.* ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy") (quoting *In re O'Connor*, 808 F.2d at 1396); *see also In re WorldCom, Inc.*, 304 B.R. 611, 618–19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose . . . is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy."). "However, neither the legislative history nor the Bankruptcy Code require the Court to protect a creditor beyond what was bargained for by the parties." *In re WorldCom*, 304 B.R. at 619.

24.     Furthermore, the Bankruptcy Code mandates that a secured party be protected against diminution in the value of its interest in cash collateral only during the period of use. *See In re Cont'l Airlines, Inc.*, 146 B.R. 536, 539–40 (Bankr. D. Del. 1992) (noting that a secured party is only entitled to adequate protection to the extent the collateral declined in value); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no diminution in the value of the secured party's collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected against the use of cash collateral); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization."). The preservation of a debtor's business as a going concern itself provides "adequate protection" under the Bankruptcy Code. *See id.* (noting that whether the value of a debtor's property will increase as a result of the use of collateral is part of considering whether a party is adequately protected).

25.     The Prepetition Lender has not consented to the Debtors' use of Cash Collateral without unreasonable and deleterious conditions attached.  As set forth in the above, however, the Debtors urgently need to use Cash Collateral to continue to fund the continued operation of their business during the Budget period.  The Debtors' estates and creditors will suffer immediate and irreparable harm absent authorization to use Cash Collateral, including because the Debtors will be forced to shut down and cease as going concern, laying off their employees, idling their mines, and destroying or damaging goodwill and customer and vendor relationships.  Accordingly, to assure use of the Cash Collateral during the critical first two weeks of these cases, the Debtors propose to provide the Prepetition Lender with adequate protection as set out above to the extent of any actual diminution in value of its interest in Cash Collateral during the Budget period.

26.     Courts have held that granting replacement liens is an appropriate form of adequate protection.  *See Swedeland Dev. Grp.*, 16 F.3d at 564, 566; *In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 220 n.9 (Bankr. D. Del. 1995) ("[P]ursuant to Code § 361, 'adequate protection' to a secured creditor may be provided in the form of an additional or replacement lien."); *see also In re Int'l Design & Display Grp., Inc.*, 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993); *In re Karl A. Neise, Inc.*, 16 B.R. 602, 603 (Bankr. S.D. Fla. 1981).  In addition, considered in the context of the Debtors' current and projected cash and position—and because the Debtors will use the Cash Collateral to preserve the value of the Debtors' business as a going concern—the proposed adequate protection is more than sufficient to protect the Prepetition Lender against any actual diminution in value of its interest in the Cash Collateral.  As such, the Debtors assert that their proposal to provide the Prepetition Lender with replacement liens and superpriority administrative expense claims adequately protects the

Prepetition Lender and supports the Debtors' use of Cash Collateral during the critical first two weeks of these chapter 11 cases.  Further, under the circumstances of these cases, the Debtors submit that the adequate protection provided in the Interim Order is fair and reasonable under the circumstances, satisfies the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and is in the best interests of the Debtors, their estates, and all parties in interest.

27.     Moreover, courts in this district have approved similar adequate protection packages for use of cash collateral on a standalone basis and in connection with debtor in possession financing in recent chapter 11 cases. Similar authorization is appropriate in these cases.

## REQUEST FOR INTERIM RELIEF

28.     Bankruptcy Rule 4001(b) provides that the Court may commence a final hearing on a motion to use cash collateral no earlier than 14 days after service of the motion. Fed. R. Bankr. P. 4001(b).  If the motion so requests, however, the Court may conduct a preliminary hearing before such 14-day period expires, and the Court may authorize the use of cash collateral only to the extent necessary to avoid immediate and irreparable harm to the debtors' estates pending a final hearing.  *Id.*

29.     For the reasons discussed above, entry of the Interim Order authorizing the Debtors to use Cash Collateral and granting the other relief requested herein is necessary to avoid a severe disruption in the Debtors' operations at this critical juncture, to preserve the going-concern value of the Debtors' business, and to maximize the value of the Debtors' estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 4001(b) to support granting the relief requested herein.

11

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 4001(a)(3)

30.     The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3).    Bankruptcy Rule 4001(a)(3) provides, "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).  The use of Cash Collateral is essential to prevent irreparable damage to the Debtors' estates.  Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

31.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003; *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549–50 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See*, *e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See*, *e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 653–55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## <u>RESERVATION OF RIGHTS</u>

32.     Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim or lien against the Debtors, including those of the Prepetition Lender; (ii) a waiver of the Debtors' rights to dispute any claim or lien, including those of the Prepetition Lender; (iii) a waiver of the Debtors' claims, causes of action, and equitable remedies, including, without limitation, equitable subordination of the Prepetition Lender's liens or claims; (iv) a promise or requirement to pay any claim; (v) a waiver of any claim or cause of action of the Debtors that exist against any entity; (vi) a ratification or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; or (vii) a waiver of limitation of the Debtors' rights under the Bankruptcy Code, any other applicable law, or any agreement.

## <u>WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h) REQUIREMENTS</u>

33.     In addition, by this Motion, the Debtors request a waiver of any notice requirements under Bankruptcy Rule 6004(a) and any stay of the effectiveness of the order(s) approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth above, the Debtors require immediate relief to continue ordinary operations for the benefit of all parties in interest.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## <u>NOTICE</u>

34.     Notice of this Motion is being provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Prepetition Lender; (c) Cline Mining

Corporation; (d) the Debtors' banks; (e) the Securities and Exchange Commission; (f) the Internal Revenue Service; (g) the United States Attorney's Office for the District of Delaware; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that no further notice need be given under the circumstances.  Any order entered hereon will be served in accordance with Local Rule 9013-1(m)(iv).[2]

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Interim Order granting the relief requested in this Motion, and such other and further relief as the Court may deem just and appropriate.

Dated: February 22, 2023      **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
       Wilmington, Delaware

*/s/ Paige N. Topper*
Robert J. Dehney (No. 3578)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
Taylor M. Haga (No. 6549)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@morrisnichols.com
mharvey@ morrisnichols.com
ptopper@ morrisnichols.com
thaga@ morrisnichols.com

*Proposed Counsel to the Debtors and Debtors in Possession*

---

[2]    The Debtors have not yet filed a list of their top 20 unsecured creditors pursuant to Bankruptcy Rule 1007(d) (the "Top 20 List") and therefore have not served this Motion on the Top 20 List. The Debtors intend to file the Top 20 List as soon as possible.