IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ALLEGIANCE COAL USA LIMITED, *et al.*,[1] | ) ) ) | Case No. 23-10234 (CTG) |
| Debtors. | ) ) ) ) | (Jointly Administered) |
| | ) | **Related to Docket No. 9** |

**OBJECTION OF COLLINS ST CONVERTIBLE NOTES PTY LTD, AS TRUSTEE FOR THE COLLINS ST CONVERTIBLE NOTES FUND, TO DEBTORS' CASH COLLATERAL MOTION**

Collins St Convertible Notes Pty Ltd, as trustee for The Collins St Convertible Notes Fund (the "Noteholder"), files this objection (this "Objection") to the *Debtors' Motion for Interim Order (I) Authorizing the Debtors to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Lender, (III) Waiving Any Stay of the Effectiveness of the Relief Granted, and (IV) Granting Related Relief* [Docket No. 9] (the "Motion"), filed by the above-captioned debtors and debtors in possession (together, the "Debtors") on February 22, 2023, just before midnight Eastern time.[2] In support of this Objection, the Noteholder respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Motion is correct that the Noteholder is unwilling to consent to the use of Cash Collateral on the terms proposed by the Debtors, but fails to explain that the Debtors neglected to provide the Noteholder with a bankruptcy budget until the filing of the Motion or to engage in meaningful discussions regarding the use of Cash Collateral on consensual terms. The

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Allegiance Coal USA Limited (1324); New Elk Coal Holdings LLC (1314); New Elk Coal Company LLC (0615); and Black Warrior Minerals, Inc. (6486). The location of the Debtors' service address for purposes of these chapter 11 cases is 12250 Highway 12, Weston, Colorado 81091.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Debtors have not shown that they can operate the business without the continuation of substantial losses. The Debtors have attempted to revitalize their operations without success over the course of the past six months. The Noteholder agrees that the pursuit of a going concern sale process is often the desired path. However, under the circumstances here and based on the limited information available, the Noteholder is not willing to fund the ongoing losses that the Debtors incur without any current sale prospects or confirmation that the Debtors can operate on a break-even basis. Instead, the Noteholder is left with the choice of funding the Debtors' unsustainable losses or preserving the assets in the most cost-efficient manner so they can be positioned for a sale to the highest and best bidder.

2. The Noteholder, which is an entity based in Australia,[3] is the Debtors' principal secured creditor with a lien and security interest upon substantially all of the Debtors' assets, including their operating coal mines located in Alabama and Colorado. The Noteholder is owed no less than $30 million (AUS $42,857,153), plus interest, in connection with certain indebtedness incurred by the Debtors starting in May 2022. The Noteholder objects to the Motion because the Debtors seek to use the Noteholder's cash collateral and maintain operations in a "business as usual" manner despite their history of failed promises, missed projections, speculative sales, and ongoing operating losses. The Noteholder will consent to cash collateral use to maintain and preserve the Debtors' coal mines, but only if they are mothballed and all operations cease immediately, while the Debtors move to an orderly sale process and meet certain typical sale milestones, including the retention of qualified investment bankers. The Noteholders are unwilling to fund ongoing operational losses while the Debtors search for a solution that they have not been able to identify for months.

---

[3] The Debtors' ultimate parent, Allegiance Coal Limited ("AHQ"), is also an Australian entity that, until yesterday, was publicly traded in Australia. AHQ has commenced insolvency proceedings in Australia.

3. Based on the Debtors' checkered history of operating losses, the Noteholder's lack of trust in current management (which incidentally has been replaced in Australia by an insolvency administrator), and the realities of today's difficult coal market, it makes no economic sense to allow the Debtors to continue to lose money on ongoing operations. More to the point, the Debtors cannot establish that the Noteholder would be adequately protected against the diminution in value that it would suffer from continuing ordinary course operations.

4. The Noteholder stands ready to negotiate the terms of consensual cash collateral use, so long as the Debtors employ only the necessary staff to preserve their assets and move promptly towards a marketing process.[4] As currently proposed, however, the Motion must be denied.

## BACKGROUND

5. On February 21, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under the Bankruptcy Code.

6. As of the Petition Date, (a) Debtor Allegiance Coal USA Limited ("Allegiance USA"), its parent AHQ, and the Noteholder were parties to the *Deed of Variation*, dated August 12, 2022, that amends and restates that certain *Convertible Note Agreement*, dated May 24, 2022, (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Note Agreement") and (b) Allegiance USA, AHQ, and the other Debtors were parties to the *Guaranty and Security Agreement* dated May 24, 2022 (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Guaranty and Security Agreement").

---

[4] Notably, the Noteholder is aware of no prepetition marketing efforts conducted by the Debtors.

7. As of the Petition Date, the Debtors, jointly and severally, were unconditionally indebted and liable to the Noteholder, without defense, counterclaim or offset of any kind, for all of the Secured Obligations (as defined in the Guaranty and Security Agreement), including the Outstanding Face Value (as defined in the Note Agreement) in the aggregate principal amount of AU$42,857,153 under the Note Agreement, plus accrued and unpaid interest and fees in accordance with the terms of the Transaction Documents (as defined in the Note Agreement). The Secured Obligations are secured by first priority security interests in and liens (collectively, the "First Priority Prepetition Liens") on substantially all of the Debtors' assets (including Cash Collateral) (collectively, the "Prepetition Collateral") (excluding the Excluded Property (as defined in the Guaranty and Security Agreement)), pursuant to (i) the Guaranty and Security Agreement, (ii) the *Leasehold Mortgage, Security Agreement, Assignment of Leases, Rents, and Profits, Financing Statement, Fixture Filing, and As-Extracted Collateral Filing*, dated as of August 11, 2022 (as amended, restated, supplemented or otherwise modified, the "Black Warrior Mortgage"), made by Debtor Black Warrior Minerals, Inc. in favor of the Noteholder, (iii) the *Deed of Trust to Public Trustee, Mortgage, Security Agreement, Assignment of Production and Proceeds, Financing Statement and Fixture Filing*, dated as of August 11, 2022 (as amended, restated, supplemented or otherwise modified, the "New Elk Deed of Trust"), made by Debtor New Elk Coal Company LLC in favor of the Noteholder, (iv) those certain deposit account control agreements made by the applicable Debtors in favor of the Noteholder, and (v) the other Security Documents (as defined in the Note Agreement).[5]

---

[5] Pursuant to that certain *Subordination Agreement* dated as of May 24, 2022, by and between the Noteholder, as senior creditor, and Cline Mining Corporation, as subordinated creditor (the "Subordinated Creditor") (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Subordination Agreement"), the Subordinated Creditor agreed, among other things, that its liens and claims against the Convertible Note Priority Collateral (as defined in the Subordination Agreement) are junior to the liens of the Noteholder. The "Convertible Note Priority Collateral" means, collectively, the equity interests in New Elk Coal Company LLC held

8. On February 20, 2023, the Noteholder delivered a notice of default and acceleration upon AHQ and the Debtors on the basis that (a) AHQ and the Debtors were not paying their debts as they come due and (b) they had received a lease default and termination letter from one of their landlords. The Noteholder has since learned that the Debtors have failed to pay substantial royalty and vendor obligations that total more than $15,000,000 between the two operating Debtors.

9. The Motion was filed on February 22, 2023, just before midnight Eastern Time. The initial emergency hearing on the Motion before this Court is set for February 23, 2023, at 2:00 p.m. Eastern time.

10. Through the Motion, the Debtors initially seek to use cash collateral for a period of two weeks in the ordinary course. The Debtors' bare bones budget (the "Proposed Budget") assumes cash receipts of over $7 million over this time period and does not take into account any restructuring costs.

11. The Debtors have proposed adequate protection in favor of the Noteholder in the form of replacement liens on the proceeds of mineral leases. The Noteholder already has liens on many of the Debtors' leases and the proceeds thereof. Plus, the Debtors have offered superpriority claims to the Noteholder pursuant to Section 507(b) of the Bankruptcy Code. The foregoing adequate protection is insufficient for the reasons set forth below.

## OBJECTION

12. The Bankruptcy Code requires debtors to provide a secured creditor with adequate protection to the extent that the automatic stay, the debtors' use of property, or a priming lien "results in a decrease in the value of such entity's interest in such property." 11 U.S.C. §

---

by New Elk Coal Holdings LLC and all of the assets of New Elk Coal Company LLC, in each case, constituting "Collateral" as defined in the Guaranty and Security Agreement.

361(1). The purpose is to protect a secured creditor from diminution in the value of its collateral during the use period. *United Sav. Ass'n v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 368 (1988); *In re 495 Central Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (goal is to "safeguard the secured creditor from diminution in the value of its interest"); *Lincoln Nat'l Life Ins. v. Craddock-Terry Shoe Corp. (In re Craddock-Terry Shoe Corp.)*, 98 B.R. 250, 255 (Bankr. W.D. Va. 1988) (finding that what needs to be adequately protected is the decrease in value attributable to the stay arising on the petition date).

13. "[T]he initial burden of showing the need for adequate protection [is] upon the creditor having an interest in the property being used by the debtor. In order to meet this burden, the secured creditor must demonstrate that such relief is required by showing a likelihood that the collateral will decrease in value or establishing some other basis for the relief. The burden then shifts to the debtor to show that adequate protection is not needed or can be provided in a different manner." *Zink v. Vanmiddlesworth*, 300 B.R. 394, 402-03 (N.D.N.Y. 2003) (citations omitted). *See also In re Gunnison Ctr. Apartments*, 320 B.R. 391, 396 (Bankr. D. Colo. 2005) ("The secured creditor 'must, therefore, prove this decline in value—or the threat of a decline—in order to establish a *prima facie* case.'") (quoting *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994)); *In re Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992) ("Post-*Timbers* courts have uniformly required a movant seeking adequate protection to show a decline in value of its collateral.").

14. Here, the Proposed Budget projects over $7 million of cash receipts over the term of the two-week budget. The Noteholder has requested the basis for these optimistic projections from the Debtors, including executed purchase contracts and/or price commitments. None have been provided by the Debtors to date.

15. The Noteholder submits that the Proposed Budget is not realistic. The Debtors have historically sustained ongoing losses from operations. Without legitimate justification, the Debtors now project that their receipts from coal sales will increase nearly <u>fourteen times</u> over the course of one week from $475,000 to $6,625,000. There is nothing in the record that shows the Debtors have any binding commitments from parties to purchase coal at these levels.

16. Further, the Proposed Budget does not reflect the restructuring expenses that the Debtors have and will incur over the next two weeks. The administration of debtors in chapter 11 is not cheap. If the Debtors add in their restructuring disbursements, it would show that they are increasing administrative liability that they have no prospects of satisfying.

17. Section 361 of the Bankruptcy Code provides that periodic cash payments, replacement liens, or relief constituting the "indubitable equivalent" of the creditor's interest may provide adequate protection. Provision of a replacement lien in property equal to the value of the cash collateral used specifically complies with section 361(2) and provides adequate protection within the meaning of section 363(e) of the Bankruptcy Code. *See, e.g., In re O'Connor*, 808 F.2d at 1398; *In re Dynaco Corp.*, 162 B.R. 389, 393-95 (Bankr. D.N.H. 1993); *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. D. Mass. 1988).

18. The adequate protection proposed for the Noteholder here is limited to replacement liens on the proceeds of mineral leases. In other words, the Noteholder is not getting anything new. As it stands, the Noteholder believes that its Secured Obligations are undersecured. Hence, any additional losses incurred by the Debtors will necessarily result in a diminution in the Noteholder's existing collateral position. Without periodic cash payments or liens on new and additional valuable assets, the Noteholder will suffer a substantial diminution in value, especially

if the Debtors are focused on continuing coal operations in the ordinary course. The Debtors willingness to provide superpriorty claims pursuant to Section 507(b) of the Bankruptcy Code is no better because the Debtors likely will not have the cash necessary to administer the estates on a solvent basis.

19. The Debtors have lost tens of millions of dollars over the last few months on a prepetition basis. The Debtors also have a long history of missed projections and overly rosy expectations. The Noteholder estimates that the Debtors will continue to lose money during the course of these cases if they continue operating business as usual, without even considering the Debtors' ongoing accrual of restructuring costs. The Noteholder has lost all faith in the Debtors' management team and, indeed, by virtue of AHQ's commencement of insolvency proceedings in Australia, AHQ's management has been displaced by an insolvency administrator there.

20. As noted above, the Noteholder is prepared to consent to the Debtors' use of cash collateral under a reasonable mothball budget with a skeletal staff, subject to customary milestones that require the Debtors to commence an orderly sale process under section 363 of the Bankruptcy Code and to retain qualified investment bankers to run the Debtors' marketing efforts. Absent that, the Noteholder urges the Court to deny the Motion in its present form.

## RESERVATION OF RIGHTS

21. Given the short timing between the filing of the Motion and the initial emergency hearing thereon, the Noteholder expressly reserves all rights, claims, defenses, and remedies, including, without limitation, to supplement and amend this Objection, to raise further and other objections to the Motion and the form of any interim or final order, and to introduce evidence prior to or at any hearing regarding the Motion in the event that the Noteholder's objections are not resolved prior to such hearing.

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, the Noteholder respectfully requests that the Court deny the Motion until the Noteholder's objections set forth herein have been adequately addressed and grant such other and further relief as may be just and proper under the circumstances.

Dated:  February 23, 2023                                       PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No.271038)
Maxim B. Litvak (CA Bar No. 215852)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899 (Courier 19801)
Telephone: 302-652-4100
Facsimile:  302-652-4400
E-mail:   joneill@pszjlaw.com
                jlucas@pszjlaw.com
                mlitvak@pszjlaw.com

*Counsel for the Noteholder*