IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ALLEGIANCE COAL USA LIMITED, *et al.*, | ) | Case No. 23-10234 (CTG) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | Related to Docket No. 52 |

**DECLARATION OF SUZAN SANDERSON IN SUPPORT OF
OBJECTION OF WARRIOR MET COAL LAND, LLC TO DEBTORS'
MOTION FOR THE USE OF CASH COLLATERAL**

Suzan Sanderson hereby makes the following declaration:

### I. Background

1. I am the Manager – Land & Land Development and I provide real estate management services for properties owned by Warrior Met Coal Land, LLC ("Warrior Land").

2. For example, if there are coal mining leases on any real property that our companies own, I would be charged with knowing about and administering such leases.

3. I have first-hand knowledge of the facts stated in this affidavit and make these statements upon my personal knowledge.

4. I make this declaration in support of the Objection of Warrior Met Coal Land LLC to the Debtors' Motion for the Use of Cash Collateral.

5. Black Warrior Minerals, Inc., ("Black Warrior") is a Debtor in the jointly administered bankruptcy cases under *In re Allegiance Coal USA, LTD*, Case No. 23-10234 (CTG).

6. Black Warrior is also the Lessee (as defined therein) under a Surface Coal Mining Lease effective as of March 17, 2009 (the "Lease").

7. The original Lessor (as defined therein) under the Lease was United Land Corporation.

8. Through various mesne conveyances, Warrior Land became the Lessor under the Lease in 2016.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Allegiance Coal USA Limited (1324); New Elk Coal Holdings LLC (1314); New Elk Coal Company LLC (0615); and Black Warrior Minerals, Inc. (6486). The Debtors' mailing address for purposes of these Chapter 11 cases is 12250 Highway 12, Weston, CO 81091.

1

9. A true and accurate copy of the Lease inclusive of all its amendments is attached to this Declaration as Exhibit A.

10. The acreage Warrior Land leases to Black Warrior in the Lease a substantial portion of the acreage comprising the Black Warrior surface mine near Birmingham, Alabama.

## II.     Relevant Terms and Conditions of the Lease.

11. The Lease requires, among other things, that Black Warrior pay a Monthly Minimum Royalty[2] of $10,000 per month and an Actual Production Royalty for each ton of 2,000 pounds of coal mined from the Premises.

12. The Actual Production Royalty is measured at 12.5% of the Gross Sales Price, F.O.B. Loading Point, for Fee Simple Property (being the coal that Warrior Land owns in fee).

13. The Actual Production Royalty is measure at 8% of the Gross Sales Price, F.O.B. Loading Point, for Mineral Only Property (being the property where Warrior Land owns the right to the coal and other minerals only).

14. The Actual Production Royalty is measured at 5% of the Gross Sales Price, F.O.B. Loading Point, for Surface Rights Only Property (being the property where Warrior Land owns the right to use the surface of the property).

15. The Minimum Monthly Royalty is recoupable against the Actual Production Royalty for a period of five years after the Minimum Monthly Royalty is paid.

16. The Lease defines Gross Sales Price as

> [T]he final and actual sales price at which the coal mined from the Premises hereunder is sold to a Bona Fide Purchaser (as defined below), plus BTU bonus or minus BTU penalty, without deducting from said Gross Sales Price any mining costs, overhead, on-site transportation or handling charges or fees, on-site washing costs, brokerage fees, sales commissions, coal analysis charges or fees, taxes, advertising, or any other costs or charges whatsoever; except, however, in the case of coal mined hereunder and sold F.O.B. some point other than the Loading Point, the Gross Sales Price may upon Lessor's prior written approval, which may be withheld in Seller's sole discretion, be reduced by deducting therefrom reasonable

---

[2] Capitalized terms in this declaration shall have the same definition as in the Lease, unless a capitalized term is specifically defined herein.

2

transportation charges paid by and not reimbursed to Lessee beyond the Loading Point.

17. The Lease also obligates Black Warrior to send monthly Lessee's Statements to Warrior Land.

18. Black Warrior must certify the monthly Lessee's Statements.

19. The Lessee's Statements must contain the following information:

    a. Beginning and ending inventory or stockpile tonnages of coal mined from the Premises;
    b. The number of tons of coal shipped/sold from the Premises to Bona Fide Purchasers;
    c. The Gross Sales Price per ton of all coal shipped/sold from Lessee's operations of which the Premises are a part (irrespective of whether mined from the Premises or from land owned or leased by Lessee from others);
    d. Computation of Actual Production Royalties payable, according to type of ownership, based on the number of tons sold or used or consumed by Lessee from the Premises during the preceding month);
    e. A listing of individual tonnages and invoice prices to support weighted average sales prices whenever there are different sales prices to the same customer during the month;
    f. A listing, by customer, of each coal shipments' origination and destination points, and the freight rate (if applicable);
    g. Computation of the reduction of Advance/Minimum Monthly Royalty, if any.

20. The monthly Lessee's Statements must be further supported by certain information, including Engineering Maps and Measurements.

### III. Black Warrior's Breach of the Lease.

21. Prior to its 2022 sale to Allegiance Coal USA, Black Warrior paid its royalties on time and in compliance with the Lease terms for calculating the Actual Production Royalty.

22. On April 25, 2022, Warrior Land received a royalty calculation from Black Warrior that, for the first time that I know of, purported to take deductions from the Gross Sales Price for transportation costs, washing costs, handling costs, taxes, and coal analysis fees, all of which are prohibited deductions under the Lease.

23. Black Warrior's unauthorized deductions resulted in a $69.43 reduction in the Gross Sales Price, from $248.61 to $179.18. A true and accurate copy of the royalty calculation received on April 25, 2022, is attached hereto as Exhibit B.

24. Warrior Land referred the unauthorized deduction spreadsheet to outside counsel.

25. On May 18, 2022, outside counsel sent a letter to Black Warrior stating,

> Black Warrior is not entitled to deduct any amounts from the final and actual selling price before calculating Warrior's royalty. Warrior has not granted prior written approval to Black Warrior to make any transportation deductions. Accordingly, the royalty calculation reflected on check number 1409, dated April 22, 2022, violates the terms of the Surface Mining Lease.

A true and accurate copy of the May 18, 2022, letter from outside counsel is attached hereto as Exhibit C.

26. After receiving that letter, for the months of June 2022 through January 2023, Black Warrior paid only the Minimum Monthly Royalty.

27. After receiving that letter, other than engineering maps in June 2022, Black Warrior sent no further production reports, monthly Lessee's Statements, Engineering Maps, or Measurements.

28. The absence of production reports, monthly Lessee's Statements, Engineering Maps, and Measurements, combined with the payment of only Monthly Minimum Royalties, left Warrior Land with the impression that no coal had been mined and sold from the Premises.

29. On August 28, 2022, Black Warrior, through its President, Rance Perry, sent a letter to Warrior Land seeking an amendment to the Lease to allow deductions from the Gross Sales Price for costs Black Warrior was incurring due to trucking, washing, barging costs, and handling. A true and accurate copy of this letter is attached to this declaration as Exhibit D.

30. On behalf of Warrior Land, I phoned Rance Perry and rejected this proposal orally.

31. Warrior Land has never agreed to amend the Lease to allow for deductions as requested in Mr. Perry's letter.

32. Warrior Land never agreed to allow Black Warrior to pay only Monthly Minimum Royalties (and not Actual Production Royalties).

33. Because, for the period starting in June 2022, Black Warrior sent only Monthly Minimum Royalties and no information regarding production, Warrior Land presumed that Black

4

Warrior had no sales for this period, since sales are the trigger for Actual Production Royalty payments under the Lease.

34. In December 2022, *Coal Age*, a well-known periodical that reports on events in the coal industry, published an article in which Black Warrior touted recent sales made by Black Warrior during the second half of 2022. A true and accurate copy of that article is attached hereto as Exhibit E.

35. We at Warrior Land were surprised by this article because, by all indications given to us by Black Warrior, Black Warrior had not sold any coal from the Lease Premises.

36. After reviewing the article, Warrior Land contacted Black Warrior to inquire about production and sales status at the mine.

37. Thereafter, Black Warrior admitted that it had mined and sold tens of thousands of tons of coal from the Lease Premises. While we don't have all of the documentation from Black Warrior, I believe this would have began in the summer of 2022 and ending on December 31, 2022.

38. Based on Warrior Land's calculations, Black Warrior owed more than $2,000,000 in Actual Production Royalties as of February 17, 2023. Because Warrior Land has not been provided full information on Black Warrior's sales, Warrior Land cannot precisely calculate the total amount of past-due Actual Production Royalties.

39. Black Warrior provided limited information purporting to reflect production and sales during 2022 to Warrior Land between February 7, 2023, and February 9, 2023. Warrior Land has had insufficient time and information to verify any claims made by Black Warrior in those summary spreadsheets.

40. Section 6.6 of the Lease also requires a service charge of one and one-half percent (1.5%) per month on all royalty payments which have not been paid by their respective due dates.

41. Black Warrior admitted that it had not paid Warrior Land the Actual Production Royalties for the coal it had mined and sold throughout an unknown period in 2022 to the present day.

42. On February 13, 2023, Warrior Land met with Black Warrior and asked Black Warrior to present a plan for paying the past-due Actual Production Royalties. Warrior Land asked for the plan to be delivered no later than the close of business on Friday, February 17, 2023.

43. As the day drew to a close on Friday, February 17, 2023, Philip Saunders, Senior Vice President of Engineering for Warrior Land, and I drove to Black Warrior's offices in Birmingham, Alabama.

44. On behalf of Warrior Land, Mr. Saunders hand-delivered a Notice of Event of Default pursuant to Article XVI of the Lease to Mr. Romcke, CEO of Debtor Allegiance Coal USA Ltd and Vice President and Secretary of Debtor Black Warrior. A true and accurate copy of the Notice of Event of Default is attached hereto as Exhibit F.

45. Unbeknownst to Mr. Saunders or me, as we were driving to Black Warrior's offices, Black Warrior emailed Mr. Saunders a proposed payment plan to come current on the past-due Actual Production Royalties. A true and accurate copy of Black Warrior's emailed payment plan is attached hereto as Exhibit G.

46. In oral conversations with Mr. Romcke, Mr. Saunders rejected the emailed proposed payment plan found at Exhibit G.

47. After further discussions, Black Warrior and Warrior Land agreed that Warrior Land would forbear on the Notice of Default in exchange for Black Warrior paying Warrior Land the past-due Actual Production Royalties according to the following schedule:

    a. $1,000,000 by 5:00pm CT on February 22, 2023;
    b. $1,000,000 by 5:00pm CT on March 6, 2023; and
    c. All remaining amounts due by 5:00pm CT on March 20, 2023.

48. Early in the morning on Monday, February 20, 2023, Warrior Land memorialized its agreement to forbear on the Notice of Default in exchange for Black Warrior's agreement to the payment schedule described above. A true and accurate copy of the letter setting forth the payment schedule and forbearance agreement is attached hereto as Exhibit H.

49. After receiving Warrior Land's forbearance letter on February 20, 2023, but before the first $1,000,000 payment was due on February 22, 2023, Black Warrior filed for bankruptcy after the close of business on February 21, 2023.

50. Black Warrior has not paid any amounts under the payment schedule and forbearance agreement and, as of the date hereof, still owes more than $2,000,000 in royalties under the Lease, plus interest according to Section 6.6 of the Lease, subject to Warrior Land's ongoing further review and investigation of the same.

## IV.  Liens Granted in the Lease

51. The Lease states that Black Warrior grants Warrior Land a lien as follows.

> Lessor shall have and is hereby granted a purchase money lien and charge on all coal in situ and a purchase money security interest in any and all coal that has been mined from the Premises to secure Lessee's obligations hereunder including without limitation the obligation to pay any and all rents, royalties, and other amounts due or to become due to Lessor under this Agreement.

52. On December 3, 2021, Warrior Land filed a Memorandum of Lease in the land records of Jefferson County, Alabama, where the Lease and the Black Warrior mine is located.

53. The Memorandum of Lease notes on its face that Warrior Land has a lien as described above. A true and accurate copy of the Memorandum of Lease is attached hereto as Exhibit I.

54. On February 8, 2023, Warrior Land filed a UCC-1 Form indicating that it had a security interest in the coal in situ and any as-extracted collateral with the Secretary of State of Alabama. A true and accurate copy of the UCC-1 Form filed with the Alabama Secretary of State is attached hereto as Exhibit J.

55. On February 10, 2023, Warrior Land filed a UCC-1 Form indicating that it had a security interest in the coal *in situ* and any as-extracted collateral in the land records in Jefferson County, Alabama. A true and accurate copy of the UCC-1 Form filed in Jefferson County is attached hereto as Exhibit K.

56. Warrior Land, through counsel, performed a UCC lien search in Jefferson County, and no other party claims a security interest in the land, coal, or as-extracted collateral in the Premises controlled by Lease. A true and accurate copy of the UCC lien search results is attached hereto as Exhibit L.

57. As to the extent of the lien, the Lease covers roughly 1,119 acres in Jefferson County. The extent of the Premises defined in the Lease (and therefore the extent of the property to which Warrior Land's lien attaches) is defined by the map attached hereto as Exhibit L, which is a true and accurate copy of the description of the Premises in the Lease.

58. Based upon my review of records kept by Warrior Land, roughly 4,125,000 short tons of recoverable clean coal exist in the Lease Premises, as of December 31, 2022.

Pursuant to 28 U.S.C. § 1746, I, Suzan Sanderson, declare under penalty of perjury that the foregoing is true and correct.

Date: 3/2/2023

Signature: *Suzan Sanderson*

8