**Exhibit 3**
**Deed of Guarantee, Indemnity and Charge**

**Deed of Guarantee, Indemnity and Charge**

This deed is made on 24 May 2022

By:

**Allegiance Coal Limited** ACN 149 490 353
of Suite 107, 109 Pitt Street Sydney NSW 2000
**(Guarantor)**

In favour of:

**Collins St Convertible Notes Pty Ltd** ACN 657 773 754 ATF The Collins St Convertible Notes Fund
ABN 30 216 289 383
of Level 9, 365 Little Collins Street, Melbourne VIC 3000
**(Financier)**

## 1.    Definitions and Interpretation

### 1.1    Definitions

In this deed words or expressions printed in bold have the meaning given to them unless the context requires another meaning:

**Agreement** means the Convertible Note Agreement and each other "Transaction Document" (including any schedule or annexure to those documents and all written amendments or supplements) and related documents.

**ASX** means the ASX Limited (ACN 008 624 691) and the securities exchange operated by ASX Limited.

**Borrower** means Allegiance Coal USA Limited a Delaware corporation with registered address of 1209 Orange Street, Wilmington, Delaware, 19801, USA.

**Business Day** means a day that is not a Saturday, Sunday or any other day which is a public holiday or a bank holiday in the place where an act is to be performed or a payment is to be made.

**Collateral Security** means any document that grants a Security Interest to the Financier, any Guarantee in favour of the Financier or other document or agreement at any time created or entered into in connection with or as security in respect of the Guaranteed Obligations.

**Convertible Note Agreement** means the convertible note agreement between the Financier, the Guarantor and the Borrower dated 24 May 2022.

**Corporations Act** means the *Corporations Act 2001* (Cth).

**Event of Default** means an Event of Default as defined in an Agreement and any other event of default (however described) under, or as defined in, any Transaction Document.

**Guarantee** means this deed and any Schedule or annexure to this deed and all written amendments or supplements and any other guarantee, indemnity, letter of credit, performance bond, legally binding letter of comfort or suretyship, or any other obligation to indemnify against the consequences of default in the payment of, or to be responsible otherwise for, an obligation or indebtedness of another person.

**Guaranteed Obligations** means all monetary or other obligations whatsoever that the Borrower has with the Financier now and in the future and includes any monetary or other obligations connected or in any way related to any one or more of the following:

(a) an Agreement; or

(b)  any account;

in any way whatsoever and whether:

(a)  the Borrower is liable alone or together with another person;

(b)  the Borrower is liable as principal debtor, surety, partner, trustee, financier or otherwise; or

(c)  the obligation or relevant liability:

    (i)  is actual or contingent, ascertained or unascertained, fixed or fluctuating; or

    (ii)  is in respect of principal, interest, obligations under a Guarantee, purchase obligations, fees or damages; or

    (iii)  is in Australian dollars or another currency or combination of currencies; or

    (iv)  is of any other character.

**Land** includes any lease or other interest in or right:

(a)  in respect of land; or

(b)  which authorises exploration for or extraction or mining of, minerals, petroleum, geothermal energy or any other substance from land.

**Month** means calendar month.

**Obligor** means the Borrower and Guarantor, and **Obligors** means all and any one or more of them.

**Officer of the Financier** means a director, secretary, manager, receiver, receiver and manager, or solicitor acting on behalf of the Financier.

**Other Property** means all present and after acquired legal and beneficial rights and interests in Land and any other property that is not Personal Property, of whatever kind and wherever situated, and whether or not held as trustee.

**Personal Property** has the same meaning as defined in the PPSA.

**PPSA** means the *Personal Property Securities Act 2009* (Cth).

**Security** means any Security Interest given in favour of the Financier as security for the obligations of the Borrower or a Guarantor under any Agreement.

**Secured Money** means all money that each Transaction Party (whether alone or with another person) is or at any time may become actually or contingently liable to pay to or for the account of the Financier (whether alone or with another person) for any reason under or in connection with an Agreement. It includes money by way of principal, interest, fees, costs, indemnities, guarantees, charges, duties or expenses or payment of liquidated or unliquidated damages for which a Transaction Party is or at any time may become liable under or in connection with an Agreement, or as a result of a breach of or default under or in connection with an Agreement. Where a Transaction Party would have been liable but for its insolvency, it will be taken to remain liable.

**Security Interest**:

(a)  in relation to any Personal Property, has the same meaning as defined in the PPSA; and

(b)  in relation to any Other Property, means any security for the payment of money or performance of obligations including a mortgage, charge, lien, pledge, trust or power.

**Statute** means any statute (of the Commonwealth or of any State or Territory of Australia) and any

statutory rule, ordinance, regulation, proclamation, by-law or order in council made under or pursuant to them.

## 1.2    Interpretation

(a) Reference to:

    (i)   one gender includes each other gender;

    (ii)  the singular includes the plural and the plural includes the singular;

    (iii) a person includes a body corporate;

    (iv) a party includes the party's executors, administrators, successors, transferees and permitted assigns; and

    (v)  a Statute, regulation or provision of a Statute or regulation (**Statutory Provision**) includes:

        (A) that Statutory Provision as amended or re-enacted from time to time; and

        (B) a Statute, regulation or provision enacted in replacement of that Statutory Provision.

(b) Including and similar expressions are not words of limitation.

(c) Where a word or expression is given a particular meaning, other parts of speech and grammatical forms of that word or expression have a corresponding meaning.

(d) Headings are for convenience only and do not form part of this deed or affect its interpretation.

(e) Terms defined in the Agreement have the same meaning in this deed unless defined separately in this deed or the context requires another meaning.

(f) Where a term or provision of this deed conflicts or is inconsistent with the Agreement, the terms and provisions of this deed prevail to the extent of the conflict or inconsistency.

(g) A provision of this deed must not be construed to the disadvantage of a party merely because that party was responsible for the preparation of this deed or the inclusion of a provision in this deed.

(h) The invalidity of any part or provision of this deed does not affect the validity or the enforceability of any other part or provision of this deed.

(i) All monetary amounts are in Australian dollars, unless otherwise stated.

(j) If an act must be done on a specified day which is not a Business Day, the act must be done instead on the next Business Day.

(k) Every agreement or obligation including this deed expressed or implied where two or more persons agree or are bound binds those persons and every two or more of them jointly and each of them separately and every provision expressed or implied which applies to two or more persons applies to those persons and every two or more of them jointly and each of them separately.

(l) A reference to "Guarantor" includes all Guarantors and any one or more of them.

## 1.3    Incorporated definitions from Convertible Note Agreement

A word or phrase (other than one defined in clause 1.1) defined in the Convertible Note Agreement has the same meaning in this deed.

1.4     **Limitation of liability**

(a) The Financier enters into and performs this deed and each Transaction Document and the transactions contemplated by it only as trustee of The Collins St Convertible Note Fund in no other capacity. To the extent permitted by law, the Financier's liability to pay any amount or satisfy any obligation under or in connection with this deed and each Transaction Document is limited to the extent to which the Financier is actually indemnified out of the assets of The Collins St Convertible Note Fund. This limitation applies despite any other provision of this deed and any Transaction Document and extends to all liabilities and obligations of the Financier in any way connected with any representation, warranty, conduct, omission, agreement or transaction related to this deed or any Transaction Document or its performance.

(b) No party to this deed or any Transaction Document may sue the Financier in any capacity other than as trustee of The Collins St Convertible Note Fund, seek the appointment of a receiver, liquidator, administrator or other similar person to the Financier or seek to prove in any liquidation, administration or arrangement of or affecting the Financier other than in its capacity as trustee of The Collins St Convertible Note Fund and in respect of the assets of The Collins St Convertible Note Fund from which the Financier is actually indemnified.

(c) The provisions of this clause do not apply to any obligation or liability of the Financier to the extent that the Financier's right to be indemnified out of the assets of The Collins St Convertible Note Fund has been reduced by fraud, negligence or a material breach of trust provided that nothing in this paragraph (c) shall make the Financier liable to any claim for an amount greater than that which each person would have been able to recover from the assets of The Collins St Convertible Note Fund were it not for the reduction of the Financier's right of indemnity.

(d) The Financier is not obliged to do or refrain from doing anything under this deed or any other Transaction Document (including, without limitation, incur any liability or enter into any document) unless the Financier's liability is limited in the same manner as set out in this clause.

## 2.     Capacity

The Guarantor enters into this deed in its own right.

## 3.     Agreement

The Guarantor enters into this deed in consideration of the Financier providing and continuing to provide the facility to the Borrower pursuant to the Agreement

## 4.     Transaction Document

The parties acknowledge and agree that this document is a "Transaction Document".

## 5.     Guarantee

5.1     The Guarantor irrevocably and unconditionally guarantees to the Financier that the Borrower will:

(a) pay to the Financier on time all money owing to the Financier under the Guaranteed Obligations; and

(b) observe and perform the Borrower's obligations under each Agreement.

5.2     **Payment**

If:

(a) the Borrower does not pay money owing to the Financier under the Guaranteed Obligations on time; or

(b) an Event of Default occurs,

the Guarantor must immediately pay all money owing to the Financier under the Guaranteed

Obligations, whether or not:

(c)  the Financier has made demand on the Borrower;

(d)  the Financier has made demand on the Guarantor; or

(e)  money owing under the Guaranteed Obligations is immediately payable by the Borrower.

## 6.  Indemnity

6.1  The Guarantor irrevocably and unconditionally indemnifies the Financier against loss suffered by the Financier where:

(a)  the Borrower does not pay money owing under the Guaranteed Obligations on time or observe or perform the Borrower's obligations under any Agreement on time; or

(b)  an Event of Default in respect of the Borrower, a Transaction Party or the Guarantor occurs or:

(i)  money owing under the Guaranteed Obligations (or money which would be owing under the Guaranteed Obligations if it were not recoverable) is not recoverable from; or

(ii)  a liability to pay money owing under the Guaranteed Obligations is not enforceable against,

the Borrower, a Transaction Party or the Guarantor (as a surety) for any reason, whether or not the Financier knew or ought to have known anything about it.

6.2  **Costs**

The Guarantor indemnifies the Financier for all duties, Taxes (other than on the income of the Financier), costs and expenses (including but not limited to, reasonable legal costs and expenses on a solicitor/own client basis) which the Financier pays or is liable to pay relating to:

(a)  obtaining or attempting to obtain payment of money owing under the Guaranteed Obligations from any person;

(b)  protecting, enforcing or exercising a right, power or remedy of the Financier under any one or more of an Agreement, Guarantee or Security;

(c)  an Event of Default;

(d)  obtaining advice, including legal advice, from a professional person or consultant relating to any matter of concern to the Financier under an Agreement, Guarantee or Security;

(e)  the Financier providing any facility under an Agreement to or at the request of the Borrower; or

(f)  a receipt or payment of money under, or transaction contemplated by, an Agreement, Guarantee or Security.

6.3  **Payment on demand**

The Guarantor must pay to the Financier on demand the amount of the loss referred to in this clause 6.

## 7.  Charge

7.1  **Charge**

The Guarantor grants to the Financier:

(a)      a Security Interest over all Personal Property; and

5

(b)      a fixed charge over all Other Property,

to secure the payment of the Secured Money, the punctual performance of the Guaranteed Obligations and the punctual performance of all of the Guarantor's other obligations to the Financier at any time.

## 7.2    Continuing Security and Release

(a) The Security Interest under clause 7.1 in favour of the Financier is a continuing security and remains in force until the Financier gives a final release to the Guarantor.

(b) The Financier is under no obligation to provide a final release until:

(i) the Guaranteed Obligations have been repaid in full and the Financier is satisfied that no money will subsequently become owing to the Financier within the definition of the Guaranteed Obligations; and

(ii) the Financier is satisfied that any payment to the Financier in reduction of the Guaranteed Obligations is not repayable, void or voidable under a law relating to insolvency or protection of creditors.

## 8.    Application of guarantee and indemnity

### 8.1    Continuing Guarantee

This deed continues:

(a) despite the payment of any money forming part of the Guaranteed Obligations, the settlement of an account or any other matter (other than an unconditional release by the Financier); and

(b) applies to the present and future balance of money owing under the Guaranteed Obligations.

### 8.2    Liability not affected by events

The liability of the Guarantor is not adversely affected by anything which would otherwise reduce or discharge the liability of the Guarantor under the law relating to sureties, guarantees and indemnities. Further, under this deed the liability of the Guarantor is not adversely affected by:

(a) the Financier granting time or any other indulgence or concession; or

(b) the Financier increasing the amount of the facility or otherwise varying the type or terms of any credit or financial accommodation provided to the Borrower; or

(c) any transaction or agreement (or any variation of them) between the Financier, the Borrower, a Transaction Party or any other person, irrespective of whether the relevant transaction, agreement or variation may adversely affect the Guarantor; or

(d) a Liquidity Event of any person, or the Financier becoming party to or bound by a Liquidity Event; or

(e) any judgment or order against the Borrower, the Guarantor or any other person; or

(f) an obligation of the Guarantor, the Borrower or a Transaction Party or any provision of any Agreement being void, voidable, unenforceable, defective, released, waived, impaired, transferred, enforced or impossible or illegal to perform;

(g) money owing under the Guaranteed Obligations not being recoverable or the liability of the Borrower, a Transaction Party or any other person to the Financier ceasing (including as a result of a release or discharge by the Financier);

(h) the Financier failing to enforce any Agreement;

(i) the destruction, forfeiture, extinguishment, surrender or resumption of property secured under a Collateral Security; or

(j) any default, misrepresentation, negligence, misconduct, acquiescence, delay, mistake or other action or inaction of any kind by or on behalf of the Financier or any other person.

**8.3    Outstanding Obligation**

This deed is enforceable even if a negotiable or other document, security or contract under the Guaranteed Obligations is still in circulation or outstanding.

**8.4    Limit of Guaranteed Obligations**

(a) The liability of the Guarantor under this deed is for the whole of the Guaranteed Obligations.

(b) The liability of the Guarantor for the Guaranteed Obligations under this deed is unlimited.

## 9.    Limitation of guarantor rights

**9.1    Subrogation and other rights**

The Guarantor must not directly or indirectly:

(a) claim, exercise or attempt to exercise a right of set off or any other right which might reduce or discharge the Guarantor's liability under this deed;

(b) claim or exercise a right of subrogation, contribution or otherwise claim a benefit of a Collateral Security;

(c) prove, claim or exercise voting rights under a Liquidity Event of the Borrower or a Transaction Party in competition with the Financier or otherwise claim or receive the benefit of a distribution, dividend or payment arising out of a Liquidity Event of the Borrower or a Transaction Party unless the Financier so directs; or

(d) demand, or accept payment of, any money owed to the Guarantor by the Borrower or a Transaction Party,

until such time as the Financier has received all money forming part of the Guaranteed Obligations and the Financier is satisfied that it is not obliged to repay any money received by it in connection with the Guaranteed Obligations.

**9.2    Set off by Guarantor**

Irrespective of any liability the Borrower has to the Guarantor, the Guarantor agrees that it does not have a debt that it would prove in a winding up or bankruptcy of the Borrower unless:

(a) the Financier has received all money forming part of the Guaranteed Obligations and notified the Guarantor in writing that it is satisfied that it is not under an obligation to repay any money received in reduction of the Guaranteed Obligations; or

(b) the Financier directs the Guarantor to prove in the winding up or bankruptcy of the Borrower.

## 10.    Financier powers

**10.1    No marshalling**

The Financier need not resort to a Collateral Security or other Security Interest before exercising a power under this deed.

**10.2  Enforce Guarantee first**

The Financier may require payment of money owing under the Guaranteed Obligations and exercise any other rights under this deed without first:

(a)  demanding payment from or proceeding against the Borrower or any other person; or

(b)  enforcing any other right, power, remedy or security,

and the Guarantor waives any right it has to require the Financier to do so.

**10.3  If more than one Guarantor**

Where more than one Guarantor is liable under this deed, the Financier:

(a)  may in its absolute discretion require payment of money owing under the Guaranteed Obligations from, or proceed against, all or any one of them; and

(b)  is not obliged to exercise any rights of the Financier under this deed against:

(i)   all persons comprising the Guarantor;

(ii)  any of those persons (irrespective of whether the Financier has exercised rights against another); or

(iii) two or more of them at the same time.

**10.4  Proof on a Liquidity Event**

Where the Borrower or a Transaction Party suffers a Liquidity Event, until such time as the Financier has received payment in full of the Guaranteed Obligations, the Guarantor authorises the Financier to prove for all, or the relevant portion of, money that the Guarantor can claim against the Borrower or Transaction Party. The Financier agrees to pay to the Guarantor all dividends it receives in excess of the Guaranteed Obligations without any obligation whatever to pay interest on such excess dividends.

**10.5  Suspense account**

The Financier may credit money received (including dividends received in connection with a Liquidity Event) on account of satisfaction of the Guaranteed Obligations to a suspense account. The Financier may keep the money in the suspense account for whatever term and rate of interest rate it considers fit to do so, including when to appropriate such money in reduction of the Guaranteed Obligations.

**10.6  Set off by the Financier**

The Financier may set off and apply indebtedness it owes to the Guarantor or the Borrower against the Guaranteed Obligations without demand or notice:

(a)  irrespective of whether the indebtedness is owed alone or with any other person;

(b)  irrespective of whether the Guaranteed Obligations or that indebtedness is immediately payable; and

(c)  both before and after demand under this deed.

## 11.    Statutory powers and notices

### 11.1    Exclusion of PPSA provisions

To the extent the law permits:

(a)  for the purposes of sections 115(1) and 115(7) of the PPSA:

    (i)    the Financier need not comply with sections 95, 118, 121(4), 123, 125, 129(2)(a), 130, 132(3)(d), 132(4), 135; and

    (ii)    sections 142 and 143 are excluded;

(b)  for the purposes of section 115(7) of the PPSA, the Financier need not comply with sections 132 and 137(3);

(c)  the Guarantor consents to the waiver of the requirement for notice under section 157 of the PPSA;

(d)  if the PPSA is amended after the date of this document to permit the Guarantor and the Financier to agree to not comply with or to exclude other provisions of the PPSA, the Financier may notify the Guarantor that any of these provisions are excluded, or that the Financier need not comply with any of these provisions, as notified to the Guarantor by the Financier; and

(e)  the Guarantor agrees not to exercise its rights to make any request of the Financier under section 275 of the PPSA, to authorise the disclosure of any information under that section or to waive any duty of confidence that would otherwise permit non-disclosure under that section.

### 11.2    Exercise of rights by Financier

If the Financier exercises a right, power or remedy in connection with this document, that exercise is taken not to be an exercise of a right, power or remedy under the PPSA unless the Financier states otherwise at the time of exercise.  However, this clause does not apply to a right, power or remedy which can only be exercised under the PPSA.

### 11.3    No notice required unless mandatory

To the extent the law permits, the Guarantor waives:

(a)  its rights to receive any notice that is required in respect of this deed by:

    (i)    any provision of the PPSA (including a notice of a verification statement); or

    (ii)    any other law before a financier or receiver exercises a right, power or remedy; and

(b)  any time period that must otherwise lapse under any law before a financier or receiver exercises a right, power or remedy.

If the law which requires a period of notice or a lapse of time cannot be excluded, but the law provides that the period of notice or lapse of time may be agreed, that period or lapse is one day or the minimum period the law allows to be agreed (whichever is the longer).

However, nothing in this clause prohibits the Financier or any receiver from giving notice under the PPSA or any other law.

### 11.4    Appointment of nominee for registration

For the purposes of section 153 of the PPSA, the Financier appoints the Guarantor as its nominee, and authorises the Guarantor to act on its behalf, in connection with a registration under the PPSA of any security interest in favour of the Guarantor which is:

(a) evidenced or created by chattel paper;

(b) perfected by registration under the PPSA; and

(c) transferred to the Financier under this document.

This authority ceases when the registration is transferred to the Financier.

## 12.   Representations and warranties

(a) The Guarantor represents and warrants that:

   (i) the Guarantor was properly incorporated, if an incorporated body, and validly exists;

   (ii) the Guarantor has the power to enter into this deed and each relevant Agreement to which it is a party and to carry out any transaction or obligation contemplated by it;

   (iii) all necessary action has been taken to make each this deed and each relevant Agreement to which it is a party valid and binding on the Guarantor and to enable the Guarantor to carry out any transaction or obligation contemplated by it;

   (iv) the Guarantor has observed and performed the requirements of all laws, documents and arrangements, where failure to do so may have a material adverse effect on the Guarantor;

   (v) executing and performing its obligations under this deed and the relevant Agreement to which it is a party does not:

      a.   conflict with any document or arrangement that binds the Guarantor; or

      b.   result in a Security Interest (excluding under an Agreement) being created on, or a charge crystallising over, an asset of the Guarantor;

   (vi) the Guarantor is solvent and there are no reasonable grounds to expect that, on signing of this deed and each Agreement to which the Guarantor is a party, the Guarantor will not continue to be able to pay all its debts as and when they become due for payment;

   (vii) no litigation or other process, which could have a material adverse effect on the Guarantor, is taking place, pending or threatened against the Guarantor or its assets;

   (viii) all information provided to the Financier by or on behalf of the Guarantor is accurate and not misleading by omission;

   (ix) no document or arrangement exists which would reduce the rights of the Financier under an Agreement;

   (x) the assets of the Guarantor are free of any Security Interest other than a Collateral Security or as expressly disclosed in writing to the Financier;

   (xi) the Guarantor has not executed this deed because of any promise, representation, statement or information given or offered by or on behalf of the Financier, even if in answer to any enquiry by or for the Guarantor;

   (xii) the Guarantor has not executed this deed because another person has granted or agreed to grant a Guarantee or Security Interest in favour of the Financier or otherwise in connection with the Borrower or the Guaranteed Obligations; and

   (xiii) the Guarantor has relied on its own investigations and enquiries regarding the nature of the transactions between the Financier and the Borrower.

(b) The representations and warranties by the Guarantor under this deed are repeated on each day the Financier provides financial accommodation to the Borrower, or at the express or implied

request of the Borrower, by reference to the facts and circumstances at the time and must remain true and correct during the term of this deed.

## 13.   Voidable Payments and Recovery of Security

If any payment made to the Financier in reduction of the Guaranteed Obligations is repaid or void or conceded to be void, voidable or repayable for any reason, then despite any release, settlement or discharge relating to the Guaranteed Obligations:

(a)  that payment is deemed not to discharge or diminish the Guaranteed Obligations;

(b)  the Financier may recover the amount of that payment from the Guarantors; and

(c)  any Security discharged and or released is deemed never to have been discharged and or released. Where such Security has been supplied by the Guarantors, the Guarantors agree to promptly reinstate that Security in favour of the Financier.

## 14.   Governing Law

(a)  This deed is governed by, and is to be construed in accordance with, the laws enforceable in Victoria, Australia.

(b)  Each party submits to the non-exclusive jurisdiction of the courts exercising jurisdiction in Victoria and any court hearing appeals from those courts.

## 15.   Entire Agreement

This deed, any Schedule and any annexure to this deed, constitutes the entire agreement between the parties with respect to the subject matter of this deed and supersedes any and all promises, representations and agreements whether written ororal made by one party to or with the other party.

## 16.   Covenants

The Guarantor covenants and warrants to the Financier:

(a)  that the Guarantor will pay the Financier interest on moneys overdue to the Financier at the rate or rates under the applicable Agreement from the date on which the moneys are payable to the Financier (irrespective of whether or not any demand is made by the Financier on any one or more of the Borrower and or the Guarantor);

(b)  to pay all costs, fees, charges, and expenses, including reasonable legal fees and expenses on a solicitor/own client basis, incurred or paid by the Financier in connection with this deed and all stamp duties which may be payable on this deed, or from the giving of the Security for the obligations of the Guarantor under this deed, from the receipt of any moneys under this deed, or otherwise arising as a consequence of any of the provisions of this deed or the giving effect to this deed; and

(c)  to indemnify the Financier against and pay to the Financier all losses, damages and expenses suffered or incurred by the Financier arising out of the performance by the Guarantor of its obligations under this deed, or its failure to perform such obligations.

## 17.   Certificate

A certificate or notice from or demand signed by an Officer of the Financier stating:

(a)  that a specified sum of money is owing or payable (or both) under this deed or a Security;

(b)  that the Guarantor or a party providing a Security to the Financier has not complied with their obligations under this deed and or the Security; or

(c)  something relevant to the rights or obligations of the Financier under this deed or the Security,

is admissible in proceedings and is conclusive evidence of the matters stated except if there is manifest error.

## 18.    No Obligations by the Financier

The Financier under this deed may, in its absolute discretion without giving a reasonn or being liable or accountable for the consequences:

(a)  exercise or not exercise any right, power or remedy;

(b)  give or not give consent; and

(c)  make or not make a decision.

## 19.    Assignment

19.1    Subject to clause 19.2, no party may assign, transfer or encumber  or attempt to assign, transfer or encumber any right or interest under this document without the prior written consent of the other parties.

19.2    The Financier may assign, transfer, novate or otherwise deal with this document or any rights and obligations arising under this document to any person without the consent of the Guarantors at any time and from time to time. In the case of a novation the new party assumes the Financier's obligations. On request by a Financier, a Guarantor must  execute  and deliver to the Financier any document the Financier reasonably requires for this purpose.

## 20.    Notices

(a)  Any notice or other communication including, but not limited to, any request, demand, consent or approval, to or by a party to this deed:

(i)    must be in legible writing and in English addressed as shown at the commencement of this deed or as otherwise specified to the sender by notice.

(ii)   must, where the sender is a company, be signed by an officer or under the common seal of the sender;

(iii)  is regarded as being given by the sender and received by the addressee:

a.   if by delivery in person, when delivered to the addressee;

b.   if by post within Australia, six Business Days from and including the date of postage;

c.   if by post to an address outside Australia or from outside Australia to an address inside Australia, six Business Days from and including the date of postage;

d.   if sent by email, when a delivery confirmation report is received by the sender which records the time that the email was delivered to the addressee's email address,

but if the delivery or receipt is on a day which is not a Business Day or is after 4.00pm (addressee's time) on a Business Day it is regarded as received at 9.00am on the following Business Day; and

(iv)  can be relied upon by the addressee and the addressee is not liable to any other person for any consequences of that reliance if the addressee believes it to be genuine, correct and authorised by the sender.

(b)  In this clause 20, a reference to an addressee includes a reference to an addressee's officers,

agents or employees.

## 21.    Counterparts

If this deed consists of a number of counterparts, each is an original and all of the counterparts together constitute the same document. Delivery of an executed counterpart of a signature page of this deed by PDF file (portable document format file) shall be effective as delivery of a manually executed counterpart of this deed.

**Executed** as a deed and delivered on the date shown on the first page.

**EXECUTED** by **Allegiance Coal Limited**
**ACN 149 490 353** in accordance with
section 127 of the *Corporations Act 2001*
by being signed by the following officers:

_____          _____
Signature of director                     Signature of director / company secretary

Mark Gray

_____          _____
Name of director *(please print)*         Name of director / company secretary
                                           *(please print)*

**EXECUTED** by **COLLINS ST CONVERTIBLE**
**NOTES PTY LTD ACN 657 773 754 ATF**
**THE COLLINS ST CONVERTIBLE NOTE**
**FUND** in accordance with the *Corporations*
*Act 2001* by being signed by the following
officers:

_____          _____
Signature of director                     Signature of director / company secretary

**Vasilios Piperoglou**                    **Michael Goldberg**

_____          _____
Name of director *(please print)*         Name of director / company secretary
                                           *(please print)*

14

**Executed as a deed and delivered on the date shown on the first page.**

**EXECUTED by Allegiance Coal Limited
ACN 149 490 353** in accordance with
section 127 of the *Corporations Act 2001*
by being signed by the following officers:

_____
Signature of director

_____
Name of director *(please print)*

_____
Signature of ~~director /~~ company secretary

**Jonathan Reynolds**

_____
Name of ~~director /~~ company secretary
*(please print)*

**EXECUTED by COLLINS ST CONVERTIBLE
NOTES PTY LTD ACN 657 773 754 ATF
THE COLLINS ST CONVERTIBLE NOTE
FUND** in accordance with the *Corporations
Act 2001* by being signed by the following
officers:

_____
Signature of director

**Vasilios Piperoglou**
Name of director *(please print)*

_____
Signature of director / company secretary

**Michael Goldberg**
Name of director / company secretary
*(please print)*

14