**Exhibit 4**
**Specific Security Deed**

**Specific security deed**

**Date**          24 May 2022

**Parties**       **Allegiance Coal Limited ACN 149 490 353**
                  of Suite 107, 109 Pitt Street Sydney NSW 2000
                  **(Grantor)**

                  **Collins St Convertible Notes Pty Ltd** ACN 657 773 754 as trustee for The
                  Collins St Convertible Notes Fund ABN 30 216 289 383
                  of Level 9, 365 Little Collins Street, Melbourne VIC 3000
                  **(Secured Party)**

## OPERATIVE PROVISIONS

## 1      Definitions and interpretation

### 1.1    Definitions

In this document the following definitions apply unless the context indicates otherwise:

(a)   **Accounting Standards** means the accounting principles and practices applying by applicable law or otherwise generally accepted in Australia, consistently applied;

(b)   **Accounts** means profit and loss accounts and balance sheets together with statements, reports and notes, including a director's report or an auditor's report, attached to or intended to be read with any of those profit and loss accounts or balance sheets;

(c)   **After-acquired Securities** means the Marketable Securities in which the Grantor acquires an interest (whether legal or beneficial) of the Issuer after the date of this document other than Present Securities;

(d)   **ASX Rules** means the rules relating to the operation of CHESS including the ASX Settlement Operating Rules as published by ASX Limited (ABN 98 008 624 691);

(e)   **Attorney** means any attorney (including any delegate) appointed under this document and any person who by delegation directly or indirectly derives a right from an attorney;

(f)   **Authorisation** includes any consent, authorisation, registration, filing, lodgment, document, notarisation, certificate, permission, licence, approval, authority or exemption prescribed by law or regulation or required by any Government Agency;

(g)   **Authorised Officer** means:

   (i)    in relation to the Grantor that is not a natural person, any director or company secretary of the Grantor or any person nominated by the Grantor by a notice to the Secured Party as an authorised officer on behalf of the Grantor to sign notices or documents in connection with this document, the notice to be accompanied by specimen signatures of the persons concerned;

   (ii)   in relation to the Grantor that is a natural person, that person, and

(iii)   in relation to the Secured Party, an officer of the Secured Party or any person whose title or office includes the word manager, associate director, director, company secretary, or any person acting in any of these offices, or any person appointed as an Authorised Officer by the Secured Party;

(h)   **Business Day** means a day that is not a Saturday, Sunday or public or bank holiday in the Relevant Jurisdiction;

(i)   **Certificate** means the certificate or other document that evidences title to a Marketable Security and **Certificated** has a comparable meaning to Certificate;

(j)   **CHESS** means the Clearing House Electronic Sub-register System;

(k)   **Collateral** means:

   (i)   Present Securities;

   (ii)   After-acquired Securities;

   (iii)   New Rights; and

   (iv)   Documents of Title;

(l)   **Collateral Security** means any document and any Transaction Document that grants a Security Interest to the Secured Party, any Guarantee in favour of the Secured Party or other document or agreement at any time created or entered into in connection with or as security for any Secured Money;

(m)   **Constitutional Documents** means:

   (i)   the constitutional documents of the Grantor;

   (ii)   the constitutional documents of the Issuer including any trust deed in relation to a trust or scheme; and

   (iii)   any other agreement between all holders of the Marketable Securities including any agreement relating to the Present Securities and the After-acquired Securities;

(n)   **Controller** has the meaning given in the Corporations Act;

(o)   **Convertible Note Agreement** means the convertible note agreement between the Secured Party, the Guarantor and the Borrower dated 24 May 2022.

(p)   **Corporations Act** means the Corporations Act 2001 (Cth);

(q)   **Documents of Title** includes:

   (i)   documents of title and negotiable instruments;

   (ii)   each Transfer; and

   (iii)   any Certificate, notice of entitlement and any other document (whether negotiable or not) that the Grantor is required to deposit with the Secured Party under this document;

(r)  **Event of Default** means any event or circumstance specified as such in clause 8 or otherwise specified in this document as an Event of Default;

(s)  **Government Agency** means any government or any governmental or semi governmental or judicial entity or authority and includes any self-regulatory organisation established under applicable law or any stock exchange;

(t)  **Guarantee** means any guarantee, indemnity, letter of credit, performance bond, legally binding letter of comfort or suretyship, or any other obligation or irrevocable offer (whatever called and of whatever nature):

　　(i)  to pay or to purchase;

　　(ii)  to provide funds (whether by the advance of money, the purchase of or subscription for Marketable Securities or other securities, the purchase of assets, rights or services, or otherwise) for the payment or discharge of;

　　(iii)  to indemnify against the consequences of default in the payment of; or

　　(iv)  to be responsible otherwise for,

　　an obligation or indebtedness of another person, a dividend, distribution, capital or premium on Marketable Securities or other interests, or the insolvency or financial condition of another person;

(u)  **Holder Record** has the meaning referred to in the ASX Rules;

(v)  **Indirect Tax** means any goods and services tax, consumption tax, value-added tax or any tax of a similar nature;

(w)  **Insolvency** has a comparable meaning to Insolvent;

(x)  **Insolvent** means, in relation to any Transaction Party:

　　(i)  it is a corporation and is unable to pay its debts when they fall due;

　　(ii)  it is a corporation and is (or states that it is) an insolvent under administration or insolvent (each as defined in the Corporations Act);

　　(iii)  a Liquidation occurs in relation to a person;

　　(iv)  it is subject to any arrangement, assignment, moratorium or composition, protected from creditors under any applicable law or dissolved (in each case, other than to carry out a reconstruction or amalgamation while solvent on terms approved by the Secured Party);

　　(v)  an application (not being an application that is being contested in good faith and that, is not stayed, withdrawn or dismissed within 30 days of its commencement) is made to a court for an order or an order is made that a corporation be wound up or that a liquidator be appointed to a corporation;

　　(vi)  a receiver, receiver and manager, trustee, administrator or similar official is appointed over any or all of the assets or undertaking of a corporation; and

(vii)   anything analogous or having a substantially similar effect to any of the events described above happens in connection with that corporation under the law of any applicable jurisdiction;

(y)   **Issuer** means the issuer of the Marketable Securities described in Schedule 1 and the issuer of any After-acquired Securities;

(z)   **Liquidation** includes provisional liquidation, administration, receivership, appointment of Controller, compromise, arrangement, amalgamation, reconstruction, winding up, dissolution, assignment for the benefit of creditors, arrangement or compromise with creditors, bankruptcy or death;

(aa)   **Marketable Securities** has the meaning given to the term 'securities' in the Corporations Act and includes:

(i)   an undertaking referred to in the exceptions to paragraphs (a), (b) and (c) of the definition of 'debenture' under the Corporations Act;

(ii)   a negotiable instrument;

(iii)   a unit or other interest in a trust or partnership; or

(iv)   a right or an option in relation to any of the above, whether issued or unissued;

(bb)   **New Rights** means all of the Grantor's present and future rights and interests attaching to or arising from or otherwise in connection with the Present Securities and the After-acquired Securities including all:

(i)   benefits, distributions, premiums, profits, dividends, interest, money, instruments, accounts, offers, privileges, rights bonuses, allotments, Marketable Securities, stock, units, interest in a managed investment scheme, debentures, securities, distributions;

(ii)   rights to take up Marketable Securities or the allotment of or other in specie distribution of further Marketable Securities;

(iii)   rights resulting from any conversion, consolidation, redemption, cancellation, reclassification, subdivision or forfeiture of any Marketable Securities;

(iv)   rights relating to a reduction of capital, buy-back or Liquidation; and

(v)   Documents of Title to any Marketable Securities or any other thing in relation to any of the matters described above;

(cc)   **Permitted Security Interest** means a Security Interest:

(i)   granted in favour of the Secured Party under the Transaction Documents; and

(ii)   over any of the Grantor's assets which the Secured Party has expressly consented in writing;

(dd)   **PPS Register** means the Personal Property Securities Register established under section 147 of the PPSA;

(ee)   **PPSA** means the *Personal Property Securities Act 2009* (Cth);

(ff)   **Present Securities** means the Marketable Securities in which the Grantor acquires an interest (whether legal or beneficial) of the Issuer at the date of this document and described in Schedule 1;

(gg)   **Receiver** means a receiver or receiver and manager appointed by the Secured Party under any Transaction Document and any person who derives a right directly or indirectly from any Receiver;

(hh)   **Related Body Corporate** has the meaning given in the Corporations Act;

(ii)   **Relevant Document** means each Transaction Document and any other document that a Transaction Party and the Secured Party agree is a Relevant Document;

(jj)   **Relevant Jurisdiction** means the State of Victoria, Australia;

(kk)   **Relevant Marketable Securities** means the Present Securities, the After-acquired Securities and any New Rights;

(ll)   **Remedy Proceeds** means money received by the Secured Party, Receiver or Attorney from the exercise of any right, including enforcement, against the Collateral;

(mm)   **Representative** means a person's officer, employee, nominee, contractor or agent;

(nn)   **Secured Money** means all money that each Transaction Party (whether alone or with another person) is or at any time may become actually or contingently liable to pay to or for the account of the Secured Party (whether alone or with another person) for any reason under or in connection with a Transaction Document.

It includes money by way of principal, interest, fees, costs, indemnities, guarantees, charges, duties or expenses or payment of liquidated or unliquidated damages for which a Transaction Party is or at any time may become liable under or in connection with a Transaction Document, or as a result of a breach of or default under or in connection with a Transaction Document.

Where a Transaction Party would have been liable but for its Insolvency, it will be taken to remain liable;

(oo)   **Security Interest** means:

(i)   a 'security interest' as that term is defined in the PPSA;

(ii)   any interest held as security for the payment of a monetary obligation or the performance of any other obligation, including a mortgage, charge, encumbrance, lien, pledge or hypothecation; and

(iii)   any other right, interest or arrangement that:

(A)   in substance secures the payment of money or the performance of an obligation; or

(B)   gives a creditor priority over other creditors in relation to any property;

(pp)   **Tax** includes:

      (i)    any tax, Indirect Tax, rate, levy, impost, or duty (other than a tax on the net overall income of the Secured Party); and

      (ii)    any interest, penalty, fine or expense relating to any of them;

(qq)    **Transfer** means, in relation to Marketable Securities that are:

      (i)    Certificated, a blank executed document of transfer in registrable form that is sufficient to transfer all legal and beneficial ownership in the Marketable Securities to the Secured Party or its Representative; and

      (ii)    Uncertificated Marketable Securities, a Holder Record or other statement or document that is analogous to or has a similar effect as a Holder Record; and

(rr)    **Uncertificated Marketable Security** means a Marketable Security forming part of the Collateral that is not evidenced by a Certificate.

## 1.2   Interpretation

(a)    In this document, unless the context indicates otherwise, reference to:

      (i)    the following words and expressions have the meanings given to them in the PPSA: after-acquired property, amendment demand, attaches, bankruptcy, circulating asset, control, effective, financing statement, financing change statement, future advance, interest, intermediated security, investment instrument, negotiable instrument, perfected, perfection, possession, proceeds, provides, register, registration, value and verification statement;

      (ii)    one gender includes the others;

      (iii)    the singular includes the plural and the plural includes the singular;

      (iv)    a person includes a natural person, firm, unincorporated association, corporation, partnership, joint venture and a government or statutory body or authority;

      (v)    a party to this document or another agreement or document includes the party's executors, administrators, successors and permitted substitutes (including persons taking by novation) or permitted assigns;

      (vi)    a statute, regulation or provision of a statue or regulation (Law) includes:

          (A)    that Law as amended or re-enacted;

          (B)    a statute, regulation or provision enacted in replacement of that Law;

          (C)    another regulation or other statutory instrument made or issued under that Law; and

          (D)    any amendment made to a statute, regulation or provision as a consequence of another statute, regulation or provision;

      (vii)    this document includes any schedule or annexure to it;

      (viii)    a thing (including any amount) is a reference to the whole and each part of it;

(ix)    a clause, annexure or schedule is a reference to a clause of, or annexure or schedule to, this document;

(x)    an agreement or document is to the agreement or document as amended, novated, supplemented or replaced, except to the extent prohibited by this document;

(xi)    conduct includes an omission, statement or undertaking, whether or not in writing;

(xii)    "property" or "asset" includes any real or personal, present or future, tangible or intangible property or asset and any right, interest, revenue or benefit in, under or derived from the property or asset;

(xiii)    an amount for which a person is contingently liable includes an amount which that person may become actually or contingently liable to pay if a contingency occurs, whether or not that liability will actually arise;

(xiv)    a right includes a benefit, remedy, discretion, authority and power;

(xv)    an obligation includes any warranty or representation and a reference to a failure to comply with an obligation includes a breach of warranty or representation;

(xvi)    payment includes repayment, discharge or satisfaction; and

(xvii)    "know your customer checks" means any know your customer obligations or other identification requirements, checks or procedures in connection with any law.

(b)    A reference to costs and expenses in this document includes legal costs and expenses on a full indemnity basis.

(c)    Anything that this document states is to be done by either the Secured Party or the Grantor is to be done at the Grantor's expense.

(d)    "Including" and similar expressions are not words of limitation.

(e)    Where a word or expression is given a particular meaning, other parts of speech and grammatical forms of that word or expression have a corresponding meaning.

(f)    Headings and any table of contents or index are for convenience only and do not form part of this document or affect its interpretation.

## 1.3    Incorporated definitions from Convertible Note Agreement

A word or phrase (other than one defined in clause 1.1) defined in the Convertible Note Agreement has the same meaning in this deed.

## 1.4    Limitation of liability

(a)    The Secured Party enters into and performs this deed and each Transaction Document and the transactions contemplated by it only as trustee of The Collins St Convertible Note Fund in no other capacity.  To the extent permitted by law, the Secured Party's liability to pay any amount or satisfy any obligation under or in connection with this deed and each Transaction Document is limited to the extent to which the Secured Party is actually indemnified out of the assets of The Collins St Convertible Note Fund.  This limitation applies despite any other provision of this deed and any Transaction Document and extends to all liabilities and obligations of the Secured Party in any way connected with any representation, warranty,

conduct, omission, agreement or transaction related to this deed or any Transaction Document or its performance.

(b)     No party to this deed or any Transaction Document may sue the Secured Party in any capacity other than as trustee of The Collins St Convertible Note Fund, seek the appointment of a receiver, liquidator, administrator or other similar person to the Secured Party or seek to prove in any liquidation, administration or arrangement of or affecting the Secured Party other than in its capacity as trustee of The Collins St Convertible Note Fund and in respect of the assets of The Collins St Convertible Note Fund from which the Secured Party is actually indemnified.

(c)     The provisions of this clause do not apply to any obligation or liability of the Secured Party to the extent that the Secured Party's right to be indemnified out of the assets of The Collins St Convertible Note Fund has been reduced by fraud, negligence or a material breach of trust provided that nothing in this paragraph (c) shall make the Secured Party liable to any claim for an amount greater than that which each person would have been able to recover from the assets of The Collins St Convertible Note Fund were it not for the reduction of the Secured Party's right of indemnity.

(d)     The Secured Party is not obliged to do or refrain from doing anything under this deed or any other Transaction Document (including, without limitation, incur any liability or enter into any document) unless the Secured Party's liability is limited in the same manner as set out in this clause.

## 1.5     Transaction Document

The parties acknowledge and agree that this document is a "Transaction Document".

# 2     Security

## 2.1     Grant of security

The Grantor grants to the Secured Party a Security Interest over all the Collateral to secure the payment of the Secured Money and the punctual performance of all of the Grantor's other obligations to the Secured Party at any time.

## 2.2     Consideration

The Grantor acknowledges and confirms that the Secured Party has given value for the Secured Party's Security Interest in the Collateral, including by its promises under any Transaction Document or by providing or continuing to make available any financial accommodation to a Transaction Party.

## 2.3     Attachment

The Grantor acknowledges and confirms that:

(a)     nothing in any Transaction Document is intended as an agreement that a Security Interest under this document attaches at a later time than the time specified in section 19(2) of the PPSA; and

(b)     it has not made any other agreement with the Secured Party to vary the time of attachment of a Security Interest except in any express written agreement between the Grantor and the Secured Party.

**2.4    Priority**

The parties acknowledge that the Security Interest in the Collateral has the same priority in relation to all Secured Money, including future advances.

**2.5    Security Interest continues**

If the Grantor disposes of or otherwise deals or agrees to deal with the Collateral in breach of any Transaction Document, the Grantor acknowledges that:

(a)    the Secured Party has not:

    (i)    authorised any disposal or dealing or agreement to deal; or

    (ii)    agreed that any disposal or dealing or agreement to deal will extinguish any Security Interest held by the Secured Party; and

(b)    the Secured Party's Security Interest continues in the Collateral despite the disposal or dealing or agreement to deal.

## 3    Grantor must pay Secured Money

The Grantor must pay the Secured Money to the Secured Party in accordance with the Transaction Documents.

## 4    Dealing with Collateral

**4.1    Permitted dealing**

Until an Event of Default occurs or the Collateral is registered in the Secured Party's or its Representative's name:

(a)    but subject to the provisions of any other Transaction Document, the Grantor may receive and retain free of the Security Interests granted under clause 2.1 (other than returns on capital) all dividends and any other income that forms part of or is derived from any New Rights distributed to holders of Marketable Securities; and

(b)    the Grantor:

    (i)    may attend meetings and exercise all rights including voting rights in connection with the Relevant Marketable Securities; and

    (ii)    must not vote in favour of any resolution to vary the Constitutional Documents of the Grantor or the Issuer any resolution that would materially or adversely affect the value of the Relevant Marketable Securities or any of the rights attached to the Relevant Marketable Securities.

**4.2    Restricted dealing**

(a)    Except as specified in clause 4.1 or with the prior written consent of the Secured Party, the Grantor must not or must not agree, attempt or take any step to do (whether by one transaction or a series of transactions, whether related or not or voluntary or involuntary) any of the following:

(i)    create or attempt to create or agree or permit to exist any Security Interest over the Collateral other than a Permitted Security Interest;

(ii)    sell, assign, transfer, declare a trust over or otherwise dispose of the Collateral other than in accordance with the terms of the Transaction Documents; or

(iii)    give control or possession of the Collateral to another person other than the Secured Party other than in the ordinary course of business.

(b)    If a proposal is made or action contemplated by law, the Issuer or otherwise that may or will convert any Certificated Marketable Securities into Uncertificated Marketable Securities the Grantor must:

    (i)    immediately notify the Secured Party of the proposal or action contemplated; and

    (ii)    at the request of the Secured Party, do everything required by the Secured Party to enforce and protect the rights of the Secured Party in the Collateral including:

        (A)    entering into a sponsorship agreement that complies with the ASX Rules in a form and on the terms required by the Secured Party including a provision that those Relevant Marketable Securities will not be dealt with without the prior written consent of the Secured Party; or

        (B)    transferring those Relevant Marketable Securities to a Participant (as that term is defined in the ASX Rules) as nominated by the Secured Party.

## 4.3   Creation of other Security Interest without consent

(a)    Subject to subclause (b) if a law entitles the Grantor to create or allow another Security Interest (other than a Permitted Security Interest) in connection with the Collateral without the consent of the Secured Party, this clause 4.3 does not operate to require the Grantor to obtain the Secured Party's consent before creating or allowing that other Security Interest.

(b)    If the Grantor intends to create or allow that other Security Interest in accordance with subclause (a) the Grantor agrees to:

    (i)    notify the Secured Party at least 7 Business Days before creating that Security Interest; and

    (ii)    if the Secured Party so requests, enter into a priority agreement in accordance with clause 4.4 and if the Grantor does not comply with that request by the time the other Security Interest is created, further financial accommodation which would form part of the Secured Money may not, at the discretion of the Secured Party, be made available under any Transaction Document.

(c)    Nothing in this clause 4.3 limits clause 4.1.

## 4.4   Priority agreement

(a)    If requested by the Secured Party, the Grantor must ensure that the holder of any other Security Interest enters into a priority agreement on terms acceptable to the Secured Party to regulate the priority between Security Interests under this document and any other Security Interest created under clause 4.3 in connection with the Collateral.

(b)    The Grantor agrees to comply with all obligations under any other Security Interest in connection with the Collateral.

## 4.5   Default

(a)    If an Event of Default occurs and is continuing:

    (i)    the rights of the Grantor under clause 4.1 immediately cease;

    (ii)    notwithstanding clause 4.5(a)(i), the Grantor must comply with its obligations contained in the other Transaction Documents;

    (iii)    the Secured Party is entitled to:

        (A)    receive any New Rights and apply them or their sale proceeds in accordance with clause 16 and in this respect, the Grantor agrees to procure that all dividends and all other income paid in relation to the Collateral are paid directly to the Secured Party; and

        (B)    attend meetings and exercise or refrain from exercising any rights in connection with the Relevant Marketable Securities; and

    (iv)    the Grantor must at its own expense:

        (A)    execute proxies and other instruments that the Secured Party may require to enable the Secured Party to attend meetings and exercise rights; and

        (B)    if requested by the Secured Party, do everything necessary to ensure that the Collateral is registered in the Secured Party's or its Representative's name, as stated in the request.

(b)    If the Secured Party takes any action, whether by exercising any right, securing any payment or otherwise including refraining from doing so, it is not liable for any loss, claim, cost or expense as a result of a failure to take any action or refrain from doing so.

## 5    Obligations to deposit Documents of Title

## 5.1   Grantor obligations to deposit Documents of Title

If any of the Relevant Marketable Securities are Certificated and are:

(a)    Present Securities

the Grantor must deposit with the Secured Party or its Representative all Documents of Title (including the number of Transfers that the Secured Party specifically requires) in relation to the Present Securities at the time it signs this document;

(b)    After-acquired Securities

the Grantor must immediately on acquisition deposit with the Secured Party or its Representative all Documents of Title (including the number of Transfers that the Secured Party specifically requires) in relation to the After-acquired Securities; and

(c)    New Rights

the Grantor must immediately on acquisition deposit with the Secured Party or its Representative all Documents of Title in relation to the New Rights.

**5.2 Grantor not required to deposit Documents of Title**

The Grantor is not obliged to deposit any Documents of Title with the Secured Party if:

(a) those Documents of Title have been deposited with the holder of another Security Interest over the Collateral that ranks in priority before any Security Interest was created by this document; and

(b) the Secured Party has consented to a lower ranking Security Interest,

in which case the Grantor must promptly deposit those Documents of Title with the Secured Party immediately after that prior ranking Security Interest is discharged.

**5.3 Secured Party to retain possession and control**

The Grantor allows the Secured Party to hold and retain possession or control or take possession or control of Documents of Title until the Secured Party discharges the Security Interests created by this document.

**5.4 Grantor obligations to deposit Transfers**

If any of the Relevant Marketable Securities are Uncertificated Marketable Securities the Grantor must:

(a) at the request of the Secured Party (whether before or on signing this document or otherwise) comply with any or all of the obligations under clause 4.2(b)(ii); and

(b) deliver to the Secured Party all Transfers received by the Grantor relating to the Relevant Marketable Securities on:

   (i) the date that it signs this document; and

   (ii) any subsequent date that the Grantor receives any Transfers.

## 6 Representations and warranties

**6.1 Transaction Document representations**

The Grantor represents and warrants that all representations and warranties given by the Grantor in any Transaction Document are correct and not misleading or will be when given.

**6.2 General**

The Grantor represents and warrants to the Secured Party that:

(a) if a corporation, it is incorporated in accordance with the law of its place of incorporation, validly exists under that law and has the capacity to sue in its own name and to own and use its property and carry on its business as it is being currently conducted;

(b) the obligations expressed to be assumed by it in any Transaction Document to which it is a party are legal, valid, binding and enforceable obligations subject to any general principles of law affecting creditors' rights and any necessary stamping and registration requirements.

(c) the unconditional execution and delivery of, and compliance with its obligations under this document do not contravene:

    (i) any law binding on it or affecting it;

    (ii) its constitutional documents;

    (iii) any agreement or instrument to which it is a party; or

    (iv) its obligation to any other person;

(d) it has capacity unconditionally to execute and deliver and comply with its obligations under this document, and has taken all necessary action to authorise the unconditional execution and delivery of and the compliance with its obligations under this document;

(e) all Authorisations necessary to enable it to unconditionally execute and deliver and comply with its obligations under this document and carry on its business as currently conducted have been obtained, effected and complied with and are in full force and effect;

(f) in the Relevant Jurisdiction it is not necessary that:

    (i) the Transaction Documents be filed, notified, recorded or enrolled with any court or Government Agency; or

    (ii) any Tax be paid on or in relation to the Transaction Documents or the transactions contemplated by the Transaction Documents other than payment of all applicable stamp duty payable on any Transaction Document;

(g) it has not entered into this document and does not hold any of the Collateral as trustee of any trust;

(h) it is not Insolvent and there are no reasonable grounds to suspect that it will become Insolvent;

(i) **no Security Interests**

    (i) it has and will have at all times:

        (A) in relation to Other Property the sole legal and beneficial ownership of that property; and

        (B) in relation to PPSA Personal Property sufficient rights to grant a Security Interest in that property to the Secured Party;

    (ii) the Collateral is free from Security Interests other than Permitted Security Interests;

    (iii) without limiting subclauses (i) and (ii), other than the Secured Party, no person has perfected a Security Interest in any Collateral by possession or control; and

    (iv) this document creates a first ranking Security Interest over the Collateral, subject to Permitted Security Interests unless the Secured Party has agreed to a lesser ranking Security Interest in which event it has the priority that the Secured Party has agreed to;

(j) **Collateral**

      (i)     the Present Securities are (unless otherwise stated in Schedule 1) fully paid;

      (ii)    the issue of the Present Securities has been duly authorised and validly created and the issue of them does not contravene any law;

      (iii)   it does not have any other interest in any Marketable Securities issued by the Issuer other than the Present Securities;

      (iv)   the Collateral is not subject to any escrow or other conditions imposed by law;

      (v)    the Present Securities consist of the entire issued capital of the Issuer;

(k)   **no immunity**

it has no right of immunity from set-off, legal action, suit or proceeding, attachment or execution or the jurisdiction of any court with respect to the Collateral or its obligations under the Transaction Documents;

(l)    **copies of Constitutional Documents**

all copies of Constitutional Documents given by it or on its behalf to the Secured Party are true and complete copies and are in full force and effect except to the extent set out in any other Transaction Document or unless otherwise agreed by the Secured Party; and

(m)   **commercial benefit**

the entry into this document is for the Grantor's commercial benefit.

## 6.3   Future property

When the Grantor acquires any Collateral or the Collateral comes into existence after the date of this document, the Grantor is deemed to have given the representations and warranties set out in this clause 6 in relation to that Collateral.

## 6.4   Repetition

The representations and warranties are deemed to be made by the Grantor by reference to the facts and circumstances then existing on the date of this document and each other Transaction Document.

## 6.5   Reliance

The Grantor acknowledges that it makes the representations and warranties in this clause, which are made on the date of this document, with the intention of inducing the Secured Party to enter into the Transaction Documents and the Secured Party enters into the Transaction Documents on the basis of, and in full reliance on, each of the representations and warranties.

## 6.6   Additional representations and warranties

The representations and warranties in this document are in addition to any other representations and warranties in any other Transaction Document.

## 7    Undertakings

### 7.1    Undertakings remain in full force

The obligations and undertakings in this clause 7 remain in full force from the date of this document for so long as the Secured Money or any other amounts are outstanding under any Transaction Document.

### 7.2    Transaction Document obligations and undertakings

(a)    The Grantor must comply with all of its obligations and undertakings contained in the Transaction Documents.

(b)    Without limiting subclause (a) the Grantor must pay the Secured Money to the Secured Party in accordance with the Transaction Documents and any other obligation under which the Secured Money is payable.

### 7.3    Grantor's undertakings

The Grantor must:

(a)    **Accounts**

prepare and keep books and Accounts in accordance with the Accounting Standards; and on demand, make available for inspection and copying by the Secured Party books and Accounts of the Grantor;

(b)    **registration**

(i)    give to the Secured Party all details and information necessary to:

(A)    enable the Secured Party to make an effective registration to perfect its Security Interest; and

(B)    ensure that it continues to remain effective;

(ii)    at its own cost, immediately register this document or any other Transaction Document with any Government Agency if registration is necessary to perfect the Security Interests granted in clause 2.1 or protect the rights and priority of the Secured Party;

(c)    **information**

give to the Secured Party:

(i)    information and reports as provided for in the Transaction Documents;

(ii)    promptly on being notified of it, any notice under section 120 of the PPSA that is given to a debtor of a Transaction Party or any other person that owes or may owe money to a Transaction Party, in connection with any money that it is claimed that the Transaction Party owes;

(iii)    promptly on demand:

(A)    full particulars of all bank accounts maintained by the Grantor;

(B)    any other information in the possession or under the control of the Grantor that in the Secured Party's reasonable opinion is relevant to the Collateral or this document; and

(C)    a certificate signed on behalf of the Grantor by 2 directors or a director and secretary of the Grantor certifying whether or not an Event of Default has occurred and, if one has occurred, full written particulars of the action taken or proposed to be taken by the Grantor to remedy it;

(iv)    promptly on becoming aware of it, full written particulars of any person taking steps to register or registering a financing statement in relation to the Collateral;

(v)    at the time that it is sent or given, any notice or other document sent or given by the Grantor to its members or any class of members or its creditors or any class of creditors, the Australian Securities and Investments Commission, licence holder or any stock exchange; and

(vi)    promptly any other information about the Grantor or its financial condition or business or operations that the Secured Party reasonably requests and in a form acceptable to the Secured Party; and

(vii)    to the extent any event or occurrence would cause any information in a financing statement in relation to the Collateral to be different if it were to be re-registered, notice of that event or occurrence at least 30 Business Days prior to that event or occurrence;

(d)    **Constitutional Documents**

(i)    comply with its Constitutional Documents;

(ii)    comply with the Constitutional Documents of the Issuer and do everything required to be done by the Issuer (including the payment of calls or instalments); and

(iii)    not without the prior written consent of the Secured Party, amend its Constitutional Documents;

(e)    **change of name or other details**

not change its name or other details without notifying the Secured Party of the proposed new name or other details at least 30 Business Days before it proposes to do so;

(f)    **maintain Collateral**

(i)    promptly pay all calls or other amounts and Taxes for which the Grantor is liable as owner of the Collateral;

(ii)    immediately on becoming aware of it give to the Secured Party or its Representative all particulars of all New Rights and documentary evidence of all New Rights; and

(iii)    at the Secured Party's request, take up the New Rights if failure to do so may mean that the Collateral or this document would reduce in value or be prejudicially affected;

(g)    **financing statements**

not without the prior written consent of the Secured Party permit any financing statement, other than in relation to the Secured Party, to be registered in respect of the Collateral;

(h)     **default**

not cause or permit any Event of Default to occur;

(i)     **comply with laws**

comply with its obligations in relation to the Collateral, including:

(i)     under any Security Interest over the Collateral;

(ii)    any law binding on it or affecting it;

(iii)   any Authorisation applicable to the Collateral;

(iv)    any requirements of any Government Agency binding on it or its business, that, if it failed to comply, will or may materially impair its ability to perform its obligations under the Transaction Documents; and

(v)     institute or defend any legal proceedings that the Secured Party may reasonably require to protect the Collateral;

(j)     **capital**

if a corporation, not without the prior written consent of the Secured Party:

(i)     call up or receive in advance of call, its uncalled capital; or

(ii)    pass a resolution under section 254N or section 260B of the Corporations Act;

(k)     **conduct of business**

conduct its business in a proper and efficient manner and do everything to maintain its corporate or business existence in good standing;

(l)     **not remove from register**

not consent to or request the removal of:

(i)     any Present Securities from the register on which they are recorded or registered at the date of this document; and

(ii)    any After-acquired Securities from the register on which they are recorded or registered at the date that the Security Interest in those After-acquired Securities was granted under clause 2.1;

(m)     **know your customer**

at the request of the Secured Party, promptly supply or procure the supply of documentation and other evidence as is reasonably requested by the Secured Party (on its behalf or for any prospective Secured Party) in order for the Secured Party or any prospective new Secured Party to carry out and be satisfied it has complied with all necessary know your customer

checks under applicable law under the transactions contemplated in any Transaction Document;

(n)  **control**

to the extent that any Collateral is of a type over which a Security Interest could be perfected by control under the PPSA, promptly do anything that the Secured Party may require to enable it to perfect its Security Interest by control;

(o)  **possession**

to the extent that any Collateral is of a type over which a Security Interest could be perfected by possession under the PPSA, promptly do anything that the Secured Party may require to enable it to perfect its Security Interest by possession; and

(p)  **circulating assets**

to the extent that the Collateral is of a type referred to in section 340(5) of the PPSA, do anything that the Secured Party may require to enable the Secured Party to control that Collateral for the purpose of section 340(2)(b) of the PPSA.

**7.4    Rights of Secured Party**

Clause 7.2 is not to be construed as negating or limiting and does not negate or limit any rights of the Secured Party under section 53(2) of the PPSA.

## 8    Default

**8.1    Events of Default**

Each of the following events listed in this clause 8 is an Event of Default (whether or not it is in the control of the Grantor):

(a)  **obligations under Transaction Documents**

a Transaction Party fails to:

(i)  pay or repay in accordance with its obligations under the Transaction Documents any part of the Secured Money when due; or

(ii)  comply with any of its obligations under the Transaction Documents or with any condition of any waiver or consent by the Secured Party under or in connection with any Transaction Document;

(b)  **misrepresentation**

a representation, warranty or statement by or on behalf of a Transaction Party in a Transaction Document, or in a document provided under or in connection with a Transaction Document, is not true in a material respect or is misleading in a material respect when made or repeated;

(c)  **Insolvent**

a Transaction Party becomes Insolvent;

(d)    **enforcement against assets**

a Security Interest becomes enforceable or is enforced or a distress, attachment or other execution is levied or enforced over, all or any of the assets and undertaking of a Transaction Party;

(e)    **reduction of capital**

without the prior consent in writing of the Secured Party, a Transaction Party reduces its capital (including a purchase of its Marketable Securities but excluding a redemption of redeemable Marketable Securities) or passes a resolution referred to in section 254N(1) of the Corporations Act;

(f)    **investigation**

an investigation into all or part of the affairs of any Transaction Party commences under any law in circumstances material to its financial condition;

(g)    **Related Body Corporate**

anything referred to in the preceding paragraphs of this clause 8, or having substantially similar effect, occurs with respect to any Related Body Corporate of a Transaction Party;

(h)    **transfer despite prohibition**

Collateral is or will be able to be transferred (including by sale or creating a Security Interest or under proceedings to enforce a judgment) in breach of a provision in this document prohibiting that transfer;

(i)    **priority and attachment**

other than by any act of the Secured Party, any Security Interest created by this document or any Collateral Security:

(i)    ceases to have the priority that it purports to have under this document or Collateral Security;

(ii)    ceases or fails to attach to any Collateral that is intended to be the subject of this document or Collateral Security; or

(iii)    ceases to secure the payment of the money or the performance of the obligations that it purports to secure;

(j)    **priority agreement**

the Grantor does not comply with its obligations under any priority agreement entered into in accordance with this document;

(k)    **amendment of Constitutional Documents**

the Constitutional Documents of a Transaction Party are amended in a material respect without the prior written consent of the Secured Party (which will not be unreasonably withheld);

(l)    **revocation of Authorisation**

an Authorisation that is material to the performance by any Transaction Party of a Relevant Document, or to the validity and enforceability of a Relevant Document, is repealed, revoked or terminated or expires or is not registered, or is modified or amended or not renewed, or conditions are attached to it in a manner unacceptable to the Secured Party, and is not immediately replaced by another Authorisation acceptable to the Secured Party;

(m)  **compulsory acquisition**

(i)     all or any material part of the Collateral is compulsorily acquired by or by order of a Government Agency or under a law;

(ii)    a Government Agency orders the sale, vesting or divesting of all or any material part of the Collateral; or

(iii)   a Government Agency takes a step for the purpose of any of the above or proposes or threatens to do any of the above and the relevant Transaction Party fails to take or diligently pursue steps necessary or reasonably requested by the Secured Party for the purpose of preventing the occurrence of any of the events referred to in this clause 8.1(m);

(n)  **Governmental interference**

a law or anything done by a Government Agency wholly or partially to a material extent renders illegal, prevents or restricts the performance or effectiveness of a Relevant Document;

(o)  **Transaction Documents**

any Event of Default (as that expression, or any equivalent expression, is defined in any Transaction Document) occurs;

(p)  **loan used for different purposes**

a loan provided by the Secured Party is used for a purpose other than the stated purpose;

(q)  **natural persons**

if the Grantor is a natural person and they die, they no longer have full legal capacity or they become incapable of managing their own affairs;

(r)  **partnerships**

if the Grantor is a partnership and without the prior written consent of the Secured Party:

(i)     the constitution of the partnership is changed; or

(ii)    the partnership is dissolved; and

(s)  **associations**

if the Grantor is an association or a co-operative and without the prior written consent of the Secured Party:

(i)     an application is made, a resolution is passed or an order is made for the winding up of that Grantor; or

(ii)    that Grantor becomes externally administered or a controller of a trustee for creditors is appointed in respect of its property.

## 9    Enforcement

### 9.1    Rights of Secured Party following default

In addition to any other rights provided by law or under any other Transaction Document, at any time after an Event of Default has occurred:

(a)    each Security Interest arising under this document or any Collateral Security becomes immediately enforceable;

(b)    the Secured Party may at any time, by notice to the Grantor, declare all or any part of the Secured Money to be due and payable immediately, on demand or at a later date as the Secured Party may specify in the notice;

(c)    the Secured Party:

    (i)    may, in the name of the Grantor or otherwise, at any time, do anything that the Grantor, or if the Grantor is a corporation or a trust, its directors or trustee (as the case may be), could do in relation to the Collateral;

    (ii)    has all other rights conferred by law in relation to the Collateral; and

    (iii)    may appoint one or more Receivers, and may do anything that a Receiver may do under clause 11(c).

## 10    Exclusion of notice or time period

### 10.1    Where notice or time period is not required

Unless required by an applicable law that cannot be excluded:

(a)    the Secured Party or any Receiver may exercise any right under this document or conferred by law without first giving any notice to the Grantor or allowing the lapse of any period of time; and

(b)    the parties expressly agree to dispense with any requirement under any law that notice be given or that the lapse of any period of time be allowed before any rights are exercised.

### 10.2    Where notice or time period is required

(a)    If any applicable law that cannot be excluded requires a notice to be given or a lapse of time to occur before any right can be exercised, then:

    (i)    when a period of notice or lapse of time must be given and that period cannot be varied, that period of notice must be given or that lapse of time must occur or be permitted by the Secured Party; or

    (ii)    when the law provides that a period of notice or lapse of time may be stipulated, fixed or varied by this document, then 1 day is stipulated and fixed as that period of notice or lapse of time including, if applicable, as the period of notice or lapse of time during which:

(A)    an Event of Default must continue before a notice is given or requirement otherwise made for payment of the Secured Money or the observance of other obligations under this document; and

(B)    a notice or request for payment of the Secured Money or the observance of other obligations under this document must remain not complied with before the Secured Party or a Receiver may exercise any rights it has.

(b)    A notice referred to in clause 10.1 includes any notice that:

(i)    identifies a default by the Grantor;

(ii)    gives a period to rectify a default by the Grantor;

(iii)    gives a power to sell or take control or possession of any Collateral; and

(iv)    appoints a Receiver to any Collateral to exercise its rights and powers under this document if the default is not rectified.

### 10.3   PPSA notices

(a)    Without limiting clause 10.1 neither the Secured Party nor any Receiver is obliged to give any notice under the PPSA (including notice of a verification statement) unless the notice is required by the PPSA and cannot be excluded.

(b)    The Grantor consents to the waiver of the requirement for notice under this clause 10.3 and waives any rights it has to receive a notice under sections 95, 118, 121(4), 130 and 157 of the PPSA.

## 11    Contracting out of PPSA provisions

(a)    To the extent that Chapter 4 of the PPSA would otherwise apply to enforcement by the Secured Party of any Security Interest in the Collateral, the parties agree that:

(i)    to the extent permitted by section 115(1) of the PPSA, the Secured Party need not comply with sections 125, 132(3)(d), 132(4);

(ii)    sections 142 and 143 of the PPSA are excluded; and

(iii)    to the extent permitted by section 115(7) of the PPSA; the Secured Party need not comply with sections 132 and 137.

(b)    The Grantor consents to the waiver of the requirement for notice under any other provision of the PPSA that the Secured Party may notify to the Grantor after the date of this document and waives any rights it has to receive that notice.

(c)    If the Secured Party exercises a right, power or remedy in connection with this document, that exercise is taken not to be an exercise of a right, power or remedy under the PPSA unless the Secured Party states otherwise at the time of exercise. However, this clause does not apply to a right, power or remedy which can only be exercised under the PPSA.

## 12    Receivers

### 12.1    Appointment of Receiver

(a)    In addition to the powers under clause 9, the Secured Party may appoint any one or more persons as Receiver to any part of the Collateral in addition to and without prejudice to any of its other rights:

    (i)    if the Grantor requests the Secured Party to do so;

    (ii)    at any time after an Event of Default occurs; or

    (iii)    if the Secured Party, in its sole discretion, believes that any Collateral is at risk of being seized, becoming subject to a Security Interest or otherwise being dealt with in a manner inconsistent with the terms of this document.

(b)    In exercising the power to appoint a Receiver, the Secured Party may:

    (i)    appoint a Receiver under clause 12.1(a) either before or after it has taken possession of the Collateral and either before or after any order has been made or a resolution passed for the winding up of the Grantor;

    (ii)    appoint a different Receiver for different parts of the Collateral;

    (iii)    if more than one person is appointed as Receiver of any part of the Collateral, empower them to act jointly or jointly and separately;

    (iv)    remove the Receiver, appoint another in substitution if the Receiver is removed, retires or dies; and

    (v)    fix the remuneration of the Receiver.

(c)    The Secured Party may appoint any person or any 2 or more persons jointly or jointly and separately as its agent to exercise any of its rights under this document, in which case the provisions of clause 12.1 apply as if the agent was a Receiver.

### 12.2    Receiver as agent

(a)    Subject to clauses 12.2(b) and 12.2(c), a Receiver will be the agent of the Grantor who alone will be responsible for the Receiver's acts and omissions and remuneration.

(b)    The Secured Party may appoint a Receiver as the agent of the Secured Party and delegate to a Receiver any of the Secured Party's rights under this document.

(c)    To the extent that as a result of any order being made or a resolution being passed for the winding up of the Grantor, a Receiver ceases to be the agent of the Grantor, the Receiver will immediately become the agent of the Secured Party.

### 12.3    Powers - general

(a)    A Receiver has the right in relation to any property in respect of which the Receiver is appointed, to do everything that the Grantor may lawfully authorise an agent to do on behalf of the Grantor in relation to that property.

(b)    Without limitation, a Receiver may in relation to that property exercise:

(i)    the rights capable of being conferred on receivers and receivers and managers by the PPSA and the Law of any applicable jurisdiction;

(ii)    the rights set out in clause 9;

(iii)    the rights of the Grantor and, if the Grantor is a corporation, the directors of the Grantor;

(iv)    if the Grantor is not a corporation to which the Corporations Act applies, the rights that the Law would allow a Receiver to do if the Grantor was a corporation incorporated under the Corporations Act; and

(v)    any other rights the Secured Party may by notice to a Receiver lawfully give to a Receiver.

(c)    The Secured Party may by notice to a Receiver at the time of a Receiver's appointment or any subsequent times give any rights to a Receiver that the Secured Party determines.

## 12.4 General

The interpretation of any right or power set out in clause 11(c) is not restricted by reference to or inference from any other right or power.

## 13 Exercise of default rights

### 13.1 No hindrance

The Grantor must not cause or permit the Secured Party, a Receiver or an Attorney to be prevented or hindered from exercising its rights under this document.

### 13.2 Performance of obligations

The Secured Party or any person authorised by it may at the cost of the Grantor do anything that the Secured Party determines is necessary or expedient to make good or remedy any breach by the Grantor of any of the provisions of this document.

### 13.3 Exclusion of legislation

(a)    The provisions implied in Security Interests by any statute will for the purposes of this document be negatived or varied only so far as they are inconsistent with the provisions of this document and are otherwise varied so as to become consistent with this document.

(b)    Any statutory restrictions (other than mandatory restrictions that cannot be excluded) on any right of the Secured Party, a Receiver or an Attorney to lease or otherwise deal with the Collateral will not apply to the rights of those persons under this document.

### 13.4 Order of enforcement

The Secured Party is not:

(a)    under any obligation to marshal in favour of the Grantor any Security Interest held by the Secured Party or any of the funds or assets that the Secured Party may be entitled to receive or have a claim on; and

(b)     obliged to resort to any Collateral Security or enforce any rights against any other person before it resorts to enforcement of this document.

## 14    Application of money

### 14.1    Application

The Remedy Proceeds received under or arising out of this document or any Collateral Security granted by the Grantor will be applied towards paying the Secured Money subject to the repayment of any claims having priority over any claim of the Secured Party.

### 14.2    Order of payment

Subject to any applicable law to the contrary, including section 140 of the PPSA:

(a)     the Secured Party may determine the order of application of the Remedy Proceeds in its absolute discretion; and

(b)     (if the Secured Party does not make a determination under clause 14.2(a) the Remedy Proceeds are to be applied in the following order:

(i)     first, towards the payment or reimbursement of all costs and expenses (other than remuneration of any Receiver or Attorney) incurred by the Secured Party, any Receiver or any Attorney in or incidental to the exercise or enforcement or attempted exercise or enforcement of its rights under this document or any Collateral Security;

(ii)    secondly, towards the remuneration of any Receiver or Attorney;

(iii)   thirdly, towards satisfaction of the Secured Money; and

(iv)    fourthly, as to any surplus to the Grantor or other person entitled to it or authorised to give receipts for it.

### 14.3    Creditor's certificate and disputes

(a)     The Secured Party may rely on a certificate issued by any person who claims to be entitled to receive any of the Remedy Proceeds to the effect that the Grantor owes money to it and stating the amount owing, without being obliged to make any further enquiry.

(b)     If there is any dispute between any persons (other than the Secured Party) as to who is entitled to receive the Remedy Proceeds, the Secured Party may pay that money into court and when that is done the Secured Party will have no further obligations in relation to that money.

### 14.4    No interest on Remedy Proceeds

The Secured Party is not obliged to pay interest on the Remedy Proceeds to any person.

### 14.5    Payment into bank account

If the Secured Party pays any money into a bank account in the name of any person to whom the Secured Party is obliged to pay money under this clause 14 and notifies that person of the particulars of the account the Secured Party will have no further obligations in relation to that money.

### 14.6 Contingent and prospective indebtedness

If at the time a distribution of Remedy Proceeds is being made under clause 14.2 and:

(a)   any of the Secured Money is contingently owing; or

(b)   in the reasonable opinion of the Secured Party there is a prospect that the money forming part of the Secured Money may become owing (whether actually or contingently) by the Grantor to the Secured Party,

the Secured Party:

(c)   unless otherwise required by law:

    (i)   may retain any part of the Remedy Proceeds; and

    (ii)   pay that part of the Remedy Proceeds into an interest bearing deposit account,

to hold as security for the payment of the Secured Money on terms that the Secured Party determines with any person (including the Secured Party or any of its Related Bodies Corporate) until that part becomes actually owing or no longer falls within the definition of Secured Money;

(d)   at any time, may apply any money in that account towards the satisfaction of any money due for payment by the Grantor to the Secured Party in any way that the Secured Party determines; and

(e)   when the Secured Money is in the opinion of the Secured Party satisfied in full the Secured Party will apply the balance (together with interest earned on the deposit) in accordance with clause 14.2.

### 14.7 Payments during default notice period

If, during the period from the service of a notice requiring the rectification of a default in the payment of money by the Grantor under this document or any Collateral Security and the expiration of that notice, the Grantor pays any money to the Secured Party towards satisfaction of the Secured Money, the Secured Party may apply that money:

(a)   first, towards satisfaction of any money due for payment by the Grantor to the Secured Party other than that which is the subject of the notice; and

(b)   secondly, towards satisfaction of the money that is the subject of the notice.

### 14.8 Accounting for Remedy Proceeds

The Secured Party, any Receiver or any Attorney is not obliged to account to the Grantor for any money relating to the exercise by any of them of any right until money is actually received in immediately available funds and, without limitation, if any of them sell the Collateral on terms by which:

(a)   any part of the purchase price remains unpaid (whether secured or unsecured) after transfer of the Collateral to the purchaser; or

(b)   the purchase price is payable in instalments on or before the transfer of the Collateral to the purchaser,

they are not obliged to account for the purchase price before it is actually received in immediately available funds.

## 15    Third party dealings

### 15.1    Secured Party's receipts and discharges

The Secured Party may give valid discharges and receipts for any money payable by any third party in respect of any exercise of a right by the Secured Party, any Receiver or any Attorney.

### 15.2    No challenge to disposal

The Grantor agrees that:

(a)    if the Secured Party, any Receiver or Attorney transfers or otherwise disposes of the Collateral the Grantor will not challenge the acquirer's right to acquire the Collateral; and

(b)    it will not seek to reclaim that Collateral.

### 15.3    No duty to enquire

(a)    Any person dealing with the Secured Party, any Receiver or any Attorney in relation to the exercise by any of them of a right under this document will not be concerned to enquire whether:

(i)    the right is exercisable or properly exercised;

(ii)    the Receiver or Attorney is properly appointed; or

(iii)    any money paid by that person to the Secured Party, Receiver or Attorney is properly applied,

and the title of that person to any property acquired by that person from the Secured Party, Receiver or Attorney will not be adversely affected by the right not being exercisable or any improper appointment, exercise of the right or application of money by the Secured Party, any Receiver or any Attorney of which that person does not have actual notice.

(b)    The benefit of clause 15.3(a) is held on trust for the benefit of the Secured Party and each person dealing with the Secured Party, any Receiver or Attorney.

## 16    Preservation of rights

### 16.1    Reinstatement of rights of Secured Party

If any transaction or any payment or transfer received by the Secured Party, relating to the Secured Money is void, voidable, refunded by the Secured Party in its discretion or is otherwise unenforceable or refundable:

(a)    the Secured Party is immediately entitled as against the Grantor to all rights in respect of the Secured Money (whether under this document, any Collateral Security or otherwise) that it would have had if the transaction had not occurred or the payment or transfer had not been received and any such money received by the Secured Party will be treated as never having been received by the Secured Party;

(b)    any release, discharge or settlement given or made as a result of that transaction or the receipt of that payment or transfer will be of no force and effect; and

(c)    the Grantor must immediately do all things and sign the documents necessary or desirable to restore to the Secured Party:

(i)    the security created by this document and any Collateral Security; and

(ii)    the Secured Party's rights under this document and any Collateral Security,

held by the Secured Party immediately before the transaction being entered into or the payment or transfer being received.

## 16.2    Primary obligations

The Grantor's obligation to pay the Secured Money is a primary obligation and the Secured Party is not obliged to proceed against or enforce any other right against any person or property or demand payment from any other person before making a demand for payment by the Grantor of the Secured Money.

## 16.3    No marshalling

The Secured Party is under no obligation to marshal in favour of the Grantor or to exercise, recover, apply or perfect any Security Interest that the Secured Party holds at any time or any money or property that the Secured Party may be entitled to receive or have a claim against.

## 16.4    No merger

This document is in addition to and is not in any way prejudiced by any judgment, order or other thing and the Secured Party's rights under this document will not be merged with any judgment, order or other thing.

## 17    Costs and expenses

## 17.1    Transaction expenses

The Grantor must promptly on demand pay the Secured Party the amount of all costs and expenses incurred by the Secured Party in connection with:

(a)    preparing, reviewing, amending and negotiating the Transaction Documents or any document that is or was proposed to be a Transaction Document;

(b)    the monitoring of compliance with the obligations of the Grantor under the Transaction Documents including the obtaining of any valuation or report or the conducting of any inspection of the Collateral; and

(c)    the negotiation, preparation, printing, stamping, registration and execution of the Transaction Documents and any other Transaction Document executed after the date of this document.

## 17.2    Amendment costs

If the Grantor requests an amendment, discharge, replacement, waiver or consent, the Grantor must promptly on demand, reimburse the Secured Party for the amount of all costs and expenses incurred by or for the account of the Secured Party in responding to, evaluating, negotiating or complying with that request or requirement.

### 17.3 Enforcement costs

The Grantor must promptly on demand, pay to the Secured Party the amount of all costs and expenses incurred by the Secured Party in connection with the enforcement of, or the preservation of any rights under, any Transaction Document or in connection with anything referred to in clause 15.

### 17.4 Taxes or registration fees

The Grantor must promptly on demand, pay to the Secured Party the amount of any Taxes and registration or other fees (including fines and penalties relating to the Taxes and fees) that are payable or are assessed by a relevant Government Agency or other person to be payable in relation to the Transaction Documents.

### 17.5 Remuneration

The Grantor must remunerate the Secured Party, any Receiver and any Attorney for any services rendered by them in relation to the exercise of any right under this document. The rate of the remuneration and the manner of payment will be that determined by the Secured Party.

### 17.6 Indirect Tax

(a) All payments expressed to be payable under any Transaction Document by the Grantor is deemed to be exclusive of Indirect Tax.

(b) If any Indirect Tax is chargeable on any supply made by the Secured Party to the Grantor in connection with any Transaction Document the Grantor must pay to the Secured Party (in addition to and at the same time as paying the payment) an amount equal to the amount of the Indirect Tax.

(c) Where a Transaction Document requires the Grantor to reimburse the Secured Party for any costs or expenses, the Grantor must also at the same time pay and indemnify the Secured Party against all Indirect Tax incurred by the Secured Party in respect of the costs or expenses to the extent the Secured Party reasonably determines that it is not entitled to repayment or credit in respect of the Indirect Tax.

(d) The Secured Party must promptly provide to the Grantor a tax invoice complying with the relevant law relating to that Indirect Tax.

## 18   Other indemnities

### 18.1 Other indemnities

The Grantor must promptly on demand, indemnify the Secured Party against any loss, claim, cost or expense incurred by the Secured Party as a result of:

(a) the occurrence of any Event of Default;

(b) any enquiry, investigation, subpoena (or similar order) or litigation with respect to:

(i) the Grantor; or

(ii) the transactions contemplated or financed under this document;

(c)    a failure by the Grantor to pay any amount due under a Transaction Document on its due date (except where paid in accordance with this document); or

(d)    the Secured Party acting or relying in good faith on any notice or other communication from or genuinely believed to be from the Grantor,

in each case except to the extent that the Loss does not arise as a result of any fraud, gross negligence or wilful misconduct of the Secured Party or any of its employees.

### 18.2    Survival of obligations

Each indemnity in this document is a continuing obligation, separate and independent from the other obligations of the Grantor and survives the termination of this document.

## 19    Assignments and transfers

### 19.1    Assignments and transfers by the Secured Party

The Secured Party may:

(a)    assign any of its rights; or

(b)    transfer by novation any of its rights or obligations,

under the Transaction Documents to any other entity.

### 19.2    Grantor authorises assignment or transfer

(a)    The Secured Party is not obliged to obtain the Grantor's consent to, or notify the Grantor of, any such assignment or transfer.

(b)    The Grantor irrevocably authorises the Secured Party to execute any document effecting a transfer by novation under clause 19.1(b) on its behalf, without any consultation with the Grantor.

### 19.3    Assignment and transfer by the Grantor

The Grantor must not assign or transfer any of its rights under the Transaction Documents without the prior written consent of the Secured Party.

## 20    Set-off

### 20.1    Secured Party may set-off obligation

The Secured Party may, but need not, set off any obligation due from the Grantor under the Transaction Documents against any obligation owed by the Secured Party to the Grantor regardless of the place of payment, booking branch or currency of either obligation.

## 21    Certificates

### 21.1    Accounts

In any litigation or arbitration proceedings arising out of or in connection with a Transaction Document, the entries made in the Accounts maintained by the Secured Party are, unless the contrary is proved, sufficient evidence of the matters to which they relate.

### 21.2    Certificates and determinations

(a)    **Secured Party**

Any certification or determination by the Secured Party of an exchange rate, a rate of interest or amount under any Transaction Document and any other matter is, unless the contrary is proven, sufficient evidence of the matters to which it relates.

(b)    **Grantor**

The Grantor:

(i)    irrevocably authorises the Secured Party to rely on a certificate by any person purporting to be its director or secretary as to the identity and signatures of its Authorised Officers; and

(ii)    warrants that those persons have been authorised to give notices and communications on its behalf under or in connection with the Transaction Documents.

### 21.3    Not obliged to give reasons

The Secured Party is not obliged to give the reasons for its determination or opinion in relation to any matter under any Transaction Document.

## 22    Partial invalidity

If, at any time, any provision of any Transaction Document is or becomes illegal, invalid or unenforceable in any respect under any applicable law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions nor the legality, validity or enforceability of the provision under the applicable law of any other jurisdiction is in any way affected or impaired.

## 23    Remedies and waivers

(a)    No failure to exercise, nor any delay in exercising, on the part of the Secured Party, any right or remedy under the Transaction Documents operates as a waiver, nor any single or partial exercise of any right or remedy prevents any further or other exercise or the exercise of any other right or remedy.

(b)    The rights and remedies provided in this document are cumulative and not exclusive of any rights or remedies provided by applicable law.

## 24    Amendments and waivers

Any term of a Transaction Document may be amended or waived only in writing with the consent of the Secured Party and any amendment or waiver is binding on all parties.

## 25    Confidentiality

### 25.1  Disclosure

(a)  Subject to clause 25.1(b), neither party may disclose the existence or content of any Transaction Document or any other information of a kind referred to in section 275(1) of the PPSA.

(b)  A party may disclose information or documents referred to in clause 25.1(a) as follows:

   (i)  in the case of the Secured Party:

      (A)  in assigning, transferring or otherwise contracting with another person in connection with a Transaction Document (including by way of sub-participation or securitisation) or seeking to do any of those things;

      (B)  in any proceeding arising out of or in connection with a Transaction Document;

      (C)  to the extent that disclosure is regarded by the Secured Party as necessary to protect its interests or to comply with its obligations under the PPSA;

      (D)  if an Event of Default has occurred and is continuing;

      (E)  to its legal advisers and its consultants; a ratings agency or any Related Bodies Corporate;

   (ii)  if required under any applicable law;

   (iii)  as required or permitted by a Transaction Document; or

   (iv)  with the prior written consent of the other party, which must not be unreasonably withheld.

(c)  Each party consents to any disclosure of information or documents made in accordance with this clause.

(d)  Clause 25.1(b) does not require the Secured Party to disclose any information of the kind referred to in section 275(1) of the PPSA. The Grantor agrees that it will only authorise the disclosure of information under section 275(7)(c) or request information under section 275(7)(d) with the prior written consent of the Secured Party.

(e)  This clause 25 survives the termination of this deed.

## 26    Attorney

### 26.1  Appointment

The Grantor irrevocably appoints the Secured Party and each Authorised Officer of the Secured Party, its attorney with the right:

(a)  at any time to:

    (i)    comply with the obligations of the Grantor under this document;

    (ii)    do everything that in the Attorney's reasonable opinion is necessary or expedient to enable the exercise of any right of the Secured Party in relation to this document or any Authorisation;

    (iii)    complete this document;

    (iv)    complete any document executed by or on behalf of the Grantor in blank and deposited with the Secured Party as a Collateral Security;

    (v)    appoint substitutes and otherwise delegate its powers (including this power of delegation); and

    (vi)    control any of the Collateral that is collateral within the meaning of section 21(2)(c) of the PPSA; and

(b)    after any Event of Default has occurred, to do everything that the Grantor may lawfully authorise an agent to do in relation to this document and the Collateral.

## 26.2 General

(a)    Any Attorney may exercise its rights despite that the exercise of the right constitutes a conflict of interest or duty.

(b)    The Grantor by this document ratifies any exercise of a right by an Attorney.

(c)    The power of attorney is granted:

    (i)    to secure the compliance by the Grantor with its obligations to the Secured Party under this document and any proprietary interests of the Secured Party under this document; and

    (ii)    for valuable consideration (receipt of which is acknowledged), which includes the acceptance of this document by the Secured Party at the Grantor's request.

## 27    Release

## 27.1 Release

At the request in writing and at the cost of the Grantor, the Secured Party will release the Collateral from the Security Interest created by this document if the Grantor's obligation to pay the Secured Money and perform all of the Grantor's other obligations to the Secured Party are satisfied and in the Secured Party's reasonable opinion:

(a)    there is no prospect that money or damages will become owing (whether actually or contingently) by the Grantor to the Secured Party; and

(b)    no payment towards the satisfaction of the Grantor's obligation to pay the Secured Money is likely to be void, voidable or refundable under any applicable Law (including any law relating to Insolvency).

### 27.2 Record on PPS Register

If the Secured Party releases Collateral from a Security Interest, it will register a financing statement or financing change statement on the PPS Register if it is required to do so under the PPSA.

## 28 Further assurances

### 28.1 Notice to Grantor

The Secured Party may, by notice to the Grantor at any time, require the Grantor to do any or all of the following things:

(a) take all steps, provide information (including without limitation serial numbers relating to any Collateral), produce documents and obtain consents;

(b) execute any notice, consent, document or amendment to a Transaction Document;

(c) execute and deliver to the Secured Party, transfer forms in relation to any of the Collateral (undated and blank as to transferee and consideration); or

(d) do any other thing,

that the Secured Party considers necessary or desirable to:

(e) ensure that any Transaction Document or any Security Interest arising under any of them, is enforceable;

(f) effect or complete the provisions of each Transaction Document;

(g) reserve or create any type of Security Interest over any part of the Collateral in a manner not inconsistent with this document with any additional terms reasonably required by the Secured Party having regard to the nature of that part of the Collateral and the type of additional Security Interest being created, including an assignment of any Collateral;

(h) stamp, protect, perfect, record, or better secure the position of the Secured Party under any Transaction Document in any relevant jurisdiction;

(i) obtain or preserve the priority position of the Secured Party contemplated by this document; or

(j) overcome any defect or adverse effect arising from the PPSA.

### 28.2 Compliance with notice

The Grantor must:

(a) comply with the requirements of a notice under clause 28.1 within the time stated in the notice at the cost and expense of the Grantor;

(b) reimburse the costs of the Secured Party in connection with anything the Grantor is required to do under this clause; and

(c) promptly notify the Secured Party of any change to information that it provides to the Secured Party under this clause.

### 28.3   Transaction Document

Any new document that the Grantor is required to sign under clause 28.1 constitutes a Transaction Document.

### 28.4   Authority to complete blanks

The Grantor agrees:

(a)   that the Secured Party may complete and fill in any blanks in this document or any document connected with it (including Transfers, assignments and other transfers, financing statements, financing change statements, amendment demands or any Corporations Act or PPSA forms);

(b)   to procure the approval of the board of directors or other governing body of the Grantor or the Issuer to the registration of any of the documents referred to in clause 28.2(a); and

(c)   to deliver all Documents of Title to the Secured Party that evidence any Relevant Marketable Securities.

## 29   Severability

Any provision of this document or any Collateral Security that is prohibited or unenforceable in any jurisdiction is ineffective to the extent of that prohibition or unenforceability. This does not invalidate or affect the validity and enforceability of that provision in any other jurisdiction nor the validity and enforceability of the remaining provisions of this document or any Collateral Security.

## 30   Waiver and exercise of rights

### 30.1   Waiver

A right in favour of the Secured Party under this document, a breach of an obligation of the Grantor under this document or the occurrence of an Event of Default can only be waived by a written instrument signed by the Secured Party. No other act, omission or delay of the Secured Party will constitute a waiver.

### 30.2   Exercise of rights

A single or partial exercise or waiver by the Secured Party of a right relating to this document will not prevent any other exercise of that right or the exercise of any other right.

### 30.3   No liability

The Secured Party and its Representatives will not be liable for any loss, claim, cost or expense of the Grantor caused or contributed to by the waiver of, exercise of, attempted exercise of, failure to exercise or delay in exercising a right of the Secured Party and the Secured Party holds the benefit of this clause 30 on trust for itself and its Representatives.

## 31   Notices

(a)   **Must be in writing** - A notice or other communication connected with this document (**Notice**) has no legal effect unless it is in writing.

(b)   **Service** - In addition to any other method of service provided by Law, the Notice may be:

(i)     sent by prepaid post to the address of the addressee set out in this document or subsequently notified;

(ii)     sent by email to the email address of the addressee; or

(iii)     delivered at the address of the addressee set out in this document or subsequently notified.

(c)     **Delivery** - If the Notice is sent or delivered in a manner provided for by clause 31(b), it must be treated as being given to and received by the party to whom it is addressed:

     (i)     if sent by post, on the 2nd Business Day (at the address to which it is posted) after posting;

     (ii)     if sent by facsimile or email before 5pm on a Business Day at the place of receipt, on the day it is sent and otherwise on the next Business Day at the place of receipt; or

     (iii)     if otherwise delivered before 5pm on a Business Day at the place of delivery, upon delivery and otherwise on the next Business Day at the place of delivery.

(d)     **Email and facsimile notices** - Despite clause 31(c):

     (i)     a facsimile is not treated as given or received unless at the end of the transmission the sender's facsimile machine issues a report confirming the transmission of the number of pages in the Notice;

     (ii)     an email is not treated as given or received if the sender's computer reports that the message has not been delivered; and

     (iii)     a facsimile or email is not treated as given or received if it is not received in full and in legible form and the addressee notifies the sender of that fact within 3 hours after the transmission ends or by 12 noon on the Business Day on which it would otherwise be treated as given and received, whichever is later.

(e)     **Valid notice** - A Notice sent or delivered in a manner provided by clause 31(b) must be treated as validly given to and received by the party to which it is addressed even if the addressee has become Insolvent or is deregistered or is absent from the place at which the Notice is delivered or to which it is sent, or if the Notice is returned unclaimed.

(f)     Any Notice by a party may be given and may be signed by its solicitor.

(g)     **PPSA Notice** - Despite anything in this clause 31 the Grantor agrees to send any Notice in connection with a PPSA registration to the address for service specified in the registration.

## 32    Sovereign immunity

The Grantor irrevocably waives any immunity that it or its property has from:

(a)     set-off;

(b)     legal, arbitral or administrative proceedings;

(c)     any process or order of any court, administrative tribunal or arbitrator for the satisfaction or enforcement of a judgment, order or arbitral award or for the arrest, detention or sale of any property; or

(d)     service on it of any process, judgment, order or arbitral award,

on the grounds of sovereignty or otherwise under any law of any jurisdiction where any proceedings may be brought or enforced in relation to any Event of Default under this document.

## 33   Governing law and jurisdiction

(a)     The law of the Relevant Jurisdiction governs this document.

(b)     The parties submit to the non-exclusive jurisdiction of the courts of the Relevant Jurisdiction and Australia.

## 34   Counterparts

This document may be executed in any number of counterparts. Each counterpart is an original but the counterparts together are one and the same instrument.

## 35   Execution by attorney

If an attorney executes this document, the attorney declares that the attorney has no notice of revocation, termination or suspension of the power of attorney under which the attorney executes this document.

Executed as a deed and delivered on the date shown on the first page.

**EXECUTED** by **ALLEGIANCE COAL LIMITED ACN 149 490 353** in accordance with section 127 of the *Corporations Act 2001* by being signed by the following officers:

_____
Signature of director

Mark Gray

_____
Name of director *(please print)*

_____
Signature of director / company secretary

_____
Name of director / company secretary
*(please print)*

**EXECUTED** by **COLLINS ST CONVERTIBLE NOTES PTY LTD ACN 657 773 754 ATF THE COLLINS ST CONVERTIBLE NOTE FUND** in accordance with the *Corporations Act 2001* by being signed by the following officers:

_____
Signature of director

Vasilios Piperoglou

_____
Name of director *(please print)*

_____
Signature of director / company secretary

Michael Goldberg

_____
Name of director / company secretary
*(please print)*

Executed as a deed and delivered on the date shown on the first page.

**EXECUTED by ALLEGIANCE COAL
LIMITED ACN 149 490 353** in accordance
with section 127 of the *Corporations Act
2001* by being signed by the following
officers:

_____
Signature of director

_____
Signature of director / company secretary

Jonathan Reynolds
_____

_____
Name of director *(please print)*

_____
Name of director / company secretary
*(please print)*

**EXECUTED by COLLINS ST CONVERTIBLE
NOTES PTY LTD ACN 657 773 754 ATF
THE COLLINS ST CONVERTIBLE NOTE
FUND** in accordance with the *Corporations
Act 2001* by being signed by the following
officers:

_____
Signature of director

_____
Signature of director / company secretary

**Vasilios Piperoglou**
_____
Name of director *(please print)*

**Michael Goldberg**
_____
Name of director / company secretary
*(please print)*

## SCHEDULE 1    Present Securities

| Issuer | Description | Identification or certificate or registration number |
|---|---|---|
| Allegiance Coal USA Limited | 100 shares on issue | 7692949 |