**Exhibit 6**
**Amendment to Guaranty and Security Agreement**

# AMENDMENT TO GUARANTY AND SECURITY AGREEMENT

Dated as of: August [15], 2022

This AMENDMENT TO GUARANTY AND SECURITY AGREEMENT (this "Amendment"), dated as of August [15], 2022 (the "Amendment Effective Date"), by and among ALLEGIANCE COAL USA LIMITED, a Delaware corporation ("ACL"); ALLEGIANCE COAL LIMITED, an Australian corporation CAN 149 490 353 ("AHQ"); NEW ELK COAL COMPANY LLC, a Colorado limited liability company ("NECC"); NEW ELK COAL HOLDINGS LLC, a Delaware limited liability company ("NECH"); NORTH CENTRAL ENERGY COMPANY, a Colorado corporation ("NCEC"); RATON BASIN ANALYTIC LLC, a Colorado limited liability company ("RBA"); and BLACK WARRIOR MINERALS, INC., an Alabama corporation ("BWM, and together with ACL, AQH, NECC and NECH, the "Grantors") and COLLINS ST CONVERTIBLE NOTE FUND CAN 149 490 353 (the "Noteholder").

WHEREAS, the Grantors and the Noteholder are parties to the Guaranty and Security Agreement, dated as of May 24, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "Security Agreement");

WHEREAS, AHQ, ACL and the Noteholder are parties to the Note Agreement pursuant to which the Noteholder received a Note and is expected to receive a Notes or Notes on the date hereof;

WHEREAS, Section 3.04(b) of the Security Agreement requires that, prior to Tranche 2, the Noteholder have a perfected first priority security interest in each Deposit Account of each Grantor which is perfected by Control, except as otherwise permitted by the Noteholder and other than two bank accounts of BWM in which it holds funds in trust and an account of NECC with Leumi USA in connection with the financings with Marco International Corporation;

WHEREAS, Grantors have not provided a perfected first priority interest in each Deposit Account which is perfected by Control as required by Section 3.04(b) of the Security Agreement;

WHEREAS, pursuant to Section 16.9 of the Note Agreement, certain Grantors are required to maintain specified minimum cash balances ("Required Cash Balances"); and

WHEREAS, Grantors are willing to waive the requirement that Grantors provide a first priority perfected security interest in the Deposit Account held with IN Bank conditioned upon the undertaking by the Grantors to exclude all funds not held in a Deposit Account in which Noteholder has a first priority security interest perfected by Control from the calculation of the Required Cash Balances for purposes of Section 16.9 of the Note Agreement.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

Section 1.  <u>Definitions; References Generally</u>. Except as otherwise defined in this Amendment, terms defined in the Security Agreement are used herein as defined therein. References in the Security Agreement (including references to the Agreement as amended hereby and indirect references such as "hereunder", "hereby", "herein" and "hereof"), and references in the other Loan Documents to the "Security Agreement" shall be deemed to be references to the Security Agreement as amended hereby.

Section 2.  <u>Amendments to Security Agreement</u>. The following amendment to the Security Agreement shall take effect on the Amendment Effective Date:

(a) <u>Incorporation of Recitals; Definitions</u>. The foregoing recitals are incorporated herein as part of the terms and conditions of this Amendment. The Amendment is a Transaction Document.

(b) <u>Amendment of Section 3.04(b)</u>. Section 3.04(b) is hereby amended by adding the following sentence:

> Notewithstanding anything in the Note Agreement to the contrary, no Grantor shall include cash on deposit in a Deposit Account for which Noteholder does not have a first priority security interest perfected by Control in the calculation of the Required Cash Balances required by Section 16.9 of the Note Purchase Agreement

(c) <u>Amendment of Schedule 3.04(b)</u>. Schedule 3.04(b) is hereby amended by replacing it in its entirety as follows:

> 3.04(b) Deposit Accounts
>
> US Deposit accounts
> Allegiance Coal USA Limited
> BMO Harris Bank 1654508
> Black Warrior Minerals Inc
> BMO Harris Bank 1842707
> ServisFirst Bank 5001236792
> ServisFirst Bank 5001236768
> ServisFirst Bank 100008390
> New Elk Coal Company LLC
> BMO Harris Bank 1212505
> IN Bank 80085814

Section 3.  Miscellaneous.

    (a)  Governing Law, Consent to Jurisdiction and Waiver of Jury Trial.

        (A)  Any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Amendment and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with, the laws of the State of New York.

        (B)  Each Grantor irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, against the Noteholder or any of its Related Parties in any way relating to this Amendment or the transactions contemplated hereby, in any forum other than the courts of the State of New York sitting in New York County, and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, and each of the parties hereto irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees that any such action, litigation or proceeding may be brought in any such New York State court or, to the fullest extent permitted by applicable law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing herein shall affect any right that the Noteholder may otherwise have to bring any action or proceeding relating to this Amendment against any Grantor or its properties in the courts of any jurisdiction.

        (C)  Each Grantor irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Amendment in any such court referred to in subsection (B) of this Section 3(a). Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the

      maintenance of such action or proceeding in any such court.

  (D) Each Grantor irrevocably consents to the service of process in the manner provided for notices in Section 9.07 of the Security Agreement and agrees that nothing herein will affect the right of any party hereto to serve process in any other manner permitted by applicable law.

  (E) EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY. EACH PARTY HERETO (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE OR ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 3.

(b) <u>Severability of Provisions</u>. Any provision hereof which is invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without invalidating the remaining provisions hereof or affecting the validity, legality or enforceability of such provision in any other jurisdiction.

(c) <u>Counterparts; Integration; Effectiveness.</u> This Amendment and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. This Amendment and the other Note

Documents, and any separate letter agreements with respect to fees payable to the Noteholder, constitute the entire contract among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. This Amendment shall become effective when it shall have been executed by the Noteholder and when the Noteholder shall have received counterparts hereof signed by each of the other parties hereto. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in this Agreement shall be deemed to include electronic or digital signatures or electronic records, each of which shall be of the same effect, validity, and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 U.S.C. §§ 7001 to 7031), the Uniform Electronic Transactions Act (UETA), or any state law based on the UETA, including the New York Electronic Signatures and Records Act (N.Y. Tech. §§ 301 to 309).

(d) No Release. Nothing set forth in this Amendment or any other Note Document, nor the exercise by the Noteholder of any of the rights or remedies hereunder, shall relieve any Grantor from the performance of any term, covenant, condition or agreement on such Grantor's part to be performed or observed in respect of any of the Collateral or from any liability to any Person in respect of any of the Collateral or shall impose any obligation on the Noteholder to perform or observe any such term, covenant, condition or agreement on such Grantor's part to be so performed or observed or shall impose any liability on the Noteholder for any act or omission on the part of such Grantor relating thereto or for any breach of any representation or warranty on the part of such Grantor contained in this Amendment, the Note Agreement or the other Transaction Documents, or in respect of the Collateral or made in connection herewith or therewith. Anything herein to the contrary notwithstanding, the Noteholder shall not have any obligation or liability under any contracts, agreements and other documents included in the Collateral by reason of this Amendment, nor shall the Noteholder be obligated to perform any of the obligations or duties of any Grantor thereunder or to take any action to collect or enforce any such contract, agreement or other document included in the Collateral. The obligations of each Grantor contained in this Section 3 shall survive the termination hereof and the discharge of such Grantor's other obligations under this Amendment, the Note, the Note Agreement and the other Transaction Documents.

(e) Reaffirmation and Acknowledgment.

[Signature Page to the Amendment to Guaranty and Security Agreement]

(A) Each Grantor and the Noteholder hereby reaffirms all of their obligations under the Security Agreement (as is amended hereby) to which they are a party.

(B) Each Grantor and the Noteholder agrees and acknowledges that the Security Agreement (as amended hereby) (including without limitation, all security interests and guarantees granted thereunder or thereby), are hereby ratified and confirmed in all respects, and shall continue in full force and effect.

(f)     Full Force and Effect. As expressly modified by this Amendment, all of the terms and provisions of the Security Agreement (as amended hereby) and the Transaction Documents shall continue in full force and effect, and all parties hereto shall be entitled to the benefits thereof. The agreements herein contained are limited specifically to the matters set forth above and do not constitute directly or by implication an amendment or waiver of any other provision of the Security Agreement (as amended hereby) or any other Transaction Document which has not been expressly amended or waived herein.

[Signatures on Following Page]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed as of the date first written above by their respective officers thereunto duly authorized.

**GRANTORS:**

**ALLEGIANCE COAL USA LIMITED**

By: _____
 Name: Mark Gray
 Title: Director

**ALLEGIANCE COAL LIMITED**

By: _____
 Name: Mark Gray
 Title: Director

**NEW ELK COAL COMPANY LLC**

By: _____
 Name: Mark Gray
 Title: Director

**NEW ELK COAL HOLDINGS LLC**

By: _____
 Name: Mark Gray
 Title: Director

**BLACK WARRIOR MINERALS, INC.**

[Signature Page to the Amendment to Guaranty and Security Agreement]

By: _____
    Name:
    Title:   Mark Gray
           Director

NORTH CENTRAL ENERGY COMPANY

By: _____
    Name:
    Title:   Mark Gray
           Director

RATON BASIN ANALYTIC LLC

By: _____
    Name:
    Title:   Mark Gray
           Director

**NOTEHOLDER:**

[Signature Page to the Amendment to Guaranty and Security Agreement]

**EXECUTED** by **COLLINS ST CONVERTIBLE NOTES PTY LTD** ACN 657 773 754 in accordance with the *Corporations Act 2001* by being signed by the following officers:

_____
Signature of director

**Vasilios Piperoglou**
Name of director

_____
Signature of director / company secretary

**Michael Goldberg**
Name of director / company secretary

[Signature Page to the Amendment to Guaranty and Security Agreement]