**Exhibit 7**
**Black Warrior | New Elk Motor Vehicle Security Agreement**

**SECURITY AGREEMENT**

**among**

**NEW ELK COAL COMPANY LLC,**

**BLACK WARRIOR MINERALS, INC., and**

**COLLINS ST CONVERTIBLE NOTES PTY LTD ACN 657 773 754 NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF THE COLLINS ST
CONVERTIBLE NOTE FUND ACN 149 490 353**

**dated as of**

**August 1, 2022**

# TABLE OF CONTENTS

ARTICLE I. DEFINITIONS AND INTERPRETATION ................................................................ 1
    Section 1.01    Definitions. ...................................................................................................... 1
    Section 1.02    Interpretation. .................................................................................................. 4
    Section 1.03    Resolution of Drafting Ambiguities. ............................................................... 4

ARTICLE II. GRANT OF SECURITY INTEREST ...................................................................... 5
    Section 2.01    Grant of Security Interest. ............................................................................... 5
    Section 2.02    Filings. ............................................................................................................. 6

ARTICLE III. PERFECTION AND FURTHER ASSURANCES .................................................. 6
    Section 3.01    Perfection of Certificated Collateral. .............................................................. 6
    Section 3.02    Maintenance of Perfected Security Interest. ................................................... 7
    Section 3.03    Other Actions for Perfection. .......................................................................... 7
    Section 3.04    Further Assurances. ......................................................................................... 7

ARTICLE IV. REPRESENTATIONS, WARRANTIES AND COVENANTS ............................. 8
    Section 4.01    Note Agreement Representation. ..................................................................... 8
    Section 4.02    Existence. ......................................................................................................... 8
    Section 4.03    Compliance With Laws. ................................................................................... 8
    Section 4.04    Power; Authorization; Enforceability. ............................................................ 9
    Section 4.05    No Contravention. ........................................................................................... 9
    Section 4.06    Perfected First Priority Security Interest. ....................................................... 9

ARTICLE V. EVENTS OF DEFAULT; REMEDIES ................................................................. 10
    Section 5.01    Events of Default. .......................................................................................... 10
    Section 5.02    Remedies. ...................................................................................................... 11
    Section 5.03    Application of Proceeds. ................................................................................ 12

ARTICLE VI. MISCELLANEOUS ............................................................................................. 12
    Section 6.01    Grant of Security. This Agreement serves as a supplement to, and not an abrogation, derogation, replacement, substitution, modification, alteration of, or amendment to, any other Note Document. .................. 12
    Section 6.02    Continuing Security Interest and Assignment. ............................................. 12
    Section 6.03    Termination and Release. .............................................................................. 12
    Section 6.04    Modification in Writing. ............................................................................... 13
    Section 6.05    Notices. ......................................................................................................... 13
    Section 6.06    Governing Law, Consent to Jurisdiction and Waiver of Jury Trial. ............ 14
    Section 6.07    Severability of Provisions. ............................................................................ 15
    Section 6.08    Counterparts; Integration; Effectiveness. ..................................................... 15
    Section 6.09    No Release. .................................................................................................... 16

## MOTER VEHICLE SECURITY AGREEMENT

This MOTOR VEHICLE SECURITY AGREEMENT (this "**Agreement**"), dated as of August 1, 2022, is entered into by and among New Elk Coal Company LLC, a Colorado limited liability company ("**NECC**"), Black Warrior Minerals, Inc., an Alabama corporation ("**BWM**," and together with NECC, the "**Grantors**") and Collins St Convertible Notes Pty Ltd ACN 657 773 754 not in its individual capacity but solely as trustee of the Collins St Convertible Note Fund ACN 149 490 353, (the "**Noteholder**").

## RECITALS

WHEREAS, the Grantors and the Noteholder are parties to the Convertible Note Agreement, dated the date hereof (the "**Note Agreement**"), pursuant to which the Noteholder received a Note (as defined in the Note Agreement) on May 24, 2022 ("**Tranche 1**") in the amount of $30,700,000, and is expected to receive a Notes or Notes in the future ("**Tranche 2**") in the amount of $12,157,143, from the parent company of the Grantors, Allegiance Coal USA Limited, a Delaware corporation (the "**ACL**"), with the Notes totaling US$ 42,857,143;

WHEREAS, each Grantor pursuant to the Guaranty and Security Agreement, dated May 24, 2022 (the "**Guaranty**"), among, the parties hereto and Allegiance Coal Limited CAN 149 490 353, an Australian entity and holding company of ACL ("**AHQ**"), New Elk Coal Holdings LLC, a Delaware limited liability company, North Central Energy Company, a Colorado corporation, Raton Basin Analytic LLC, a Colorado limited liability company guaranteed the indebtedness incurred by ACL pursuant to the Note Agreement and agreed to provide security for its guarantee;

WHEREAS, it is a condition to the acquisition of Tranche 2 by the Noteholder that each Grantor execute and deliver, inter alia, a security interest in certain property to secure its guarantee and to execute and deliver this Agreement.

NOW THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Grantor and the Noteholder hereby agree to Grantors' grant of security interest in the Motor Vehicles specified herein and owned by each Grantor as certain collateral to the Note, in accordance with the following:

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

**Section 1.01   Definitions.**

(a)      Unless otherwise defined herein or in the Note Agreement, capitalized terms used herein that are defined in the UCC shall have the meanings assigned to them in the UCC.

However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

(b)    The following terms shall have the following meanings:

"**Agreement**" has the meaning set forth in the Preamble hereof.

"**Business Day**" means any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions in New York, New York and Melbourne, Australia are authorized or obligated by law or executive order to be closed.

"**Collateral**" has the meaning set forth in Section 2.01.

"**Contractual Obligation**" of any Person, means any provision of any security issued by such Person or of any agreement, instrument or other undertaking to which such Person is a party or by which it or any of its property is bound, other than the Obligations.

"**Debtor Relief Law**" means the means Title 11 of the United States Code, as amended from time to time, or any similar federal or state law for the relief of debtors and all other liquidation, bankruptcy, assignment for the benefit of creditors, conservatorship, moratorium, receivership, insolvency, rearrangement, reorganization or similar debtor relief laws of the US or other applicable jurisdictions in effect from time to time.

"**Default**" means any of the events specified in Section 5.01 which constitutes an Event of Default or which, upon the giving of notice, the lapse of time, or both pursuant to Section 5.01 would, unless cured or waived, become an Event of Default.

"**Equity Interests**" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership (or profit) interests in a Person (other than a corporation), securities convertible into or exchangeable for shares of capital stock of (or other ownership or profit interests in) such Person, and any and all warrants, rights or options to purchase any of the foregoing, whether voting or nonvoting, and whether or not such shares, warrants, options, rights or other interests are authorized or otherwise existing on any date of determination.

"**Event of Default**" has the meaning set forth in Section 5.01.

"**Governmental Authority**" means the government of any nation or any political subdivision thereof, whether at the national, state, territorial, provincial, municipal or any other level, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of, or pertaining to, government.

"**Grantor**" has the meaning set forth in the Preamble hereof.

"**Lien**" means any mortgage, pledge, hypothecation, assignment (as security), deposit arrangement, encumbrance, lien (statutory or other), charge or other security interest, or any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever having substantially the same economic effect as any of the foregoing (including any conditional sale or other title retention agreement and any capital lease).

"**Material Adverse Effect**" has the meaning set forth in the Guaranty.

"**Motor Vehicles**" means the motor vehicles specified herein covered by a certificate of title law of any state.

"**Note**" has the meaning set forth in the Note Agreement.

"**Note Agreement**" has the meaning set forth in the Recitals hereto.

"**Note Documents**" has the meaning set forth in the Guaranty..

"**Noteholder**" has the meaning set forth in the Preamble hereof.

"**Organizational Documents**" means the certificate of incorporation and by-laws or any comparable organizational documents of any corporate entity (including limited liability companies and partnerships).

"**Person**" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, Governmental Authority or other entity.

"**Related Parties**" means, with respect to any Person, such Person's affiliates and the directors, officers, employees, partners, agents, trustees, administrators, managers, advisors and representatives of it and its affiliates.

"**Requirement of Law**" as to any Person, means the certificate of incorporation and by- laws or other organizational or governing documents of such Person, and any law (including common law), statute, ordinance, treaty, rule, regulation, order, decree, judgment, writ, injunction, settlement agreement, requirement or determination of an arbitrator or a court or other Governmental Authority, in each case applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"**Secured Obligations**" has the meaning set forth in the Guaranty.

"**Tranche 1**" has the meaning set forth in the Recitals hereof.

"**Tranche 2**" has the meaning set forth in the Recitals hereof.

"**Transaction Document**" has the meaning set forth in the Note Agreement.

**Section 1.02   Interpretation.**   With reference to this Agreement and each other Note Document, unless otherwise specified herein or in such other Note Document:

(a)    The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise (i) any definition of or reference to any agreement, instrument or other document shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein or in any other Note Document), (ii) any reference herein to any Person shall be construed to include such Person's successors and assigns, (iii) the words "herein," "hereof" and "hereunder," and words of similar import when used in any Note Document, shall be construed to refer to such Note Document in its entirety and not to any particular provision thereof, (iv) all references in a Note Document to Articles, Sections, Annexes and Schedules shall be construed to refer to Articles and Sections of, and Annexes and Schedules to, the Note Document in which such references appear, (v) any reference to any law shall include all statutory and regulatory provisions consolidating, amending replacing or interpreting such law and any reference to any law or regulation shall, unless otherwise specified, refer to such law or regulation as amended, modified or supplemented from time to time, (vi) the word "or" is not exclusive; and (vii) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

(b)    In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including;" the words "to" and "until" each mean "to but excluding;" and the word "through" means "to and including."

**Section 1.03   Resolution of Drafting Ambiguities.**   Each Grantor acknowledges and agrees that any rule of construction to the effect that ambiguities are to be resolved against the drafting party (i.e., the Noteholder) shall not be employed in the interpretation of this Agreement.

# ARTICLE II.
# GRANT OF SECURITY INTEREST

**Section 2.01   Grant of Security Interest.**  As collateral security for the payment and performance of the Secured Obligations, each Grantor hereby pledges to the Noteholder, and grants to the Noteholder a Lien on and security interest in and to, all of the right, title and interest of such Grantor in, to and under the following property, wherever located, and whether now existing or hereafter arising or acquired from time to time (collectively, the **"Collateral"**), as also listed in Schedule 2.01 hereof:

(a)  Twelve (12) Motor Vehicles owned by NECC identified by the following Vehicle Identification Numbers (**"VIN"**):

    (i)  3D7LX38C66G259823

    (ii)  3FRNF75E07V515621

    (iii)  3D6WZ4EL9BG504811

    (iv)  5C2BF39B09M011708

    (v)  5C2BF39B7NM011804

    (vi)  1E1F9S288MR074124

    (vii)  5MADN3820DC025035

    (viii)  1E1F9U281NR075323

    (ix)  48X1F352XG1010487

    (x)  4E7AA38275ASA0791

    (xi)  5C2BF39B9NM011707

    (xii)  5C2BF35B1LM011428

(b)  Fourteen (14) Motor Vehicles owned by BWM identified by the following Vehicle Identification Numbers (**"VIN"**):

    (i)  2NKDLU0X97M194312

    (ii)  1GYS4CKJ4HR150506

    (iii)  1XKDDU9X1VJ751174

    (iv)    1NKDMTEX04R050880

    (v)    1GDM7H1J7NJ518252

    (vi)    1FDYU90X1FVA49885

    (vii)    2FZHAZAS73AK90415

    (viii)    JH6FF1933FAS10015

    (ix)    1FDYY82E4PVA18206

    (x)    1M2N314Y1KW025911

    (xi)    4UZAAXCS37CX52433

    (xii)    4UZAAXCS57CX52434

    (xiii)    1NKDLU9X41J878668

    (xiv)    1FDYY82E8PVA18208

**Section 2.02    Filings.** Each Grantor hereby further authorizes the Noteholder at any time and from time to time, with respect to the Motor Vehicles, to file in any relevant jurisdiction with the registrar of motor vehicles or other appropriate Governmental Authority in such jurisdiction an application or other document requesting the notation or other indication of the security interest created hereunder on such certificate of title.

## ARTICLE III.
## PERFECTION AND FURTHER ASSURANCES

**Section 3.01    Perfection of Certificated Collateral.**    Each Grantor represents and warrants that all certificates, agreements or instruments representing or evidencing the Collateral in existence on the date hereof have been delivered to the Noteholder. Each Grantor hereby agrees that all certificates, agreements or instruments representing or evidencing the Collateral acquired by such Grantor after the date hereof shall immediately upon receipt thereof by such Grantor be held by or on behalf of and delivered to the Noteholder.

The Noteholder shall have the right, at any time upon the occurrence and during the continuance of any Event of Default, to endorse, assign or otherwise transfer to or to register in the name of the Noteholder or any of its nominees or endorse for negotiation any or all of the Collateral, without any indication that such Collateral is subject to the security interest hereunder.

**Section 3.02    Maintenance of Perfected Security Interest.**  Each Grantor represents and warrants that no later than five (5) Business Days prior to the occurrence of Tranche 2, all financing statements, agreements, instruments and other documents necessary to perfect the security interest granted by it to the Noteholder in respect of the Collateral will have been delivered to the Noteholder in completed and, to the extent necessary or appropriate, duly executed form for filing in each governmental, municipal or other office specified in Schedule 3.02 hereof. Each Grantor agrees that at its sole cost and expense, such Grantor will maintain the security interest created by this Agreement in the Collateral as a perfected first priority security interest.

**Section 3.03    Other Actions for Perfection.**  In order to further insure the attachment, perfection and priority of, and the ability of the Noteholder to enforce, the Noteholder's security interest in the Collateral, each Grantor represents and warrants (as to itself) as follows and agrees, in each case at such Grantor's own expense, to take the following actions with respect to the following Collateral:

(a)    With respect to each Motor Vehicle owned by a Grantor on the closing date or in which ownership is acquired by a Grantor after the date hereof, such Grantor shall deliver to the Noteholder prior to the closing of Tranche 2 or within thirty (30) days after the date of such acquisition, as the case may be, originals of the certificates of title or ownership for all such Motor Vehicles owned by it with the Noteholder listed as lienholder therein.  The applicable Exhibit will be automatically amended to include each Motor Vehicle acquired after the date hereof.

**Section 3.04    Further Assurances.**

(a)    Further Assurances. Each Grantor shall take such further actions, and execute or deliver to the Noteholder such additional financing statements, amendments, assignments, agreements, supplements, powers and instruments, as the Noteholder may in its judgment deem necessary or appropriate in order to create or maintain the validity, perfection or priority of and protect any security interest granted or purported to be granted in the Collateral as provided herein and the rights and interests granted to the Noteholder hereunder, and enable the Noteholder to exercise and enforce its rights, powers and remedies hereunder with respect to any Collateral, all in form satisfactory to the Noteholder and in such offices wherever required by law to perfect, continue and maintain the validity, enforceability and priority of the security interest in the Collateral as provided herein and to preserve the other rights and interests granted to the Noteholder hereunder, as against third parties, with respect to the Collateral. Without limiting the generality of the foregoing, but subject to applicable law, each Grantor shall make, execute, endorse, acknowledge, file or refile or deliver to the Noteholder from time to time upon request by the Noteholder such lists, schedules, descriptions and designations of the Collateral, statements, documents of title, vouchers, invoices, schedules, confirmatory assignments, supplements, additional security agreements, conveyances, financing statements, transfer endorsements, powers

of attorney, certificates, reports and other assurances or instruments as the Noteholder shall reasonably request. If an Event of Default has occurred and is continuing, the Noteholder may institute and maintain, in its own name or in the name of any Grantor, such suits and proceedings as the Noteholder may deem to be necessary or expedient to prevent any impairment of the security interest in or the perfection thereof in the Collateral. All of the foregoing shall be at the sole cost and expense of the Grantors.

(b)　　　Report. Within thirty (30) days after the end of each calendar year each Grantor shall furnish the Noteholder with a report listing for such quarter any Motor Vehicles acquired by any Grantor.

**ARTICLE IV.**
**REPRESENTATIONS, WARRANTIES AND COVENANTS**

Each Grantor represents, warrants and covenants as follows:

**Section 4.01　Note Agreement Representation.** Each Grantor acknowledges and agrees that each Note Document and this Agreement is a Transaction Document.

**Section 4.02　Existence.**

(a)　　　Each Grantor is (i) duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation, (ii) duly qualified as a foreign corporation or other organization and in good standing under the laws of each jurisdiction where its ownership, lease or operation of property or the conduct of its business requires such qualification except to the extent that the failure to qualify in such jurisdiction could not reasonably be expected to have a Material Adverse Effect, and (iii) in compliance with all Requirements of Law except to the extent that the failure to comply therewith could not, in the aggregate, reasonably be expected to have a Material Adverse Effect.

(b)　　　Each Grantor will (i) preserve, renew and maintain in full force and effect its corporate or organizational existence and (ii) take all reasonable action to maintain all rights, privileges and franchises necessary or desirable in the normal conduct of its business, except, in each case, as otherwise permitted under this Agreement.

**Section 4.03　Compliance With Laws.** Each Grantor is (a) duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation, (b) duly qualified as a foreign corporation or other organization and in good standing under the laws of each jurisdiction where its ownership, lease or operation of property or the conduct of its business requires such qualification except to the extent that the failure to qualify in such jurisdiction could not reasonably be expected to have a Material Adverse Effect, and (c) in compliance with all

Requirements of Law except to the extent that the failure to comply therewith could not, in the aggregate, reasonably be expected to have a Material Adverse Effect.  Each Grantor will comply with all Contractual Obligations and Requirements of Law.

**Section 4.04    Power; Authorization; Enforceability.**

(a)    Each Grantor has the power and authority, and the legal right, to own or lease and operate its property, and to carry on its business as now conducted and as proposed to be conducted, and to execute, deliver and perform the Note Documents to which it is a party. Each Grantor has taken all necessary organizational action to authorize the execution, delivery and performance of the Note Documents to which it is a party. No consent or authorization of, filing with, notice to or other act by, or in respect of, any Governmental Authority or any other Person is required in connection with the extensions of credit hereunder or with the execution, delivery, performance, validity or enforceability of this Agreement or any of the Note Documents. Each Note Document has been duly executed and delivered by each Grantor party thereto.

(b)    This Agreement constitutes, and each other Note Document when delivered hereunder will constitute, a legal, valid and binding obligation of each Grantor party thereto, enforceable against each such Grantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

**Section 4.05    No Contravention.**  The execution, delivery and performance of this Agreement and the other Note Documents, the issuance of the Note and the use of the proceeds thereof will not violate any Requirement of Law or any Contractual Obligation of any Grantor and will not result in, or require, the creation or imposition of any Lien on any of their respective properties or assets pursuant to any Requirement of Law or any such Contractual Obligation (other than the Liens created by the Transaction Documents). No Requirement of Law or Contractual Obligation applicable to any Grantor could reasonably be expected to have a Material Adverse Effect.

**Section 4.06    Perfected First Priority Security Interest.**  This Agreement is effective to create in favor of the Noteholder, a legal, valid and enforceable security interest in the Collateral. When the filings and documents specified on Schedule 3.02 hereof in appropriate form are filed in the offices specified on Schedule 3.02 hereof and other actions described in Schedule 3.02 hereof are taken, this Agreement shall constitute, and will at all times constitute, a fully perfected first priority Lien on, and security interest in, all rights, title and interest of the Grantors in such Collateral, as security for the Secured Obligations.

## ARTICLE V.
## EVENTS OF DEFAULT; REMEDIES

**Section 5.01   Events of Default.**   The occurrence of any of the following events shall constitute an event of default (an "**Event of Default**") under this Agreement or any other agreement between the Grantors and the Noteholder (whatever the reason for such event and whether or not it shall be voluntary or involuntary or be effected by operation of law or pursuant to any applicable law, rule, ordinance, order of a Governmental Authority):

(a)      default shall be made in the due observance or performance of any covenant, condition or agreement on the part of any Grantor to be observed or performed pursuant to the terms of the Note Agreement, the Note, or this Agreement (other than any covenant, condition or agreement, default in the observance or performance of which is elsewhere in this Section 5.01 specifically dealt with) and such default shall continue unremedied for a period of ten (10) days; or

(b)      any default or event of default, as therein defined, shall occur under any of the other Note Document including the Transaction Documents (after giving effect to any applicable notice, grace or cure period specified therein); or

(c)      any Grantor shall (1) apply for or consent to the appointment of a receiver, trustee, liquidator or other custodian of such Grantor or any of such Grantor's properties or assets, (2) fail or admit in writing such Grantor's inability to pay such Grantor's debts generally as they become due, (3) make a general assignment for the benefit of creditors, (4) suffer or permit an order for relief to be entered against such Grantor in any proceeding under Debtor Relief Law, or (5) file a voluntary petition in bankruptcy, or a petition or an answer seeking an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material allegations of a petition filed against such Grantor in any proceeding under any such law or statute, or if corporate action shall be taken by any Grantor for the purpose of effecting any of the foregoing; or

(d)      a petition shall be filed, without the application, approval or consent of any Grantor in any court of competent jurisdiction, seeking bankruptcy, reorganization, insolvency, rearrangement, dissolution or liquidation of such Grantor or of all or a substantial part of the properties or assets of such Grantor, or seeking any other relief under any law or statute of Debtor Relief Law against such Grantor, or the appointment of a receiver, trustee, liquidator or other custodian of such Grantor or of all or a substantial part of the properties or assets of such Grantor, and such petition shall not have been stayed or dismissed within sixty (60) days after the filing thereof; or

(e)    any writ of execution, attachment or garnishment shall be issued against the assets of any Grantor and such writ of execution, attachment or garnishment shall not be dismissed, discharged or quashed within thirty (30) days of issuance; or

(f)    any representation or warranty made or deemed made by or on behalf of any Grantor in or in connection with any Note Document or any amendment or modification thereof, or in any report, certificate, financial statement or other document furnished pursuant to or in connection with any Note Document or any amendment or modification hereof shall prove to have been incorrect in any material respect when made or deemed made.

**Section 5.02    Remedies.**

(a)    If any Event of Default shall have occurred and be continuing, the Noteholder may exercise, without any other notice to or demand upon any Grantor, in addition to the other rights and remedies provided for herein or in any other Transaction Document or otherwise available to it, all the rights and remedies of a secured party upon default under the Uniform Commercial Code and also may:

(i)    require each Grantor to, and each Grantor hereby agrees that it will at its expense and upon request of the Noteholder immediately, as directed by the Noteholder, make t available to the Noteholder at a place and time to be designated by the Noteholder;

(ii)    (1) enter upon the premises of each Grantor or any other place where any Collateral is located, and through self-help and without judicial process, without first obtaining a final judgment or giving such Grantor notice and opportunity for a hearing and without any obligation to pay rent, remove the Collateral therefrom to the premises of Noteholder or its agent for such time as Noteholder may desire to collect or liquidate the Collateral; (2) require each Grantor to make available to Noteholder all of Grantor's premises and facilities for the purpose of Noteholder's taking possession of, removing or putting the Collateral in salable form; and (3) use, and permit any purchaser of any of the Collateral from Noteholder to use, without charge, such Grantor's labels, General Intangibles and advertising matter or any property of a similar nature, as it pertains to or is included in the Collateral, in advertising, preparing for sale and selling any Collateral;

(iii)    without notice except as specified below, sell, resell, assign and deliver or grant a license to use or otherwise dispose of the Collateral or any part thereof, in one or more parcels at public or private, at any of the Noteholder's offices or elsewhere, for cash, or credit or for future delivery, and upon such other terms as the Noteholder may deem commercially reasonable; or

(iv)    exercise any and all rights and remedies of any of the Grantors under or in connection with the Collateral, or otherwise in respect of the Collateral.

**Section 5.03    Application of Proceeds.** Upon the exercise by the Noteholder of its remedies hereunder, any proceeds received by the Noteholder in respect of any realization upon any Collateral shall be applied, together with any other sums then held by the Noteholder pursuant to this Agreement, first, to the payment of any fees, expenses or indemnities, second to the payment of interest, third to the payment of principal and fourth for payment to ACL. Each Grantor shall remain liable for any deficiency if the proceeds of any sale or other disposition of the Collateral are insufficient to pay the Secured Obligations and the fees and other charges of any attorneys employed by the Noteholder to collect such deficiency.

## ARTICLE VI.
## MISCELLANEOUS

**Section 6.01    Grant of Security.** This Agreement serves as a supplement to, and not an abrogation, derogation, replacement, substitution, modification, alteration of, or amendment to, any other Note Document.

**Section 6.02    Continuing Security Interest and Assignment.**  This Agreement shall create a continuing security interest in the Collateral and shall (a) be binding upon the Grantors, their respective successors and assigns and (b) inure, together with the rights and remedies of the Noteholder hereunder, to the benefit of the Noteholder and each of its permitted successors, transferees and assigns and their respective officers, directors, employees, affiliates, agents, advisors and controlling Persons; provided that, no Grantor shall assign or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the Noteholder and any attempted assignment or transfer without such consent shall be null and void. Without limiting the generality of the foregoing clause (b), the Noteholder may assign or otherwise transfer any indebtedness held by it secured by this Agreement to any other Person, and such other Person shall thereupon become vested with all the benefits in respect thereof granted to such Noteholder, herein or otherwise, subject however, to the provisions of the Note.

**Section 6.03    Termination and Release.**

(a)    At such time as the Loans and the other Secured Obligations shall have been paid in full (other than contingent indemnification obligations in which no claim has been made or is reasonably foreseeable), the Collateral shall be released from the Liens created hereby, and this Agreement and all obligations (other than those expressly stated to survive such termination) of the Noteholder and each Grantor hereunder shall terminate, all without delivery of any instrument or any further action by any party, and all rights to the Collateral shall revert to the Grantors. At the request and sole expense of any Grantor following any such termination, the Noteholder shall deliver to such Grantor any Collateral held by the Noteholder hereunder, and

execute and deliver to such Grantor such documents as such Grantor shall reasonably request to evidence such termination.

(b)     If any of the Collateral shall be sold, transferred or otherwise disposed of by any Grantor in a transaction permitted by any Transaction Document, then the Lien created pursuant to this Agreement in such Collateral shall be released, and the Noteholder, at the request and sole expense of such Grantor, shall execute and deliver to such Grantor all releases and other documents necessary or advisable for the release of the Liens created hereby on such Collateral; provided that AHQ shall provide to the Noteholder evidence of such transaction's compliance with the Note Agreement and the other Transaction Documents as the Noteholder shall reasonably request. At the request and sole expense of ACL, a Grantor shall be released from its obligations hereunder if all the Equity Interests of such Grantor are sold, transferred or otherwise disposed of in a transaction permitted by the Note and other Loan Documents; provided that ACL shall have delivered to the Noteholder, at least ten (10) Business Days (or such shorter period reasonably acceptable to the Noteholder) prior to the date of the proposed release, a written request for release identifying the relevant Grantor and the terms of the sale or other disposition in reasonable detail, including the price thereof and any expenses in connection therewith, together with a certification by AHQ stating that such transaction is in compliance with the Note Agreement and the other Transaction Documents.

**Section 6.04   Modification in Writing.**   Noteholder may amend any Exhibit hereto without the signature of any Grantor to add or delete Motor Vehicles acquired by a Grantor.  Except as set forth in the preceding sentence, none of the terms or provisions of this Agreement may be amended, modified, supplemented, terminated or waived, and no consent to any departure by any Grantor therefrom shall be effective, except by a written instrument signed by the Noteholder in accordance with the terms of the Note. Any amendment, modification or supplement of any provision hereof, any waiver of any provision hereof and any consent to any departure by any Grantor from the terms of any provision hereof in each case shall be effective only in the specific instance and for the specific purpose for which made or given.

**Section 6.05   Notices.**

Unless otherwise provided herein, any notice or other communication required or permitted to be given under this Agreement shall be in writing and mailed by certified or registered mail, delivered by hand or overnight courier as follows:

If to Noteholder, to it at:

Collins St Convertible Notes Pty Ltd ACN 657 773 754 as trustee for The Collins St Convertible Note Fund ABN 30 216 289 383
Level 9, 365 Little Collins Street,

> Melbourne VIC 3000
> ntorelli@csvf.com.au

With a copy to:

> Wither Bergman LLP
> Attention: Patricia Lee and Vasiliki Yiannoulis-Riva
> 1700 East Putnam Avenue, Suite 400
> Greenwich, Connecticut 06870-1366
> Patricia.Lee@withersworldwide.com and
> vasi.yiannoulis-riva@withersworldwide.com

If to either Grantor, to it at:

> Allegiance Coal USA
> Limited 1415 Suite D, Hankin Ave.
> Telkwa BC V0J 2X0 Canada Attention: Mark Gray
> mgray@allegiancecoal.com.au

Notices mailed by certified or registered mail or sent by hand or overnight courier service will be deemed to have been given when received.  The Noteholder may permit notices and other communications to be delivered by email and, if so permitted, will be deemed received, if received during normal business hours and, if received after normal business hours, upon the opening of business on the next Business Day.

**Section 6.06    Governing Law, Consent to Jurisdiction and Waiver of Jury Trial.**

(a)    This Agreement and the other Note Documents, other than the Note or the Note Agreement, and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement or any other Note Document (except, as to any other Note Document, as expressly set forth therein) and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with, the laws of the State of New York.

(b)    Each Grantor irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, against the Noteholder or any of its Related Parties in any way relating to this Agreement or any other Note Document (except, as to any other Note Document, as expressly set forth therein) or the transactions contemplated hereby or thereby, in any forum other than the courts of the State of New York sitting in New York County, and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, and each of the parties hereto irrevocably and unconditionally submits to the exclusive

14.

jurisdiction of such courts and agrees that any such action, litigation or proceeding may be brought in any such New York State court or, to the fullest extent permitted by applicable law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing herein or in any other Note Document shall affect any right that the Noteholder may otherwise have to bring any action or proceeding relating to this Agreement or any other Note Document against any Grantor or its properties in the courts of any jurisdiction.

(c)     Each Grantor irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement or any other Note Document in any such court referred to in subsection (b) of this Section 6.06. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(d)     Each Grantor irrevocably consents to the service of process in the manner provided for notices in Section 6.05 and agrees that nothing herein will affect the right of any party hereto to serve process in any other manner permitted by applicable law.

(e)     EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY. EACH PARTY HERETO (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE OR ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 6.06.

**Section 6.07   Severability of Provisions.**  Any provision hereof which is invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without invalidating the remaining provisions hereof or affecting the validity, legality or enforceability of such provision in any other jurisdiction.

**Section 6.08   Counterparts; Integration; Effectiveness.**  This Agreement and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by

different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. This Agreement and the other Note Documents, and any separate letter agreements with respect to fees payable to the Noteholder, constitute the entire contract among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. This Agreement shall become effective when it shall have been executed by the Noteholder and when the Noteholder shall have received counterparts hereof signed by each of the other parties hereto. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in this Agreement shall be deemed to include electronic or digital signatures or electronic records, each of which shall be of the same effect, validity, and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 U.S.C. §§ 7001 to 7031), the Uniform Electronic Transactions Act (UETA), or any state law based on the UETA, including the New York Electronic Signatures and Records Act (N.Y. Tech. §§ 301 to 309).

**Section 6.09   No Release.**  Nothing set forth in this Agreement or any other Transaction Document, nor the exercise by the Noteholder of any of the rights or remedies hereunder, shall relieve any Grantor from the performance of any term, covenant, condition or agreement on such Grantor's part to be performed or observed in respect of any of the Collateral or from any liability to any Person in respect of any of the Collateral or shall impose any obligation on the Noteholder to perform or observe any such term, covenant, condition or agreement on such Grantor's part to be so performed or observed or shall impose any liability on the Noteholder for any act or omission on the part of such Grantor relating thereto or for any breach of any representation or warranty on the part of such Grantor contained in this Agreement, the Note Agreement or the other Transaction Documents, or in respect of the Collateral or made in connection herewith or therewith. Anything herein to the contrary notwithstanding, the Noteholder shall not have any obligation or liability under any contracts, agreements and other documents included in the Collateral by reason of this Agreement, nor shall the Noteholder be obligated to perform any of the obligations or duties of any Grantor thereunder or to take any action to collect or enforce any such contract, agreement or other document included in the Collateral. The obligations of each Grantor contained in this Section 6.09 shall survive the termination hereof and the discharge of such Grantor's other obligations under this Agreement, the Note, the Note Agreement and the other Transaction Documents.

[signature page follows]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**GRANTORS:**

NEW ELK COAL COMPANY LLC

By _____
Name: SARAVANAN SIVAPATHASUNDARAM
Title: CFO

BLACK WARRIOR MINERALS, INC.

By _____
Name: Rance Perry
Title: President

**NOTEHOLDER:**

**EXECUTED** by **COLLINS ST CONVERTIBLE NOTES PTY LTD ACN 657 773 754** in accordance with the *Corporations Act 2001* by being signed by the following officers:

_____
Signature of director

**Vasilios Piperoglou**
Name of director

_____
Signature of director / company secretary

**Michael Goldberg**
Name of director / company secretary

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**GRANTORS:**

NEW ELK COAL COMPANY LLC

By_____
    Name:
    Title:

BLACK WARRIOR MINERALS, INC.

By_____
    Name:
    Title:

**NOTEHOLDER**:

**EXECUTED** by **COLLINS ST CONVERTIBLE NOTES PTY LTD ACN 657 773 754** in accordance with the *Corporations Act 2001* by being signed by the following officers:

_____
Signature of director

**Vasilios Piperoglou**
Name of director

_____
Signature of director / company secretary

**Michael Goldberg**
Name of director / company secretary

## SCHEDULES TO MOTOR VEHICLE SECURITY AGREEMENT

**Schedule 2.01 Security Interest**

**New Elk Coal Company LLC Motor Vehicles**

| VIN | Model | Make | Year | Color |
|-----|-------|------|------|-------|
| 3D7LX38C66G259823 | Ram 3500 | Dodge | 2006 | N/A |
| 3FRNF75E07V515621 | F-750 | Ford | 2007 | N/A |
| 3D6WZ4EL9BG504811 | Ram 3500 | Dodge | 2011 | N/A |
| 5C2BF39B09M011708 | End dump | Clem | 2022 | N/A |
| 5C2BF39B7NM011804 | End dump | Clmt | 2022 | N/A |
| 1E1F9S288MR074124 | Tandem | East | 2022 | N/A |
| 5MADN3820DC025035 | End dump | Mckt | 2013 | N/A |
| 1E1F9U281NR075323 | N/A | East | 2022 | N/A |
| 48X1F352XG1010487 | End | Trvs | 2016 | N/A |
| 4E7AA38275ASA0791 | Dump | Vntg | 2005 | N/A |
| 5C2BF39B9NM011707 | End dump | Clem | 2022 | N/A |
| 5C2BF35B1LM011428 | Dump trailer | Clmt | 2020 | N/A |

**Black Warrior Minerals, Inc. Motor Vehicles**

| VIN | Model | Make | Year | Color |
|-----|-------|------|------|-------|
| 2NKDLU0X97M194312 | T800 | Kenworth | 2007 | White |
| 1GYS4CKJ4HR150506 | Escalade | Cadillac | 2016 | Bronze |
| 1XKDDU9X1VJ751174 | T800 | Other | 1997 | White |
| 1NKDMTEX04R050880 | T800 | Other | 2004 | White |
| 1GDM7H1J7NJ518252 | Topkick | GMC | 1992 | White |
| 1FDYU90X1FVA49885 | U905 | Ford | 1985 | White |
| 2FZHAZAS73AK90415 | LT9500 | Sterling | 2003 | White |
| JH6FF1933FAS10015 | FF193S | Hino | 1985 | White |
| 1FDYY82E4PVA18206 | LTS8000 | Ford | 1993 | Blue |
| 1M2N314Y1KW025911 | 600 | Mack | 1989 | Yellow |
| 4UZAAXCS37CX52433 | Thomas | Freightliner | 2007 | Yellow |
| 4UZAAXCS57CX52434 | Thomas | Freightliner | 2007 | Yellow |
| 1NKDLU9X41J878668 | Construction | Kenworth | 2001 | Black |
| 1FDYY82E8PVA18208 | Conventio | Ford | 1993 | Blue |

**Schedule 3.02 Maintenance of Perfected Security Interest**

To perfect security on the Collateral the documents listed below each Grantor need to be filed in the respective recording offices as noted.

**Grantor**: NECC
**Recording Office**: Department of Motor Vehicles of Las Animas, Colorado; Secretary of State of the State of Colorado
**Required Documents for each Motor Vehicle**: This Agreement, Original CO Form DR 2842, Driver's License of each Owner, Original CO Form DR2421 One in the Same signed by Owner; Original Notarized CO POA Form DR2175 from Owner, Current in State Title

**Grantor**: BWM:
**Recording Office**: Department of Motor Vehicles of Alabama; Secretary of State of the State of Alabama and Office of the Judge of Probate of Jefferson County, Alabama
**Required Documents for Each Motor Vehicle**: This Agreement, Original Notarized One in the Same Statement signed by Owner, Current Original Title, Original Notarized Power of Attorney