**Exhibit 8**
**Subordination Agreement**

# SUBORDINATION AGREEMENT

THIS SUBORDINATION AGREEMENT (the "Agreement") is made effective as of May 24, 2022 (the "Effective Date") by and between Collins St Convertible Notes Pty Ltd ACN 657 773 754 ATF The Collins St Convertible Note Fund, an Australian corporation ("Collins St"), and Cline Mining Corporation, a British Columbia corporation ("Subordinated Creditor") on the following terms and conditions:

## BACKGROUND

A. Collins St has entered into (i) the Convertible Note Agreement, dated as of May 24, 2022 (together with all "Transaction Documents" as defined thereunder, the "Convertible Note Facility") with Allegiance Coal Limited an Australian corporation ("AHQ"), Allegiance Coal USA Limited a Delaware corporation ("Borrower") and (ii) the Guaranty and Security Agreement, dated as of May 24, 2022 (the "Security Agreement"), by and among Collins St, the Borrower, AHQ, New Elk Coal Company LLC, a Colorado limited liability company ("NECC"), New Elk Coal Holdings LLC, a Delaware limited liability company ("NECH"), and Black Warrior Minerals, Inc., an Alabama corporation ("BWM"), Raton Basin Analytical, LLC, a Colorado limited liability company ("RB"), North Central Energy Company ("NCEC", and together with AHQ, NECC, NECH, BWM, and RB, the "Guarantors").

B. The Borrower and the Guarantors are hereinafter referred to as the "Loan Parties".

C. In connection with the Convertible Note Facility, Collins St has granted financial accommodations to the Borrower, secured by, *inter alia*, substantially all the assets of the Loan Parties.

D Subordinated Creditor and NECC have entered into that certain Amended and Restated Promissory Note dated as of October 26, 2020 (such note, together with all principal, interest and other amounts payable thereunder, and all rights, interests, claims and demands of any kind of the Subordinated Creditor against NECC or NECH or any of their respective property or assets, and all agreements and understandings related thereto, the "Subordinated Creditor Facility") secured by, *inter alia*, substantially all of the assets of NECC and certain of its subsidiaries, and a pledge of NECH's equity interests in NECC.

E. Subordinated Creditor and Collins St desire to set forth preferences and priorities as to their respective interests in certain collateral on the terms and conditions contained in this Agreement.

## AGREEMENT

The parties agree as follows:

# ARTICLE I

# **DEFINITIONS**

Terms not otherwise defined in this Agreement will have the meanings set forth in the Uniform Commercial Code (the "UCC"), as adopted in the State of Delaware (with respect to NECH) and Colorado (with respect to NECC), to the extent defined in the UCC. Capitalized terms defined in the introductory paragraph and Background section above shall have the meanings set forth therein. Otherwise, initially capitalized terms used in this Agreement shall have the following meanings:

"Convertible Note Priority Collateral" means, collectively, the equity interests in NECC held by NECH and all of the assets of NECC, in each case, constituting "Collateral" as defined in the Security Agreement.

"Disposition" means an asset sale, or other sale, lease, exchange, transfer, or other disposition.

"Enforcement Action" means an action under applicable law to foreclose, execute, levy, or collect on, take possession or control of, sell or otherwise realize upon (judicially or non-judicially), or lease, license, or otherwise dispose of (whether publicly or privately), the Convertible Note Priority Collateral, or otherwise exercise or enforce remedial rights with respect to the Convertible Note Priority Collateral (including by way of setoff, recoupment, notification of a public or private sale or other disposition pursuant to the UCC or other applicable law, notification to account debtors, notification to depositary banks under deposit account control agreements, or exercise of rights under landlord consents, if applicable).

"Insolvency Proceeding" means: (a) a voluntary or involuntary case or proceeding under the Bankruptcy Code with respect to Borrower; (b) any other voluntary or involuntary insolvency, reorganization, or bankruptcy case or proceeding, or any receivership, liquidation, reorganization, or other similar case or proceeding with respect to Loan Party or a material portion of its property; (c) a liquidation, dissolution, reorganization, or winding up of Borrower, whether voluntary or involuntary and whether or not involving insolvency or bankruptcy; or (d) an assignment for the benefit of creditors or other marshaling of assets and liabilities of Borrower.

"Lien" means any lien (including, without limitation judgment liens and liens arising by operation of law, subrogation, or otherwise), privilege, mortgage or deed of trust, pledge, hypothecation, assignment, security interest, charge, or encumbrance of any kind.

"Paid in Full" means, with respect to the Senior Indebtedness, such time when the aggregate amount of all Senior Indebtedness (other than any unasserted contingent obligations) has been paid in full in cash.

"Pledged Stock" means all of the right, title and interest of NECH in and to the capital stock of NECC, whether now owned or hereafter acquired, and the certificates, if any, representing such stock, and any interest of NECH on the books and records of NECC or on the books and records of any securities intermediary pertaining to such stock and all dividends, cash, warrants,

rights, options, instruments, securities and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such stock.

"Senior Indebtedness" means the Secured Obligations (as defined in the Security Agreement) and all obligations outstanding under the Convertible Note Facility in a principal amount not to exceed $40,000,000, plus all accrued interest, reimbursable expenses and indemnity obligations notwithstanding any further amendments, modifications or amendments and restatements of the Convertible Note Facility.

## ARTICLE II

## SUBORDINATION

2.1     Collins St consents to the transactions under the Subordinated Creditor Facility. Subordinated Creditor consents to the transactions under the Convertible Note Facility. Until the Senior Indebtedness is Paid in Full, without the prior written consent of Collins St, neither the Subordinated Creditor Facility nor any of the documents contemplated therein or related thereto, may be amended, supplemented or otherwise modified to the extent such amendment, supplement or modification would (i) contravene the provisions of this Agreement, (ii) increase the then outstanding aggregate principal amount of the loans under the Subordinated Creditor Facility to an amount exceeding $26,120,670.84, (iii) increase the interest rate or the yield on the loans thereunder (exclusive, for the avoidance of doubt, of any imposition of 2% "default" interest), (iv) provide for dates for scheduled payment of principal, interest, premium (if any) or fees which are earlier than such dates under the Subordinated Creditor Facility, (v) provide for collateral securing indebtedness thereunder which is more extensive than the collateral provided with respect to the Convertible Note Facility or (vi) unless otherwise expressly permitted under the foregoing clause (i) through (v), increase the obligations of any Loan Party or confer any additional rights on Subordinated Creditor which could reasonably be expected to be adverse to Collins St.

2.2     Subordinated Creditor subordinates any Lien that it may rightfully possess in the Convertible Note Priority Collateral to the Lien of Collins St on the Convertible Note Priority Collateral irrespective of (a) the order the Liens of Subordinated Creditor and Collins St in the Convertible Note Priority Collateral were perfected; (b) provisions of otherwise applicable law (bankruptcy or otherwise); or (c) which of Subordinated Creditor or Collins St has possession of the Convertible Note Priority Collateral.

2.3     Subordinated Creditor further subordinates its right to payment from the Convertible Note Priority Collateral or the proceeds thereof to the right of payment of the Senior Indebtedness to Collins St from the Convertible Note Priority Collateral or the proceeds thereof.

2.4     Subordinated Creditor agrees neither to commence any Enforcement Action against the Convertible Note Priority Collateral, nor to assert any marshaling, appraisal, valuation or other similar right with respect to the Convertible Note Priority Collateral until the earliest of:  (a) the expiration of one-hundred and eighty (180) days following Subordinated Creditor's delivery to Collins St of written notice of a default under the Subordinated Creditor Facility ("Standstill Period"); (b) the date on which the Senior Indebtedness shall have been Paid in Full or (c) such earlier date as agreed by Collins St.

2.5     Subordinated Creditor agrees that it shall not contest in any proceeding (including any Insolvency Proceeding) either the validity of the Convertible Note Facility or the validity, enforceability, perfection or priority of any Lien of Collins St in the Convertible Note Priority Collateral.  Collins St agrees that it shall not contest in any proceeding (including any Insolvency Proceeding) either the validity of the Subordinated Creditor Facility or the validity, enforceability, perfection or priority of any Lien of the Subordinated Creditor in the Convertible Note Priority Collateral.

2.6     Should Subordinated Creditor receive any payments identifiable as proceeds of the Convertible Note Priority Collateral, such payments (up to the amount of the Senior Indebtedness) shall be segregated and be deemed held in trust by Subordinated Creditor for the benefit of Collins St, and shall promptly be turned over to Collins St as Collins St may direct.

2.7     If, in connection with the exercise of Collins St's remedies in respect of the Convertible Note Priority Collateral provided for in this Article II, including any Disposition of any such Convertible Note Priority Collateral, Collins St releases any of its Liens on any part of the Convertible Note Priority Collateral, or releases NECH from its obligations under its guaranty of the obligations under the Convertible Note Facility, then, the Liens, if any, of Subordinated Creditor, for itself or for the benefit of its related claimholders, on such Convertible Note Priority Collateral, and the obligations of NECH under its guaranty of its obligations under the Subordinated Creditor Facility, if applicable, shall be automatically, unconditionally and simultaneously released and Subordinated Creditor, for itself or on behalf of any such related claimholders, shall promptly execute and deliver to Collins St or NECH at the sole cost and expense of NECH such termination statements, releases and other documents as Collins St or NECH may request to effectively confirm such release.  In furtherance of the foregoing, Subordinated Creditor hereby irrevocably appoints Collins St as its attorney-in-fact, with full authority in place and stead of Subordinated Creditor and in its name, to execute and deliver any document or instruction which Subordinated Creditor may be required to deliver pursuant to this Section 2.7.

2.8     Each of the parties hereby agrees that Collins St shall hold the Pledged Stock in its possession or control as the secured party under the Convertible Note Facility and as bailee for the Subordinated Creditor solely for the purposes of perfecting the Subordinated Creditor's second-priority security interest granted in such Pledged Stock pursuant to the Subordinated Credit Facility, subject to the terms and conditions of this Agreement.  Upon the Senior Indebtedness being Paid in Full and the termination of Collins St's security interest in the Pledged Stock, Collins St shall deliver to the Subordinated Creditor, the Pledged Stock and the certificates representing such Pledged Stock, together with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  Collins St shall have no obligation whatsoever to the Subordinated Creditor to ensure that the Pledged Stock is genuine or owned by NECH or to preserve rights or benefits of any person or entity and the duties or responsibilities of Collins St under this Section 2.8 shall be limited solely to holding the Pledged Stock as bailee in accordance with this Section 2.8.  Collins St acting pursuant to this Section 2.8 shall not, by reason of this Agreement, the Convertible Note Facility, the Subordinated Credit Facility or any other document, be deemed to have a fiduciary relationship in respect of the Subordinated Creditor.

# ARTICLE III

## INSOLVENCY PROCEEDINGS OF BORROWERS

3.1 Subordinated Creditor, as holder of a Lien on the Convertible Note Priority Collateral, will not contest, protest, or object, and will be deemed to have consented pursuant to section 363(f) of the Bankruptcy Code, to a Disposition of the Convertible Note Priority Collateral free and clear of its Liens or other interests under section 363 of the Bankruptcy Code if Collins St consents in writing to the Disposition, provided that either (i) pursuant to court order, the Liens of Subordinated Creditor attach to the net proceeds of the Disposition with the same priority and validity as the Liens held by Subordinated Creditor on such Convertible Note Priority Collateral, and the Liens remain subject to the terms of this Agreement; or (ii) the proceeds of a Disposition of Convertible Note Priority Collateral received by Collins St in excess of those necessary to achieve the discharge of the obligations of the Loan Parties to Collins St are distributed in accordance with the UCC and applicable law.

3.2 If Subordinated Creditor receives payment or property on account of or arising out of the Convertible Note Priority Collateral or Collins St receives payment or property on account of or arising out of the Convertible Note Priority Collateral, and the payment is subsequently invalidated, avoided, declared to be fraudulent or preferential, set aside, or otherwise required to be transferred to a trustee, receiver, or the estate of a Loan Party (a "Recovery"), then, to the extent of the Recovery, the obligations intended to have been satisfied by the payment will be reinstated on the date of the Recovery, and no discharge of such obligations will be deemed to have occurred for all purposes hereunder. If this Agreement is terminated prior to a Recovery, this Agreement will be reinstated in full force and effect, and such prior termination will not diminish, release, discharge, impair, or otherwise affect the obligations of the parties from the date of reinstatement.

3.3 Neither Subordinated Creditor nor Collins St will seek, in an Insolvency Proceeding, to be treated as part of the same class of creditors as the other and will not oppose or contest any pleading by the other seeking separate classification of their respective secured claims. The parties acknowledge that this Agreement is a "subordination agreement" under section 510(a) of the Bankruptcy Code, which will be effective before, during, and after the commencement of an Insolvency Proceeding. All references in this Agreement to the Borrowers will include such person as a debtor-in-possession and any receiver or trustee for such person in an Insolvency Proceeding.

3.4 Notwithstanding anything to the contrary in this Agreement, Subordinated Creditor may (i) take such actions as necessary (including, without limitation, demands, accelerations, and/or filings) to ensure its rights are preserved in any Insolvency Proceeding; (ii) make demands or file any proceeding in respect of the Subordinated Creditor Facility necessary to prevent the loss of the right to make any claim in respect of the Subordinated Creditor Facility under applicable laws; or (iii) file any necessary response or defence pleadings in opposition to any proceeding or claim made by any person objecting to or otherwise seeking to invalidate, unwind, void, set aside or disallow the Subordinated Creditor's claims in respect of the Subordinated Creditor Facility; provided that, in each case, only to the extent that each of the foregoing actions: (A) is in compliance with, is not inconsistent with and does not contravene, the provisions of this Agreement; and (B) is not adverse to, or does not adversely affect the priority of the Convertible

Note Facility or any security therefor, or the rights of Collins St to exercise all of its rights and remedies thereunder or under applicable laws.

## ARTICLE IV

## **MISCELLANEOUS**

4.1     At such time when the Senior Indebtedness is Paid in Full, this Agreement shall immediately terminate without any further action on the part of any party.

4.2     Each party agrees to share such information regarding the Borrower or any Guarantor as is reasonably requested by the other party from time to time.

4.3     A party's failure or delay in exercising a right under this Agreement will not waive the right, nor will a party's single or partial exercise of a right preclude it from any other or further exercise of that or any other right.

4.4     THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDES ALL PRIOR AGREEMENTS, ORAL OR WRITTEN, RELATING TO ITS SUBJECT MATTER.

4.5     A modification or waiver of any provision of this Agreement will only be effective if in writing signed on behalf of each party or its authorized agent, and a waiver will be a waiver only for the specific instance involved and will not impair the rights of the parties making the waiver or the obligations of the other parties to such party in any other respect or at any other time.

4.6     This Agreement, and any claim or controversy relating to the subject matter hereof, will be governed by the law of the State of New York, without giving effect to any principles of choice of laws or conflicts of law that would require another law (other than the law of the State of New York) to apply.  Each of the parties hereto irrevocably and unconditionally submits to the jurisdiction of the courts of the State of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, or for recognition or enforcement of any judgment, and each of the parties hereto irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such court.  The parties agree that a final non-appealable judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

4.7     EACH PARTY WAIVES ITS RIGHT TO JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING HEREUNDER.  THE SCOPE OF THIS WAIVER IS INTENDED TO ENCOMPASS ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER HEREOF, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.

4.8     Unless otherwise expressly provided herein, notices and consents must be in writing and will be deemed to have been given:  (i) when delivered in person or by courier service

and signed for against receipt thereof; (ii) upon confirmation of receipt of electronic communication; and (iii) three (3) business days after deposit in the mail with first-class postage prepaid and properly addressed to the parties as follows:

If to Collins St:

Collins St Convertible Notes Pty Ltd ACN 657 773 754 ATF The Collins St Convertible Note Fund
of Level 9, 365 Little Collins Street, Melbourne VIC 3000

Email:  Nick Torelli <ntorelli@csvf.com.au>
Attention:  Nick Torelli

If to the Subordinated Creditor:

Cline Mining Corporation
2 Queen Street East, 12th Floor
Toronto, Ontario Canada, M5C 3G7

Email:  prizakos@marret.com
Attention:  Peter Rizakos, Chief Executive Officer

4.9   Each party will each take such further action and will execute and deliver such additional documents and instruments (in recordable form, if requested) as the other party may reasonably request to effectuate the terms of and the Lien priorities contemplated by this Agreement.

4.10   This Agreement is binding upon and inures to the benefit of parties hereto, and their respective successors and assigns.

4.11   This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which will constitute an original, but all of which when taken together will constitute a single contract.

**[SIGNATURES ON FOLLOWING PAGES]**

**EXECUTED** as of the Effective Date.

**EXECUTED** by **COLLINS ST CONVERTIBLE NOTES PTY LTD ACN 657 773 754 ATF THE COLLINS ST CONVERTIBLE NOTES FUND ABN 30 216 289 383** in accordance with the *Corporations Act 2001* by being signed by the following officers:

| | |
|---|---|
| _____ | _____ |
| Signature of director | Signature of director / company secretary |
| **Vasilios Piperoglou** | **Michael Goldberg** |
| Name of director | Name of director / company secretary |

**CLINE MINING CORPORATION**

By: _____
Name: Peter Rizakos
Title: President

EXECUTED as of the Effective Date.

EXECUTED by COLLINS ST CONVERTIBLE NOTES PTY LTD ACN 657 773 754 ATF THE COLLINS ST CONVERTIBLE NOTES FUND ABN 30 216 289 383 in accordance with the *Corporations Act 2001* by being signed by the following officers:

| | |
|---|---|
| ........................................................<br>Signature of director | ........................................................<br>Signature of director / company secretary |
| **Vasilios Piperoglou**<br>Name of director | **Michael Goldberg**<br>Name of director / company secretary |

**CLINE MINING CORPORATION**

By: _____
Name: Peter Rizakos
Title: President