**Exhibit 13**
**Black Warrior Minerals - ServisFirst Bank DACA**
**(Accts. 5001236792, 5001236768 & 100008390)**

## DEPOSIT ACCOUNT CONTROL AGREEMENT

This Deposit Account Control Agreement (this "Agreement"), dated as of August 1st_____, 2022__, is made by and among Collins St Convertible Notes PTY LTD ACN 657 773 754 ATF The Collins St Convertible Notes Fund ABN 30 216 289 383, an Australian corporation ("Secured Party"), Black Warrior Minerals, Inc., an Alabama corporation ("Debtor"), and **SERVISFIRST BANK**, an Alabama banking corporation ("Bank").

### R E C I T A L S:

Debtor has granted Secured Party a security interest in a deposit account maintained by Bank for Debtor. The parties are entering into this agreement to perfect Secured Party's security interest in that account.

### A G R E E M E N T:

**1.**     **The Account.** Bank maintains a deposit account for Debtor, currently numbered _5001236792, 5001236768, 100008390__ and titled "_Black Warrior Minerals Inc __" (as such account may be renumbered or retitled, the "Account"). All parties agree that the Account is a "deposit account" within the meaning of Article 9 of the Uniform Commercial Code of the State of Alabama (the "UCC").

**2.**     **Control**

(a)     Bank will comply with instructions originated by Secured Party directing disposition of the funds in the Account without further notice to or consent by Debtor. Prior to its receipt of a Notice of Exclusive Control (defined below), Bank shall comply with instructions directing the disposition of Account funds originated by Debtor or its authorized representatives, except to the extent Bank receives contradictory instructions from Secured Party. No later than the opening of business on the second business day after the business day on which Bank receives a Notice of Exclusive Control (the "Outside Time"), Bank will do the following: (a) Bank will cease complying with instructions concerning the Account or the Account funds originated by Debtor or its representatives absent the written consent of Secured Party; and (b) if so requested by Secured Party, Bank will transfer Account funds in the Account to or at the direction of Secured Party and will return all items presented for payment on the Account after that time. A "Notice of Exclusive Control" is a written notice delivered by Secured Party to Bank to the effect that Secured Party is thereby exercising exclusive control over the Account; provided, however, that such notice must be in the "Required Form" specified below. For purposes of this Agreement, the Notice of Exclusive Control will be deemed to satisfy the "Required Form" if and only if it:

(i)     Is in writing;

(ii)     States that circumstances permitting Secured Party to exercise exclusive control have occurred;

(iii)     For any instruction or direction that includes a disposition of Account funds, states that the Secured Party is entitled to the amount of such Account funds to be disposed pursuant to such instruction or direction; and

(iv)     Is accompanied by a fully executed copy of this Agreement.

(b)     Bank has not agreed and will not agree with any third party to comply with instructions or other directions concerning the Account or the disposition of funds in the Account originated by such third party without the prior written consent of Secured Party and Debtor.

(c)     Bank is entitled to rely on the face of any Notice of Exclusive Control as conclusive evidence of the statements contained therein, and Bank shall not be liable for its reliance on any Notice of Exclusive Control, except to the extent it is determined in a final, non-appealable court proceeding that Bank was grossly negligent in relying on such Notice of Exclusive Control.

3.     <u>Subordination of Bank's Security Interest.</u>

(a)     Bank hereby subordinates all security interests, liens, encumbrances, claims and rights of setoff it may have, now or in the future, against the Account or funds in the Account, except with respect to charges, reversals, or other adjustments made to, against, or with respect to the Account as a result of or in connection with any of the following (each, a "Charge", and collectively, the "Charges"):

(i)     charge-backs, reversals, or other adjustments to the Account as a result of or in connection with any check, draft, money order, instrument, wire transfer of funds, automated clearing house entry, credit from a merchant card transaction, other electronic transfer of funds, or other item being (A) deposited in or credited to the Account, whether before or after the date of this Agreement, and being returned unpaid or otherwise uncollected or subject to an adjustment entry, whether for insufficient funds or for any other reason and without regard to the timeliness of the return or adjustment or the occurrence or timeliness of any other person's notice of nonpayment or adjustment, (B) subject to a claim against Bank for breach of transfer, presentment, encoding, retention or other warranty under Federal Reserve regulations or Operating Circulars, clearing house rules, the UCC, or other applicable law, or (C) for a merchant card transaction, against which a contractual demand for chargeback has been made;

(ii)     (A) automated clearinghouse ("ACH") credit entries initiated from the Account by Debtor or Secured Party for which there are insufficient funds in the Account on the date required by the applicable agreement with Bank for such services, (B) ACH debit entries initiated from the Account by Debtor or Secured Party which are returned to Bank for any reason, or (C) any and all other overdrafts, charges, obligations, or other liabilities arising out of any cash management or funds transfer services provided by Bank for Debtor, including, without limitation, any wire transfer services, ACH services, or other electronic funds transfer services provided by Bank for Debtor;

(iii)     normal service charges or fees payable to Bank in connection with the Account or any related services;

(iv)     any adjustments or corrections of any posting or encoding errors; and

(v)     reimbursements for out-of-pocket or allocable internal legal fees and expenses in connection with the negotiation, administration or enforcement of this Agreement by Bank.

(b)     Bank may debit all Charges against the Account.

(c)     Bank hereby agrees that: (i) any security interest which Bank may have or acquire in the Account, and (ii) any right which Bank may have or acquire to set off or otherwise apply any Account funds against the payment of any indebtedness owing to Bank from the Debtor or any other party, except

2

for Charges to the Account permitted under Sections 3(a) and (b) above, shall be subordinate to the security interests of Secured Party in the Account.

4.    **Statements, Confirmations and Notices of Adverse Claims.**  Bank will send copies of all statements concerning the Account to each of Debtor and Secured Party at their respective addresses specified in Section 17 below. Upon receipt of written notice of any lien, encumbrance or adverse claim against the Account, Bank will make reasonable efforts to promptly notify Secured Party and Debtor thereof.

5.    **Bank's Responsibility.**

(a)    Except for acting on Debtor's instructions in violation of Section 2 above, Bank shall have no responsibility or liability to Secured Party for complying with instructions concerning the Account from Debtor or Debtor's authorized representatives which are received by Bank before Bank receives a Notice of Exclusive Control and the Outside Time with respect thereto occurs. Bank shall have no responsibility or liability to Debtor for complying with a Notice of Exclusive Control or complying with instructions concerning the Account originated by Secured Party, and shall have no responsibility to investigate the appropriateness of any such instruction or Notice of Exclusive Control, even if Debtor notifies Bank that Secured Party is not legally entitled to originate any such instruction or Notice of Exclusive Control.

(b)    Notwithstanding Bank's agreements herein, Bank will not be liable to any party for:

(i)    failing to follow a Notice of Exclusive Control that is not in the Required Form;

(ii)    following instructions originated by Secured Party, including a Notice of Exclusive Control, even if not in the Required Form;

(iii)    failing to follow an instruction originated by Secured Party (A) before the Outside Time, (B) that requires the disposition of the funds in the Account by a method not available to Debtor under the Account-related agreements, (C) that Bank determines would result in Bank's failing to comply with a statute, rule or regulation, or applicable governmental order or process, binding upon Bank, (D) that requires the disposition of funds that are not immediately available in the Account, (E) that directs that the funds be sent to more than one recipient, or (F) for which Bank has not received evidence reasonably required by Bank as to the authority of the person giving the instruction to act for the Secured Party (although Bank shall have no obligation to require such evidence of authority);

(iv)    complying with Debtor's instructions, or otherwise completing a transaction involving the Account, that Bank or an affiliate had started to process before the Outside Time;

(v)    wrongful dishonor of any item as a result of Bank's following instructions originated by Secured Party;

(vi)    failing to comply or delaying in complying with any instructions or any provision of this Agreement due to a computer malfunction, interruption of communication facilities, labor difficulties, act of God, war, terrorist attack, or other cause, in each case beyond Bank's reasonable control;

3

(vii)    any other claim, except to the extent directly caused by Bank's gross negligence or willful misconduct; or

(viii)    any indirect, special, consequential or punitive damages.

(c)    Bank will have no fiduciary duties under this Agreement to any party, whether as trustee, agent, bailee or otherwise. Bank will have no duties to Secured Party except as expressly set forth in this Agreement. Bank will have no duty to inquire into or determine the existence or enforceability of Debtor's obligations to Secured Party or whether, under any separate agreement between Debtor and Secured Party, Debtor's obligations to Secured Party are in default, Debtor may originate instructions, or Secured Party is entitled to originate instructions or a Notice of Exclusive Control.

6.    **Indemnity and Reimbursement.**

(a)    Debtor and Secured Party hereby agree to indemnify and hold harmless Bank, its directors, officers, agents and employees against any and all claims, causes of action, liabilities, lawsuits, demands and damages, including without limitation, any and all court costs and reasonable attorney's fees (including any costs, fees and expenses incurred by Bank in any bankruptcy matter relating to Debtor), in any way related to or arising out of or in connection with this Agreement or any action taken or not taken pursuant hereto, except to the extent caused by Bank's gross negligence or willful misconduct or Bank's breach of any of the provisions hereof.

(b)    Secured Party agrees to reimburse Bank for any Charge against the Account under Section 3(b) for which there were insufficient funds in the Account to satisfy the Charge. Such reimbursement will be limited to the aggregate amount transferred from the Account as a result of Bank's acting upon instructions originated by Secured Party. Bank may not make a claim for reimbursement under this paragraph unless (i) Debtor fails to satisfy the claim within fifteen (15) days after Bank makes a demand on Debtor under Section 6(a) or (ii) Bank is enjoined, stayed or prohibited by operation of law from making the demand on Debtor.

(c)    Secured Party's reimbursement obligations under Section 6(b) will not apply to the amount of any loss incurred by Bank to the extent directly caused by Bank's gross negligence or willful misconduct. If Secured Party fails to reimburse Bank for any amount under Section 6(b), Secured Party will pay the Bank's out-of-pocket or allocable internal legal fees and expenses in collecting from Secured Party the amount payable.

7.    **Customer Agreement.** This Agreement supplements rather than replaces Bank's account agreement, terms and conditions and other standard documentation in effect from time to time with respect to the Account or services provided in connection with the Account. In the event of a conflict between this Agreement and any other agreement between the Bank and the Debtor relating to the Account, the terms of this Agreement will prevail; provided, however, that this Agreement shall not alter or affect any mandatory arbitration provision currently in effect between Bank and Debtor pursuant to a separate agreement.

8.    **Termination.** Unless earlier terminated by Bank pursuant to this Section 8, this Agreement shall continue in effect until Secured Party has notified Bank in writing that this Agreement, or its security interest in the Account, is terminated. Upon receipt of such notice and the passage of a reasonable time for Bank to act on it, the obligations of Bank hereunder with respect to the operation and maintenance of the Account after the receipt of such notice shall terminate, Secured Party shall have no further right to originate instructions concerning the Account and any previous Notice of Exclusive Control delivered by Secured Party shall be deemed to be of no further force and effect. Bank reserves the right,

4

unilaterally, to terminate this Agreement, such termination to be effective twenty (20) business days' after written notice thereof is given to Debtor and Secured Party.

**9.    Tax Reporting.** All reports with respect to the Account required of Bank under the Internal Revenue Code or any applicable state taxation laws, rules or regulations shall be made under the name and taxpayer identification number of Debtor.

**10.    Court Orders.** Bank shall disregard any and all notices, orders or instructions received from any source, except only (a) such notices, orders or instructions as are allowed by the terms of this Agreement, and (b) orders or process (including, without limitation, any judgment, decree, injunction, garnishment, tax levy or writ of seizure) of a court of competent jurisdiction or of any federal, state or local government entity (each an "Order"). If, from time to time, the Account becomes subject to an Order, Bank may comply with any such Order in good faith without liability to any person, even though such Order may thereafter be annulled, reversed, modified or vacated. In addition, upon receipt of an Order or upon receipt of conflicting claims to the Account or Account funds and upon Bank's good faith determination that such action is necessary to protect its interests, Bank may interplead Account funds into an appropriate court of competent jurisdiction and seek a determination of its rights and obligations with respect to the Account.

**11.    Sufficiency of Form.** So long as Bank acts in good faith, Bank shall not be responsible for the sufficiency, form, execution, validity or genuineness of any documents or notices relating to this Agreement or for any signature or endorsement, or for the accuracy of any description therein, or for the identity or authority of the persons executing or delivering the same.

**12.    Reliance by Bank.** Bank shall be fully protected in relying, without investigation, upon any written notice, demand, certificate or other document which it in good faith believes to be genuine as to the truth and accuracy of the statements made therein, the identity and authority of the persons executing the same, and the validity of any signature thereon.

**13.    Complete Agreement; Amendments.** This Agreement and the instructions and notices required or permitted to be executed and delivered hereunder set forth the entire agreement of the parties with respect to the subject matter hereof, and, subject to Section 7 above, supersede any prior agreement and contemporaneous oral agreements of the parties concerning its subject matter. No amendment, modification or (except as otherwise specified in Section 8 above) termination of this Agreement, nor any assignment of any rights hereunder (except to the extent contemplated under Section 16 below), shall be binding on any party hereto unless it is in writing and is signed by each of the parties hereto, and any attempt to so amend, modify, terminate or assign except pursuant to such a writing shall be null and void. No waiver of any rights hereunder shall be binding on any party hereto unless such waiver is in writing and signed by the party against whom enforcement is sought.

**14.    Governing Law.** This Agreement and the agreement governing the Account shall be governed by and construed in accordance with the law of the State of Alabama. The parties agree that Alabama is the "bank's jurisdiction" for purposes of the UCC.

**15.    Severability.** To the extent a provision of this Agreement is unenforceable, this Agreement will be construed as if the unenforceable provision were omitted.

**16.    Successors and Assigns.** The terms of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective corporate successors or heirs and personal representatives. This Agreement may be assigned by Secured Party to any successor of Secured Party under its security agreement with Debtor, provided that (i) such successor assumes Secured Party's obligations pursuant to this Agreement in writing, and (ii) written notice thereof is given by Secured Party to Bank.

5

17.    **Notices.** Except as otherwise expressly provided herein, any notice, order, instruction, request or other communication (each a "Notice" for purposes of this section) required or permitted to be given under this Agreement shall be in writing and may be sent by personal delivery, nationally recognized courier service (such as FedEx or UPS), or registered/certified United States Mail (postage prepaid, return receipt requested) to the address specified below. Any Notice shall be deemed given upon the earliest of the recipient's actual receipt thereof, such party's refusal of delivery thereof, or three days after delivery to such party of a notice that delivery of the Notice was attempted and that the Notice is available to be claimed at a specified address. Any party may change its address for Notices hereunder by notice to all other parties given in accordance with this Section 17.

Secured Party:    Collins St Convertible Notes Pty Ltd ACN 657 773 754 as trustee
for The Collins St Convertible Note Fund ABN 30 216 289 383
Level 9, 365 Little Collins Street,
Melbourne VIC 3000
mtorelli@csvf.com.au

Debtor:    Black Warrior Minerals, Inc.
c/o Allegiance Coal USA
Limited 1415 Suite D, Hankin Ave.
Telkwa BC V0J 2X0 Canada Attention: Mark Gray
mgray.jr.allegiancecoal.com.au

Bank:    ServisFirst Bank
2500 Woodcrest Place
Birmingham, Alabama 35209
Attention: Chief Credit Officer

18.    **Jury Waiver.** EACH PARTY HEREBY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT, ANY RIGHTS, REMEDIES, OBLIGATIONS OR DUTIES HEREUNDER, OR THE PERFORMANCE OR ENFORCEMENT HEREOF OR THEREOF.

19.    **Counterparts.** This Agreement may be executed in any number of counterparts, all of which shall constitute one and the same instrument, and any party hereto may execute this Agreement by signing and delivering one or more counterparts. Any party may execute a counterpart of this Agreement by communicating a facsimile or electronic signature to the other parties.

[Remainder of page intentionally blank]

6

IN WITNESS WHEREOF, the duly authorized officers, partners, members, managers, or agents of the parties hereto have set their hands and seals as of the day and year first above written.

SECURED PARTY:

**EXECUTED by COLLINS ST CONVERTIBLE NOTES PTY LTD ACN 657 773 754 ATF THE COLLINS ST CONVERTIBLE NOTES FUND ABN 30 216 289 383** in accordance with the *Corporations Act 2001* by being signed by the following officers:

_____          _____
Signature of director                          Signature of director / company secretary

Vasilios Piperoglou                          Michael Goldberg
Name of director                                Name of director / company secretary

DEBTOR:

BLACK WARRIOR MINERALS, INC.

By: _____
Name: Dance Perry
Title: President

By: _____
Name: SARAVANAN SIVAPATHASUNDRAM
Title: CFO

BANK:

SERVISFIRST BANK

By: _____
Name: Paul V Schabacker
Title: Executive Vice President

7