**Exhibit 17**
**Secretary's Certificate of New Elk Coal Holdings LLC**

# SECRETARY'S CERTIFICATE
## OF
## NEW ELK COAL HOLDINGS LLC

### May 24, 2022

The undersigned, Jonathan Reynolds, as the duly elected Secretary of New Elk Coal Holdings LLC, a Delaware corporation (the "**Company**"), is delivering this Secretary's Certificate pursuant to the Guaranty and Security Agreement, dated on or about the date hereof (the "**Security Agreement**"), by and between the Company, Allegiance Coal Limited, an Australian corporation ("**ACL**"), Collins Street Convertible Notes Pty Ltd (the "**Noteholder**"), Allegiance Coal USA Limited ("**ACUSA**"), New Elk Coal Company LLC, a Colorado limited liability company ("**NECC**"), North Central Energy Company, a Colorado corporation ("**NCEC**"), Raton Basin Analytic LLC, a Colorado limited liability company ("**RBA**"), and Black Warrior Minerals, Inc., an Alabama corporation ("**BWM**," and together with the Company, ACL, ACUSA, and NECC, the "**Grantors**"), in connection with the Convertible Note Agreement, dated on or about the date hereof (the "**Note Agreement**"), by and between ACUSA, ACL and the Noteholder, and other documents between the Noteholder and the Grantors, including the Assignments, the Mortgages, the Deed, the Note, the Subordination Agreements, and all financing statements (or comparable documents now or hereafter filed in accordance with the UCC or other applicable law) (collectively, the "**Transaction Documents**"). The undersigned hereby certifies on behalf of the Company that:

1.　　He is the duly elected, qualified and acting Secretary of the Company;

2.　　Attached hereto as <u>Exhibit A</u> is a true and correct copy of the Company's Certificate of Formation as in full force and effect as of the date hereof, which has not been amended or modified;

3.　　Attached hereto as <u>Exhibit B</u> is a true and complete copy of the Operating Agreement of the Company as in full force and effect on the date hereof;

4.　　Attached hereto as <u>Exhibit C</u> is a true, correct and complete copy of the resolutions duly adopted by the Company's board of directors authorizing the consummation of the transactions contemplated by the Transaction Documents, which resolutions have not been revoked, amended, supplemented or modified and are in full force and effect on the date hereof. No other authorization, approval or consent is required on the part of the Company or its directors, officers or shareholders in relation thereto;

5.　　<u>Exhibit D</u> contains true, genuine and complete signatures of the Company's incumbent directors and officers;

6.　　Attached hereto as <u>Exhibit E</u> is a true and complete copy of the Good Standing Certificate of the Company.

IN WITNESS WHEREOF, the undersigned has executed this Secretary's Certificate on behalf of the Company as of the date first above written.

**NEW ELK COAL HOLDINGS LLC**

By_____
Name: Jonathan Reynolds
Title: Secretary

**EXHIBIT A**

<u>Certificate of Formation</u>

[see attached]



# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "NEW ELK COAL HOLDINGS LLC" AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF FORMATION, FILED THE NINTH DAY OF DECEMBER, A.D. 2019, AT 5:15 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "NEW ELK COAL HOLDINGS LLC".



Jeffrey W. Bullock, Secretary of State

7692952  8100H
SR# 20222064267

Authentication: 203451288
Date: 05-17-22

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered  05:15 PM 12/09/2019
FILED  05:15 PM 12/09/2019
SR 20198521961  - File Number  7692952

# CERTIFICATE OF FORMATION
## OF
# NEW ELK COAL HOLDINGS LLC

**FIRST:**    The name of the limited liability company is New Elk Coal Holdings LLC.

**SECOND:**    The Company's registered office in the State of Delaware is located at 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801. The registered agent of the Company for service of process at such address is The Corporation Trust Company.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation this 9th day of December, 2019.

Sandra L. Wainer

4636444.1

**EXHIBIT B**

Operating Agreement

[see attached]

<u>LIMITED LIABILITY COMPANY AGREEMENT</u>

<u>OF</u>

<u>NEW ELK COAL HOLDINGS LLC</u>

This Operating Agreement (this "<u>Agreement</u>") is entered into December 9, 2109 by Allegiance Coal USA Limited, a Delaware corporation (the "<u>Member</u>"). The Member states and agrees as follows:

1.    <u>The Limited Liability Company</u>.

1.1    <u>Formation</u>. The Member hereby forms a limited liability company upon the terms and conditions provided in this Agreement, subject to the provisions of the Delaware Limited Liability Company Act (the "<u>Act</u>"). The name of the limited liability company shall be New Elk Coal Holdings LLC (the "<u>Company</u>").

1.2    <u>Articles of Organization</u>. The Member has caused a certificate of formation of the Company (the "<u>Certificate</u>") that complies with the requirements of the Act to be properly filed with the Delaware Secretary of State. In the future, the Member shall execute such further documents and take such further action as shall be appropriate or necessary to comply with the requirements of law for the formation and operation of a limited liability company in all states and counties where the Company elects to carry on its business.

1.3    <u>Business</u>. The purpose for which the Company is formed is to (i) acquire all of the issued and outstanding membership interests of New Elk Coal Company LLC, a Colorado limited liability company, to exercise all rights and privileges relating thereto and to do any and all other things necessary, desirable or incidental to the foregoing purpose, and (ii) to engage in any other activity that limited liability companies organized under the Act lawfully may engage.

1.4    <u>Principal Office; Agent</u>. The principal office of the Company shall be at 1415 Suite D, Hankin Avenue, Telkwa, BC V0J 2X0, Canada or such other place as the Board may from time to time determine. The initial registered office and the initial registered agent of the Company are as specified in the Certificate. The Company may change its registered office, its registered agent or both, upon determination by the Board, by filing a statement as specified in the Act.

1.5    <u>Sole Member</u>. The Member is the sole member of the Company.

2.    <u>Capital Contributions</u>.

2.1    <u>Initial Capital Contributions</u>. Upon execution of this Agreement, the Member has made an initial capital contribution to the Company consisting of cash and other assets in the amount of $100.

2.2     Additional Capital Contributions.  The Member may in its discretion, but shall not have any obligation to, contribute any additional capital to the Company.

2.3     Treatment of Capital Contributions.  Capital contributions shall be expended in furtherance of the business of the Company.  All costs and expenses of the Company shall be paid from its funds.  No interest shall be paid on capital contributions.

3.     Distributions.

3.1     Nonliquidating Distributions.  Subject to Sections 3.2 and 3.3, the Company may make distributions to the Member at such times and in such amounts as the Board shall determine.  The Member shall be entitled to 100 percent of all distributions.

3.2     Liquidating Distributions.  All distributions made in connection with the liquidation of the Company, shall be made after:

(a)     first, paying the debts and liabilities of the Company and the expenses of liquidation; and

(b)     next, establishing such reserves as the Board, acting as liquidator (in accordance with Article 8) reasonably may deem necessary for any contingent liabilities of the Company.

3.3     Limitation on Distributions.  No distribution shall be made to the Member pursuant to this Article 3 to the extent that such distribution would: (i) cause the Company to be insolvent; (ii) render the Company liable for a return of such distribution under applicable law; or (iii) violate any applicable law or any agreement to which the Company is a party.

4.     Allocation of Profit and Loss.  Profits or losses of the Company shall be determined for each Company fiscal year, and for such other periods as may be required. 100 percent of all profits and losses of the Company shall be allocated to the Member.

5.     Management.

5.1     Management Authority of the Board.  The Member hereby delegates to the governing board of the Company (the "Board") the exclusive authority to manage the Company's business except as to those matters as to which (i) the approval of the Member is required by this Agreement or by the Act, (ii) the Board fails or refuses to act, or (iii) the Board submits the matter for approval to the Member.  Subject to the provisions of the Certificate, the Act and this Agreement relating to actions required to be approved by the Member, the business, property and affairs of the Company shall be managed and all powers of the Company shall be exercised by or under the direction of the Board, which shall have all of the rights and powers which may be possessed by a "manager" under the Act, and such rights and powers as are otherwise conferred by law or by this Agreement to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to perform any and all other

2

acts or activities customary or incident to the management of the Company's business, property and affairs.

5.2     Composition of Board.

(a)     Directors; Appointment.  Each person serving on the Board is referred to in this Agreement as a "Director."  The Board shall be comprised of at least one and not more than three Directors, each appointed by the Member.  The Member hereby appoints Mark Gray, Jonathan Reynolds and Larry Cook as the initial Directors of the Company.

(b)     Vacancies.  In the event of the death, disability, retirement, resignation, or removal of any Director, the Member shall have the right, but not the obligation at any particular time, to designate another individual to fill such vacancy and to serve as a Director.

(c)     Removal.  Each Director may be removed at any time by the Member.

5.3     Meetings of Board.

(a)     Calling a Meeting.   Meetings of the Board may be called by the Chairman of the Board, any Director or by the CEO (defined below).

(b)     Attendance at Meetings; Minutes.  Attendance at meetings of the Board may be by speaker telephone or other communications device by which all those participating in the meeting may hear each other.  The Board shall keep written minutes of all meetings, and the minutes shall be included in the records of the Company.

(c)     Notice; Place of Meetings.  All meetings of the Board or the Members shall be held upon at least 24 hours' notice delivered personally or by telephone, facsimile or e-mail to each Director.  Such notice shall specify the place, day and hour of the meeting and the purpose or purposes for which the meeting is being called.  Notice of a meeting need not be given to any Director who signs a waiver of notice or a consent to holding the meeting or an approval of the minutes thereof, whether before or after the meeting, or who attends the meeting without protesting, prior to its commencement, such lack of notice.  All such waivers, consents and approvals shall be filed with the Company records or made a part of the minutes of the meeting.  Meetings of the Board may be held at any place, within or without the State of Delaware, which has been designated in the notice of the meeting or at such place as may be approved by the Board.  If all of the Directors shall meet at any time and place and consent to the holding of a meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting lawful action may be taken.

(d)     Quorum.  A majority of Directors shall constitute a quorum of the Board for the transaction of business.

(e) <u>Manner of Acting</u>. If a quorum is present at a meeting of the Board, the affirmative vote of a majority of all Directors shall be the act of the Board.

(f) <u>Action Without a Meeting</u>. Action required or permitted to be taken at a meeting of Directors may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by all of the Directors and delivered to the CEO for inclusion in the minutes or for filing with the Company records. Action taken under this paragraph is effective when all of the Directors have signed the consent, unless the consent specifies a different effective date.

5.4 <u>Reimbursement of the Directors' Expenses</u>. The Directors shall be entitled to reimbursement by the Company for reasonable out-of-pocket costs incurred on behalf of the Company.

5.5 <u>Appointment of Officers</u>.

(a) The Member or the Board may at any time appoint or remove officers of the Company. The officers of the Company, if deemed necessary by the Board, may include a chairman of the board, chief executive officer ("<u>CEO</u>"), president, vice president, secretary and treasurer. Officers appointed by the Board shall serve at the pleasure of the Board until a replacement officer is appointed by the Board, subject to all rights, if any, of an officer under any contract of employment. Any individual may hold any number of offices. No officer shall be required to be a resident of the State of Delaware or citizen of the United States. Unless the Board decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. No officer shall be a "manager" for the purpose of the Act, but each shall be an agent of the Company, as may be the case, within his or her scope of authority provided by this Agreement or otherwise authorized by the Board.

(b) Subject to the rights, if any, of an officer under a contract of employment, any officer may be removed, either with or without cause, by the Member any time. Any officer may resign at any time by giving written notice to the Member. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice; and, unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the Company under any contract to which the officer is a party or applicable law. A vacancy in the office of any officer because of death, resignation, removal, disqualification or any other cause shall be filled by the Member.

(c) Mark Gray shall be the initial Chairman, President and CEO of the Company. Jonathan Reynolds shall be the initial Vice President, Treasurer and Secretary of the Company.

(d) Any note, mortgage, evidence of indebtedness, contract, certificate, statement, conveyance, or other instrument in writing, and any assignment or

endorsement thereof, executed or entered into between the Company and any other person or entity, when signed by an officer, is not invalidated as to the Company by any lack of authority of the signing officers in the absence of actual knowledge on the part of the other person or entity that the signing officer had no authority to execute the same.

      5.6   <u>Exculpation; Indemnification</u>.

      (a)   No current or former Member, Director or officer of the Company (each an "<u>Indemnified Person</u>") shall be liable, responsible or accountable in damages or otherwise to the Company or the Member for any acts performed, or for any failure to act within the scope of this Agreement, unless the act or omission was performed or omitted in contravention of this Agreement, or constituted gross negligence, fraud or willful misconduct.  To the fullest extent permitted by law, each Indemnified Person shall be indemnified, held harmless and defended by the Company from and against any and all losses, claims, damages, liabilities, whether joint or several, expenses (including legal fees and expenses), judgments, fines and other amounts paid in settlement, incurred or suffered by the Indemnified Person, as a party or otherwise, in connection with any threatened, pending or completed claim, demand, action, suit or proceeding, whether civil, criminal, administrative or investigative, and whether formal or informal, arising out of or in connection with the business or the operation of the Company, or by reason of the Indemnified Person's status as a current or former Member, Director or officer, regardless of whether the Indemnified Person retains such status at the time any such loss, claim, damage, liability, or other expense is paid or incurred if (i) the Indemnified Person acted within the scope of its, his or her authority pursuant to this Agreement and, with respect to any criminal proceeding, had no reasonable cause to believe that such conduct was unlawful, and (ii) the Indemnified Person's conduct did not constitute fraud, gross negligence or willful misconduct.  The termination of any action, suit or proceeding by judgment, order, settlement or upon a plea of nolo contendere, or its equivalent, shall not, of itself, create a presumption that the Indemnified Person acted in a manner contrary to the standards specified in this Section 5.6(a).

      (b)   To the fullest extent permitted by law, expenses incurred by an Indemnified Person in defending any claim, demand, action, suit or proceeding subject to this section shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Indemnified Person to repay such amount unless it is determined that the Indemnified Person is entitled to be indemnified therefor pursuant to this Section 5.6.

      (c)   The indemnification provided by this Section 5.6 shall be in addition to any other rights to which an Indemnified Person may be entitled under any other agreement, as a matter of law or otherwise, and shall inure to the benefit of the heirs, legal representatives, successors, assigns and administrators of the Indemnified Person.

(d)     Any indemnification under this Section 5.6 shall be satisfied solely out of the assets of the Company and no Indemnified Person shall have any recourse against the Member with respect to such indemnification.

(e)     No Indemnified Person shall be denied indemnification, in whole or in part, under this Section 5.6 merely because the Indemnified Person had an interest in the transaction with respect to which the indemnification applies, if the transaction was not otherwise prohibited by the terms of this Agreement and the conduct of the Indemnified Person satisfies the conditions set forth in this Agreement.

(f)     The indemnification provided in this Section 5.6 is for the benefit of the Indemnified Persons only and shall not be deemed to create any right to indemnification for any other person or entity.

(g)     The Company may, but shall have no obligation to, purchase and maintain insurance covering any potential liability of the Indemnified Persons for any actions or omissions for which indemnification is permitted hereunder including such types of insurance (including extended coverage liability and casualty and workers' compensation) as would be customary for any person engaged in a similar business and may name the Indemnified Persons as additional insured parties thereunder.

(h)     To the extent that any Indemnified Person is successful on the merits or otherwise in defense of any action, suit, or proceeding referred to in this Section 5.6, or in the defense of any claim, issue, or matter therein, the Company shall indemnify it, him or her against the expenses, including attorneys' fees, actually and reasonably incurred by them in connection therewith.

5.7     <u>Indemnification Procedures; Survival</u>.

(a)     Promptly after receipt by any Indemnified Person of notice of the commencement of any action that may result in a claim for indemnification pursuant to Section 5.6, the Indemnified Person shall notify the Company in writing within 30 days thereafter; <u>provided</u>, <u>however</u>, that the omission so to notify the Company shall not relieve the Company of any liability for indemnification pursuant to Section 5.6 as to the particular item for which indemnification may then be sought (except to the extent that the failure to give notice shall have been materially prejudicial to the Company).

(b)     The Indemnified Person shall have the right to employ separate counsel in any action as to which indemnification may be sought under any provision of this Agreement and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of the Indemnified Persons unless (i) the Company has agreed in writing to pay such fees and expenses, (ii) the Company has failed to assume the defense thereof without reservation and employ counsel within a reasonable period of time after being given the notice required above, or (iii) the named parties to any such action (including any impleaded parties) include both the Indemnified Persons and the Company and the Indemnified Persons shall have been advised by its counsel that representation of the Indemnified Persons and the Company by the same counsel would

6

be inappropriate under applicable standards of professional conduct (whether or not such representation by the same counsel has been proposed) due to actual or potential differing interests between them.  It is understood, however, that the Company shall, in connection with any one such action or separate but substantially similar or related actions in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of only one separate firm of attorneys at any time for all the Indemnified Persons having actual or potential differing interests with the Company.

(c)     The Company shall not be liable for any settlement of any such action effected without its written consent, but if settled with such written consent, or if there is a final judgment against the Indemnified Person in any such action, the Company agrees to indemnify and hold harmless the Indemnified Person to the extent provided above from and against any loss, claim, damage, liability or expense by reason of such settlement or judgment.

(d)     The Company shall pay the expenses incurred by any Indemnified Person in defending a pending or threatened civil or criminal action, suit or proceeding in advance of the final disposition of such action, suit or proceeding, upon receipt of an undertaking by such person or entity to repay such payment if the Indemnified Person shall be determined not to be entitled to indemnification therefor as provided herein; provided, however, that in such instance such person is not defending a civil action, suit or proceeding commenced against such person by the Company itself.

(e)     The indemnification obligation set forth in Section 5.6 shall survive the termination of this Agreement.

6.    Transfers.

6.1    Substitution of a Member.  No assignee, legatee, or transferee (by conveyance, operation of law or otherwise) of the whole or any portion of the Member's interest in the Company shall have the right to become a substituted Member without the approval of the Member, provided, however, that an assignee, legatee or transferee of the entire interest of the Member in the Company shall be admitted as a substituted member, in the Member's place and stead.  A substituted member shall succeed to all the rights and interest of the Member in the Company.  An assignee of the Member who is not admitted as a member shall be entitled only to the distributions to which its assignor otherwise would be entitled.

6.2    Dissolution of Member.  If the Member shall be dissolved, merged or consolidated, its successor in interest shall have the same rights and obligations that the Member would have had if it had not been dissolved, merged or consolidated except that the successor shall not become a substituted member.

6.3    Conditions to Transfer.  No transfer of any interest in the Company shall be effective for any purpose whatsoever until the transferee shall have assumed the transferor's obligations to the extent of the interest transferred and shall have agreed to be

bound by all the terms and conditions hereof, by written instrument, duly acknowledged, in form and substance reasonably satisfactory to the Member.

7.    Term.  The Company shall continue until dissolved by any of the following events:

        (a)    the approval of the Member;

        (b)    the dissolution of the Member, or the occurrence of any other event that terminates the continued membership of the Member; or

        (c)    any other event causing dissolution of a limited liability company under the Act.

8.    Dissolution and Termination.

    8.1    Liquidation.  Upon the dissolution of the Company, the Board shall act as liquidator to wind up the Company.  As such, the Board shall have full power and authority to sell, assign and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and businesslike manner.

    8.2    Certificate of Cancellation.  Upon the completion of the distribution of Company assets as provided in Article 3, the Company shall be terminated and the Member, acting as liquidator, shall file a certificate of cancellation and shall take such other actions as may be necessary to terminate the Company.

9.    General Provisions.

    9.1    Entire Agreement.  This Agreement embodies the entire understanding and agreement of the Member concerning the Company and supersedes any and all prior negotiations, understandings or agreements in regard thereto.

    9.2    Amendment.  This Agreement may not be amended except by written instrument executed by the Member.

    9.3    Applicable Law.  This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware.

*[remainder of page intentionally left blank]*

The Member has executed this Agreement effective as of the date first above written.

Allegiance Coal USA Limited

By:_____

Name: Mark Gray

Title:  Chairman, President and Chief Executive
        Officer

**EXHIBIT C**

<u>Unanimous Written Consent of the Board of Directors</u>

[see attached]

**NEW ELK COAL HOLDINGS LLC**
**UNANIMOUS WRITTEN CONSENT**
**OF THE BOARD OF DIRECTORS**

As of May <u>24</u>, 2022

\* \* \* \* \* \* \* \* \* \*

The undersigned, being all of the members of the Board of Directors (the "**Board**") of New Elk Coal Holdings LLC, a Delaware limited liability company (the "**Company**"), in lieu of holding a meeting of the Board of the Company, hereby adopt the following resolutions by written consent to be effective as of May <u>24</u>, 2022 (the "**Effective Date**").

**WHEREAS,** the Company is a proposed party to the Guaranty and Security Agreement), dated on or about the date hereof (the "**Security Agreement**"), by and between the Company, Allegiance Coal Limited, an Australian corporation ("**ACL**"), Collins Street Convertible Notes Pty Ltd (the "**Noteholder**"), Allegiance Coal USA Limited ("**ACUSA**"), New Elk Coal Company LLC, a Colorado limited liability company ("**NECC**), North Central Energy Company, a Colorado corporation ("**NCEC**"), Raton Basin Analytic LLC, a Colorado limited liability company ("**RBA**"), and Black Warrior Minerals, Inc., an Alabama corporation ("**BWM**," and together with the Company, ACL, ACUSA, NECC, the "**Grantors**"), and other documents between the Noteholder and the Grantors, in connection with the Convertible Note Agreement, dated on or about the date hereof (the "**Note Agreement**"), by and between ACUSA, ACL and the Noteholder, including the Assignments, the Mortgages, the Deed, the Note, the Subordination Agreements, and all financing statements (or comparable documents now or hereafter filed in accordance with the UCC or other applicable law) (collectively, the "**Transaction Documents**");

**WHEREAS,** the Board has had the opportunity to review drafts of the Transaction Documents; and

**WHEREAS,** the Board has determined it is useful and appropriate for the Company to enter into, execute, deliver and perform its obligations under the Transaction Documents and to deliver the certificates, opinions, and documents contemplated therein.

**NOW THEREFORE BE IT:**

**RESOLVED,** that the Transaction Documents in the forms submitted to the Board are hereby adopted, authorized, and approved (together with the performance thereunder and the transaction contemplated thereby), with such changes thereto as any member of the Board or authorized person of the Company executing the same may deem necessary or desirable to carry out the purposes and intent of the foregoing resolution, with the execution and delivery of any or all of the foregoing documents to be conclusive

proof of the determination by such persons of the necessity therefor or appropriateness thereof; and be if further

    **RESOLVED,** that each member of the Board or officer acting alone (each an "**<u>Authorized Signatory</u>**") be and each hereby is authorized to execute, deliver, and perform, or cause to be executed, delivered, and performed, the Transaction Documents and all other agreements, certificates, and other documents contemplated under the Transaction Documents (collectively, the "**<u>Ancillary Documents</u>**") each in form and with such additional changes or amendments to the terms, conditions, or other provisions thereof as a member of the Board or Authorized Signatory may approve, the execution and delivery of which shall be conclusive evidence of proper authorization and approval thereof; and be it further

    **RESOLVED,** that the Secretary be, and hereby is, authorized to certify to any third party that these resolutions have been duly adopted and that they are in conformity with the Certificate of Incorporation and the By-Laws of the Company; and be it further

    **RESOLVED,** that the Transaction Documents and the Ancillary Documents, are hereby adopted, authorized, and approved (together with the performance thereunder and the transactions contemplated thereby), in such form as any member of the Board, officer, or Authorized Signatory of the Company, executing the same may deem necessary or desirable to carry out the purposes and intent of the foregoing resolution, with the execution and delivery of any or all of the foregoing documents to be conclusive proof of the determination by such persons of the necessity therefor or appropriateness thereof, and that the Company, acting alone, be and hereby is authorized, empowered, and directed, to execute, deliver and perform the Transaction Documents and Ancillary Documents, each in the form and with such additional changes or amendments to the terms, conditions, or other provisions thereof as any member of the Board or Authorized Signatory of the Company may approve, the execution and delivery of which shall be conclusive evidence of proper authorization and approval thereof; and be it further

    **RESOLVED,** that all acts and deeds heretofore done and any action taken by the Board, any Authorized Signatory or agent of the Company for or on behalf of the Company be, and hereby are, ratified, approved and confirmed in all respects as the acts and deeds of the Company and any action hereafter taken by the Board or any Authorized Signatory or agent of the Company for or on behalf of the Company in carrying out the terms and intentions of the foregoing resolutions or otherwise within the terms of the foregoing resolutions be, and hereby are, ratified, approved and confirmed in all respects as the acts and deeds of the Company.

    Separate counterparts of this Consent may be executed and delivered (each of which may be transmitted via facsimile or e-mail (in portable document format, including DocuSign)), each of which shall be deemed an original instrument, but all such counterparts together shall constitute but one and the same Consent.

Any member of the Board is hereby directed to cause this instrument or a conformed or executed counterpart copy thereof, to be placed with the permanent records of the proceedings transacted by the Company.

*[Remainder of page left blank.  Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned have executed this Consent as of the Effective Date.

**BOARD OF DIRECTORS:**

_____
Mark Gray


_____
Jonathan Reynolds

**EXHIBIT D**

<u>Incumbency</u>

| <u>Name   of director or officer</u> | <u>Title</u> | <u>Signature</u> |
|---|---|---|
| Mark Gray | Director, Chairman, President, and Chief Executive Officer | |
| Jonathan Reynolds | Director, Vice President, Treasurer, and Secretary | |

**EXHIBIT E**

<u>Good Standing Certificate</u>



Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "NEW ELK COAL HOLDINGS LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE SEVENTEENTH DAY OF MAY, A.D. 2022.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "NEW ELK COAL HOLDINGS LLC" WAS FORMED ON THE NINTH DAY OF DECEMBER, A.D. 2019.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE BEEN PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

7692952  8300

SR# 20222064232

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 203451272

Date: 05-17-22